# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

RICHARD SPOSATO,

                                  Plaintiff,

       v.                                      5:23-CV-364
                                                  (TJM/ATB)

PAUL G. CAREY, et al.,

                                  Defendants.

RICHARD SPOSATO, Plaintiff, pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

On April 10, 2023, I issued an Order and Report-Recommendation (Dkt. No. 6, "April ORR") after an initial review of the plaintiff's civil complaint (Dkt. No. 1, "Compl."). In the April ORR, I granted the plaintiff's motion to proceed in forma pauperis ("IFP"), and recommended dismissal of the complaint, with the exception of an excessive force claim that I recommended proceed as against defendant Ryan. (*See generally* April ORR). Because plaintiff's other claims were substantively defective and frivolous, I recommended that the district court dismiss them with prejudice. (*Id.* at 28). Instead of filing objections to the ORR, as instructed, plaintiff filed an amended complaint on April 25, 2023. (Amended Complaint ("AC")) (Dkt. No. 7). Plaintiff also filed a motion to recuse me from this matter on the same date. (Dkt. No. 8). On June 26, 2023, the Honorable Thomas J. McAvoy terminated my pending ORR as moot, and

1

sent the case back to me to conduct an initial review of the amended complaint. (Dkt. No. 10). Plaintiff's motion for recusal is also before me pending review.

## I.  **Motion for Recusal**

In conjunction with filing an amended complaint, plaintiff has filed a motion to "recuse Magistrate Judge Andrew T. Baxter" from this matter. (Dkt. No. 8). Specifically, plaintiff argues that recusal is warranted due to my "presumption" of plaintiff's "'sovereign citizen' allegations," and "mischaracterize[ation] . . . of what [plaintiff] stated in [the] complaint. (*Id.* at CM/ECF p. 4-5). For these reasons, plaintiff argues that I have a "bias" toward him "regarding [the] amended complaint[,] and requests that a "neutral and detached judge" look at the amended complaint. (*Id.*).

Pursuant to 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The purpose of § 455(a) 'is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.' " *Green v. N.Y.C. Health & Hosps. Corp.*, 343 F. App'x 712, 713 (2d Cir. 2009) (quoting *Liljeberg *149 v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)).

It is well settled that a judge maintains discretion in the first instance in determining whether to disqualify him or herself, because "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.

2

1988); *see also New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, No. 1:04-CV-0962 (DNH/RFT), 2007 WL 655607, at *3 (N.D.N.Y. Feb. 23, 2007) (" 'To be clear, a judge should not refer a recusal motion to another judge but rather should exercise its 'affirmative duty to inquire into the legal sufficiency' of said motion and determine if there is a factual basis to support the charge of a 'bent of mind that may prevent or impede impartiality of judgment.' ").  "[A] judge has an affirmative duty . . . not to disqualify himself unnecessarily," *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978); in fact, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312.  "Litigants are entitled to an unbiased judge; not to a judge of their choosing." *Id.*

Plaintiff has offered no objective facts to suggest that I have any personal bias against plaintiff. Although plaintiff clearly disagrees with my previous recommendations in this action, that disapproval alone does not "constitute a valid basis for a bias or partiality motion." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).  Nor does my observation that plaintiff's "allegations are consistent with those ideologies shared by 'Sovereign Citizens'" establish impartiality or bias on my part.  Regardless of whether the plaintiff actually identifies with this group of individuals, his lengthy pleadings clearly establish his disregard for various state and local laws.  Accordingly, plaintiff's

recusal motion is denied, and the court will proceed to review plaintiff's amended complaint pursuant to the below standards.

## II.    **Applicable Legal Standards for Review of Amended Complaint**

When a pro se plaintiff qualifies to proceed IFP, the court "shall dismiss a case at any time if the court determines" that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond. However, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). In assessing whether a complaint states a plausible claim, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

## III.    **The Amended Complaint**

Plaintiff's amended complaint is 70 pages long, with just under 800 pages of exhibits attached. Like the original complaint, the majority of claims raised by the plaintiff in his amended pleading are frivolous and fail to state a claim. To his credit, plaintiff has omitted several defendants[1] in his amended complaint, against whom this court recommended dismissal from the original complaint to Judge McAvoy. The remaining defendants are still named in the amended complaint, and plaintiff has added two additional defendants: Mark F. Schroeder, the Commissioner of Motor Vehicles; and the New York State Department of Motor Vehicles. (AC at 5).

The first portion of plaintiff's amended complaint includes a recitation of plaintiff's personal history, including his criminal background, followed by a lengthy,

---

[1] Based on plaintiff's amended complaint, the Clerk has terminated this action as against previously named defendants Paro, Baichi, the Solvay Police Department, Osbech, the Onondaga County Office of District Attorney, Fitzpatrick, and McMahon. (*See generally* Docket).

meritless justification as to why plaintiff should not be subject to the New York Vehicle
and Traffic Laws.  (AC at 5-16).  The remainder of the amended complaint describes
the same events giving rise to the claims that were set forth in the original complaint,
with some added detail.  To the extent plaintiff's allegations have changed with respect
to the various causes of actions alleged, they are set forth in the below analysis.

## IV.    Defendants Watson, Elsenbeck, Lynch and Nerber

The allegations in the amended complaint against defendants Watson, Elsenbeck,
Lynch and Nerber are substantially the same as those allegations set forth in the original
complaint against them.  (*Compare* Compl. at 5-8, 13-14, 20-21; *with* AC at 16-19, 24,
35-36, 47-48).  Plaintiff claims that these law enforcement defendants violated his
constitutional rights when they "unlawfully" stopped and arrested plaintiff, and towed
his car, during the course of various different traffic stops.  (AC at 16-19, 24, 35-36, 47-
48).  For the reasons more fully set forth in the April ORR, plaintiff's claims against
these defendants are patently frivolous, and fail to state a claim for relief.  (April ORR
at 4-6).  Accordingly, this court recommends that the amended complaint be dismissed
as against them.

## V.    Defendant Ryan

In the amended complaint, plaintiff alleges that on June 19, 2021, at
approximately 2:15 a.m., he was exercising his "right to travel," i.e., operating his "used
automobile" on North Orchard Road, when he observed emergency lights flashing

behind him.  (AC at 19).  Plaintiff alleges that he "paid no attention to the . . . police vehicle behind [him] with its emergency lights flashing . . . other than to allow the police vehicle to pass[.]"  (*Id.* at 19-20).  When the police vehicle did not pass him, plaintiff states that he "pulled into [his] mom's driveway . . . which the police car followed [him] into[.]"  (*Id.* at 20).

Plaintiff then alleges that, "after parking in my mom's driveway, I exited my car, unarmed (as always) and peacefully walked to the entrance of the house, located on the right[-]hand side of the garage."  (*Id.*).  Plaintiff readily admits that he "did not pay any attention to anything that was going on behind [him] . . . not hearing any orders to stop from arresting Solvay Police officer, defendant Matthew W. Ryan[.]"  (*Id.*).  Plaintiff proceeded to put his hand on the doorknob and open the side door to the garage, when he "felt a bullet go into [his] back, thought to be a taser, with a wire attached to it." (*Id.*).  Plaintiff "grabbed the taser wire attached to the bullet . . . broke it off . . . and proceeded to enter [his] mom's house, with the bullet still stuck in [his] back."  (*Id.*).

Plaintiff then describes "roughly [five] police cars arriving on the scene, like a street gang looking for trouble, with emergency lights flashing[.]"  (*Id.*).  There was "much commotion in the driveway, waking up [plaintiff's] 84 yr. old mother from her sleep, disturbing the peace with officers pounding on the house like wild animals, yelling for [plaintiff] to come outside." (*Id.*). After thirty minutes of "disturbance" by

the officers, a tow truck arrived and towed plaintiff's car. (*Id.*). Shortly thereafter, law enforcement "left the scene." (*Id.*).

To the extent plaintiff's claims against defendant Ryan arise from the initial stop of his vehicle, as further set forth in the April ORR, plaintiff has failed to state a claim. (April ORR at 7-8). It is clear that probable cause existed for defendant Ryan to initiate the traffic stop.

Plaintiff also asserts an excessive force claim against defendant Ryan. As I discussed in the April ORR, "'[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148-49 (2d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis and internal quotation marks omitted)). Examining the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). An officer may not constitutionally employ "a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019). It is well-established "that the use of entirely gratuitous

8

force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).

In this case, plaintiff has made clear his complete disregard for various state and local laws governing his right to operate a motor vehicle on public roads, as well as his disregard for the authority of local and state law enforcement to enforce said traffic rules. It is, in fact, plaintiff's admitted and baseless evasion of these established laws that renders the majority of his claims against the various law enforcement defendants meritless. To this end, the court recognizes plaintiff's admission that he blatantly ignored the repeated commands of defendant Ryan during the June 19th traffic stop when he exited his car, turned away from defendant Ryan, and walked up his mother's driveway, with the intention of entering her home. However, mindful of the obligation to liberally construe a pro se litigant's pleadings, this court finds that plaintiff's Eighth Amendment excessive force claim against defendant Ryan survives initial review, solely as to the issue of whether the alleged use of the taser on plaintiff was reasonable under the circumstances.[2]

## VI.    **Defendant Justices Carey and LaSorsa**

The allegations set forth in the amended complaint against Town of Salina Justice Paul G. Carey and Village of Solvay Acting Justice Kara A. LaSorsa are substantially

---

[2] In doing so, the court expresses no opinion as to whether plaintiff's excessive force claim against defendant Ryan can withstand a properly filed dispositive motion.

similar to those set forth in the original complaint, to the extent that these defendants were clearly performing their authorized judicial functions when each of the alleged constitutional violations took place. (*Compare* Compl. at 8-19, 22, 30; *with* 25, 29, 31-38, 40, 42-47, 50). Accordingly, and for the reasons more fully set forth in the April ORR, this court recommends that the complaint be dismissed as against defendant Justices LaSorsa and Carey.

## VII.  **Quasi-Judicial Immunity**

Plaintiff has sued various court employees as defendants in this matter. With respect to defendant court bailiffs Mike Quigley and John Lyons, plaintiff's allegations in the amended complaint are substantially similar to those set forth in the original complaint. (*Compare* Compl. at 19-20 *with* AC at 46). Specifically, plaintiff alleges that these defendants violated his constitutional rights when they handcuffed and "arrested" plaintiff for being in contempt of court, at the direction of Justice Carey. (AC at 46). There is no allegation that these defendants exceeded Justice Carey's direction in the manner they executed his order to arrest plaintiff, such as by the use of excessive force. Thus, and for or the reasons more fully set forth in the April ORR, this court finds that defendants Quigly and Lyons are entitled to quasi-judicial immunity and plaintiff's claims against them should be dismissed. (April ORR at 13-16).

Plaintiff has also named Town of Solvay Court Clerk Megan Cavaliere in his amended complaint. Plaintiff alleges that on September 22, 2021, at approximately

11:15 a.m., he went to the Solvay Village Court Clerk's office to inquire about a notice for him to appear in court that evening. (AC at 27). Plaintiff alleges that, "after waiting around for approximately 10 minutes before anyone showed up at the window to attend to my needs," defendant Cavaliere appeared. (*Id.*). Plaintiff "showed her" the notice to appear and asked who sent it, "to which she rather rudely stated, 'the court sent it.'" (*Id.*). Plaintiff responded by stating that "The court is a corporation and can't send anything on its own, so who sent it[?]" (*Id.*). Plaintiff alleges that defendant Cavaliere proceeded to go "to the back of the room to sit at her desk." (*Id.*). She then returned to the window and stated " 'I told you who sent it, you have to appear tonight[.]' " (*Id.*). Defendant Cavaliere then "close[d] the blind on [plaintiff], going back to the seat at her desk in the back of the room." (*Id.*). Plaintiff alleges that after "being lied to, with an insufficient response," he "raise[d] his voice slightly, such as any disgruntled customer would now that [defendant Cavaliere] was in the back of the room, to no avail, which after roughly 30 seconds," plaintiff left the premises of his own accord, "without ever hearing defendant Cavaliere ask [him] to leave." (*Id.*).

Later that evening, after plaintiff appeared at Solvay Village Court pursuant to the aforementioned notice, plaintiff learned that he was being charged with obstructing governmental administration and trespass based on his interaction with defendant Cavaliere earlier that day. (*Id.* at 29). An order of protection was also filed against plaintiff with respect to defendant Cavaliere. (*Id.* at 32). Plaintiff "turned himself in"

to the Solvay Police Department on June 9, 2022, apparently for charges stemming from violating the order of protection, which led to his "unlawful night stay in jail" at the Onondaga County Justice Center for one night.  (*Id.* at 39).

Although plaintiff has supplemented his claim against defendant Cavaliere with additional details, this does not alter the court's previous conclusion that defendant Cavaliere is protected from suit by quasi-judicial immunity.  (April ORR at 11-16). Thus, because plaintiff's claims against defendant Cavaliere stem from the tasks she was performing within the scope of her employment, i.e., responding to plaintiff's questions about his court appearance and enforcing the notice of appearance issued by the Solvay Village Court, the amended complaint should be dismissed as against her.

## VIII.  <u>Defendants Czerow and Hardy</u>

Solvay Police Officers Czerow and Hardy are also named in plaintiff's amended complaint.  According to the plaintiff, defendants Czerow and Hardy prepared the criminal complaint with which plaintiff was ultimately charged for trespass[3] and obstructing government administration[4] in conjunction with his interaction with defendant Cavaliere at Solvay Village Court.  (AC at 28-30).  Plaintiff alleges that these

---

[3] Under New York law, "a person is guilty of trespass when he knowingly enters or remains unlawfully in or upon a premises." N.Y .P.L. § 140.05. Where, as here, the premises are generally open to the public, a person "remains unlawfully" if "he defies a lawful order not to . . . remain personally communicated to him by the owner of such premises or other authorized person." *Id*. § 140.00(5).

[4] Under New York law, "OGA has four elements: '(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference.' " *Antic v. City of New York*, 740 F. App'x 203, 206 (2d Cir. 2018) (quoting *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010)); *see* N.Y. Penal Law § 195.05.

defendants "fabricate[d] frivolous charges," in retaliation for plaintiff engaging in a "constitutionally protected activity pertaining to matters of business" at the Solvay Village Court, in violation of his First Amendment rights. (AC at 58-59).

To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury. *See Hawthorne by Hawthorne v. Cnty. of Putnam,* 492 F. Supp. 3d 281, 302 (S.D.N.Y. 2020) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). "A plaintiff may plead injury either by showing that his speech has been adversely affected by government retaliation or that he has suffered some other concrete, non-speech related harm." *Id.* (citing *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (noting that a loss of a government contract, additional scrutiny at border crossings, revocation of building permits, and refusal to enforce zoning laws are all adequate cognizable harms even in the absence of a chilling effect)).

At the outset, the court seriously doubts that the First Amendment protects this plaintiff's right to be argumentative and blatantly disruptive in a public courthouse. *See Washington v. Dewey*, No. 3:17-CV-1316, 2019 WL 1921939, at *3 (D. Conn. Apr. 30, 2019) ("Speech that is intended to harass, intimidate or cause substantial emotional distress has been identified as integral to criminal conduct, and therefore not protected

by the First Amendment.") (citing inter alia *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014)).

Furthermore, even if plaintiff's conduct did constitute protected speech for purposes of the First Amendment, plaintiff has admitted that he was engaged in the complained of conduct, and the court finds that the defendants' actions were objectively reasonable given the existence of probable cause to believe plaintiff had committed the charged crimes. *See Lederman v. Benepe*, 12 Civ. 6028, 2014 WL 1318356, at *9 (S.D.N.Y. March 28, 2014) ("Where there is probable cause to believe that a plaintiff has committed a crime, . . . the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary.").

Plaintiff has attached to his complaint the charging instruments relative to his arrest arising from his conduct on September 22, 2021, at the Solvay Village Court. (Dkt. No. 7-4 at CM/ECF p. 31-35). Plaintiff's admissions in the amended complaint comport with defendant Cavaliere's statement to the police as reflected in charging instruments that plaintiff would not leave the courthouse when asked to do so, but continued to verbally engage with and "yell" at defendant Cavaliere that she did not know how to do her job, and that the court had no jurisdiction over him. (Dkt. No. 7-4

14

at CM/ECF p. 34).  To the extent that probable cause existed for plaintiff's arrest,[5] his First Amendment claims against defendants Czerow and Hardy should be dismissed.

## IX.    **Prosecutorial Immunity**

Plaintiff's allegations against defendant assistant district attorney ("ADA") Hudson, ADA Williams, and ADA Albert in the amended complaint are substantially similar to those stated in the original complaint.  (*Compare* Compl. at 10, 17, 19, 20-21; *with* AC at 28, 42-43, 49).  As set forth in detail in the April ORR, plaintiff's claims against these defendants relate to the prosecution of a criminal case, and other conduct "intimately associated with the judicial phase of the criminal process[.]" (April ORR at 16-19).  *Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (citations omitted).  Accordingly, these defendants are entitled to absolute prosecutorial immunity, and the amended complaint should be dismissed as against them.

## X.    **Eleventh Amendment Immunity**

Plaintiff has named the Department of Motor Vehicles ("DMV") as a defendant in his amended complaint.  " 'The Eleventh Amendment to the Constitution bars suits

---

[5] *See Omor v. City of New York*, No. 13-CV-2439, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (finding that there was probable cause to arrest the plaintiff for trespass where he refused to leave a local government office that was open to the public after being asked to leave the premises by at least two office staff members); *see also Ostroski v. Town of Southold,* 443 F. Supp. 2d 325, 338 (E.D.N.Y. 2006) (A finding of probable cause for obstructing governmental administration, under N.Y. Penal Law § 195.05 "may be predicated upon, for example, a defendant's refusal to obey orders to leave a premises . . . " (citing *Wilder v. Village of Amityville*, 288 F.Supp.2d 341, 344 (E.D.N.Y. 2003)).

against a state in federal court unless that state has consented to the litigation or

Congress has permissibly enacted legislation specifically overriding the state's

immunity.' " *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390-91 (E.D.N.Y. 2013)

(quoting *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); *Bd.*

*of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).  A claim against a state

agency is considered a claim against the state and implicates the Eleventh Amendment

because the state is the "real" party in interest. *Id*. at 391 (citing *P.R. Aqueduct & Sewer*

*Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993)). The Eleventh Amendment

also bars suits against state agencies and state officers in their official capacities. *See*

*Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001).  "Importantly for present purposes,

the State of New York has not waived its sovereign immunity from § 1983 claims in

federal court." *Kisembo v. NYS Office of Children and Family Services,* 285 F. Supp. 3d

509, 519 (N.D.N.Y. Feb. 1, 2018) (citation omitted). "Nor has Congress validly

abrogated New York's sovereign immunity from these claims." *Id.*

Based on the foregoing, plaintiff's claims against the DMV, a New York state

agency, are barred by the Eleventh Amendment and should be dismissed.  *See Feingold*

*v. State of New York,* 366 F.3d 138, 149 (2d Cir. 2004) (holding that the plaintiff's §

1983 claim was "barred by the Eleventh Amendment because the DMV is a state

agency"); *Yerdon v. Poitras*, No. 1:21-CV-0565(LEK/ML), 2022 WL 798271, at *2

(N.D.N.Y. Mar. 16, 2022) ("Eleventh Amendment immunity in this case extends to

arms of New York State, including the New York State Department of Motor Vehicles.").

## XI.    **Municipal Liability**

Plaintiff's amended complaint raises substantially similar allegations against defendants Town of Salina, Village of Solvay, and the County of Onondaga as in the original complaint. (*Compare* Compl. at 31-35; *with* AC at 65-67). As discussed in the April ORR, plaintiff's claims against these municipal entities fail because he has not sufficiently alleged any unconstitutional policy or custom associated with them. (April ORR at 20-22). Accordingly, and for the reasons more fully set forth in the April ORR, plaintiff's claims against these municipal entities should be dismissed.

## XII.    **Defendant Commissioner of Motor Vehicles**

In his amended complaint, plaintiff has named as a defendant Mark F. Schroeder, the Commissioner of Motor Vehicles. (AC at 5). Plaintiff states that he is suing Commissioner Schroeder both individually and in his official capacity. (*Id.* at 1). At the outset, it is well settled that plaintiff's claim against Commissioner Schroeder in his official capacity is barred by the Eleventh Amendment. *See Clark v. Schroeder,* 847 F. App'x 92, 93 (2d Cir. 2021) (district court correctly held that the Eleventh Amendment immunized defendant Schroeder, a state official, from suit in his official capacity).

Furthermore, plaintiff's complaint does not indicate that Commissioner Schroeder was personally involved in any violation of plaintiff's rights. "It is well

settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  Here, to the extent plaintiff has sufficiently plead the violation of any of his constitutional rights in his amended complaint, he has not plead facts demonstrating that Commissioner Schroeder had any direct, personal involvement. The only cause of action raised against Commissioner Schroeder an "abuse of process" claim, stating that this defendant acted "without the necessary lawful authority and jurisdiction to perform . . . administerial functions with regards to plaintiff's situation at hand," and "maliciously weaponized . . . administrative powers of the Department of Motor Vehicles, by . . . placing administrative strangleholds on plaintiff[.]"  (AC at 56-57).  There are otherwise no factual allegations suggesting that Commissioner Schroeder was personally involved in the alleged constitutional deprivations. Accordingly, the amended complaint should be dismissed as against Commissioner Schroeder in his individual capacity.  *See, e.g., Rodriguez v. Winski*, 973 F. Supp. 2d 411, 426 (S.D.N.Y. 2013) (dismissing claims against former MTA Commissioner for lack of personal involvement).

18

## XIII. <u>Opportunity to Amend</u>

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

In the April ORR, I explained that there is no amendment that plaintiff could make to his complaint that would allow him to sue the named defendants, with the exception of plaintiff's excessive force claim against defendant Ryan, which I recommended should survive initial review. My review of the amended complaint reaffirms my previous opinion that the majority of plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. Accordingly, the court recommends that, with the exception of the excessive force claim against defendant Ryan, the district court dismiss the amended complaint, with prejudice and without leave to amend, as against the remaining defendants and causes of action.

PLAINTIFF IS ADVISED THAT HE SHOULD NOT SEEK TO FILE ANOTHTER AMENDED COMPLAINT OR A MOTION TO AMEND UNTIL U.S. DISTRICT COURT JUDGE McAVOY RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S AMENDED CLAIMS. ANY FURTHER AMENDED COMPLAINT OR MOTION TO AMEND FILED

BEFORE JUDGE McAVOY'S DECISION WITH RESPECT TO THIS COURT'S

RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT

BE CONSIDERED BY THE COURT.  As noted below, however, the plaintiff may file

objections to this court's recommendations.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for recusal is **DENIED**, and it is

**RECOMMENDED,** that the court accept the amended complaint as the

operative pleading; and it is

**RECOMMENDED,** that plaintiff's claim for excessive force proceed as against

defendant Matthew Ryan; and it is

**RECOMMENDED**, that the remaining defendants and causes of action set forth

in the amended complaint be dismissed **WITH PREJUDICE, WITHOUT THE**

**OPPORTUNITY TO AMEND**, and it is

**RECOMMENDED,** that should the district court adopt this report-

recommendation, the case be returned to me for any orders relating to service of the

complaint on defendant Ryan, and it is

**ORDERED** that a copy of this Order and Report-Recommendation be served by

mail upon plaintiff at his address of record.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing

report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:  July 27, 2023

Andrew T. Baxter
U.S. Magistrate Judge