# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

RICHARD SPOSATO,

                              Plaintiff,

               v.                                          5:23-CV-364
                                                           (TJM/ATB)
PAUL G. CAREY, et al.,

                              Defendants.

RICHARD SPOSATO, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Richard Sposato. (Dkt. No. 1) ("Compl.").  Plaintiff has also moved to proceed in forma pauperis. (Dkt. No. 2).

## I.   IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2).  After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).

## II.   **Complaint**

Plaintiff is suing twenty-five defendants for alleged constitutional violations stemming from various traffic stops affected on him between May 2021 and December 2022.  (*See generally,* Compl.).  The named defendants include municipalities and their

representative officials, local government agencies, judicial officers and their employees, prosecutors, and law enforcement officers.

Plaintiff's allegations are consistent with those ideologies shared by "Sovereign Citizens," "a loosely affiliated group who follow their own set of laws and, accordingly, do not recognize federal, state, or local laws, policies or regulations as legitimate." *United States v. DiMartino*, 949 F.3d 67, 69 (2d Cir. 2020) (internal quotations omitted) (quoting *United States v. McLaughlin*, 949 F.3d 780, 2019 WL 7602324, at *1 n.1 (2d Cir. December 30, 2019) (quoting Sovereign Citizens: A growing Domestic Threat to Law Enforcement, FBI Law Enforcement Bulletin (2011)).  In this case, plaintiff contends, generally, that he was stopped, ticketed, and/or arrested, and his car was towed, on five separate occasions in violation of his constitutional rights while "exercising [his] Right to travel," i.e.

> exercising [his] lawful right to travel upon the public passageways, in [his] private used automobile, not registered with the State of New York, or any State for that matter, with a vanity plate on the back of [his] 'used automobile' labeled 'PR1V4T3, DOT EXEMPT, FOR NON COMMERCIAL USE ONLY,' notifying any potential police officers that [his] private, used automobile is not within their limited scope of jurisdiction, as it's not being used for commercial purposes.

(Compl. 5-6).  Plaintiff readily admits that he does not possess a driver license, because, as he contends, it is not "required of [him] by law."  (*Id.* at 6).

Because the majority of plaintiff's claims are patently frivolous, and many of the named defendants are protected by immunity, the court will not endeavor to provide an in-depth recitation of all the facts alleged in plaintiff's 196 paragraph complaint.  To

the extent that plaintiff's allegations are relevant to individual causes of action, I will discuss them in my analysis.

### III.   <u>Defendants Watson, Elsenbeck, Lynch and Nerber</u>

Plaintiff was stopped by defendant law enforcement officers Watson, Elsenbeck, Lynch and Nerber on May 28, 2021; March 8, 2022; March 18, 2022; and December 10, 2022, respectively. (Compl. at 5-8, 13-14, 20-21).  In conjunction with these traffic stops and the numerous, associated instances when his vehicle was towed, plaintiff asserts that the previously named defendants violated his Fourth and Fourteenth Amendment rights when they "unlawfully stopped and arrested [plaintiff] and [his] car, in [his] lawful travel[.]"  (Compl. at 23-29).

Plaintiff's claims alleging violations of constitutional proportion relative to the traffic stops are undermined by his own admissions in the complaint.  A traffic stop is reasonable if the stopping officer has "probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (citing *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994).

In this case, plaintiff, who apparently believes he is not subject to the laws of the state of New York, readily admits that when he was pulled over he was operating a vehicle in violation of New York Vehicle and Traffic Law § 402.[1] (Compl. at 5-6).

---

[1]VTL § 402 requires that all vehicles have license plates that correspond to the certificate of registration and that those plates are conspicuously displayed on the front and on the rear of the

Thus, it is undisputed that the officers had probable cause for the initial stop of plaintiff's vehicle. *See United States v. Stewart,* 551 F.3d 187, 191 (2d Cir. 2009) (quoting *United States v. Jenkins,* 452 F.3d at 212) ("no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates, which would have been a violation of VTL § 402(1)(a)."); *United States v. Williams*, No. 11 CR. 228, 2011 WL 5843475, at *6 (S.D.N.Y. Nov. 21, 2011) (citing *People v. Smith*, 1 A.D.3d 965, 965-66 (4th Dep't 2003) ("The lack of a license plate on a vehicle generally will justify a stop of the vehicle for violation of Vehicle and Traffic Law § 402").

Plaintiff also admits that he was driving in violation of *at least* two other vehicle and traffic laws, including driving a motor vehicle without a license in violation of New York Vehicle and Traffic Law § 509(1), and operating an unregistered vehicle in violation of New York Vehicle and Traffic Law § 401. (Compl. at 5-6).  Thus, plaintiff's claims that the law enforcement officer defendants lacked probable cause to arrest him are wholly unsupported, defeating any claims related to false arrest/imprisonment and malicious prosecution.  *See United States v. White,* 298 F. Supp. 3d 451, 458 (E.D.N.Y. 2018) ("As the Supreme Court and Second Circuit have made clear, an arrest is constitutionally proper even for minor traffic offenses."); *see also Thompson v. Kline*, 504 F. Supp. 3d 200, 208, 213 (W.D.N.Y. 2020) (recognizing that the existence of probable cause is a "complete defense" to claims for false arrest

---

vehicle. N.Y. VTL § 402(1)(a); *see also Brace v. Johnson*, No. 1:20-CV-588 (FJS/CFH), 2022 WL 504972, at *4 (N.D.N.Y. Feb. 18, 2022), *aff'd*, No. 22-590, 2023 WL 2027274 (2d Cir. Feb. 16, 2023).

and malicious prosecution).

To the extent plaintiff is claiming the impoundment of his vehicle violated his due process or other constitutional rights, that claim would not be viable in light of the fact that he was operating an unregistered vehicle without a driver license. *See, e.g.*, *Carter v. Campanelli*, No. 22-CV-2702, 2022 WL 1667022, at *2-3 (E.D.N.Y. May 20, 2022) (finding no due process or other constitutional violations arising from the impoundment of a vehicle with a suspended registration); *Di Pompo v. Mendelson*, No. 21-CV-1340, 2022 WL 463317, at *3 (S.D.N.Y. Feb. 15, 2022), *on reconsideration in part*, 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022) ("Plaintiff concedes that the vehicle did not bear a valid registration, which provided probable cause to impound.").

For these reasons, plaintiff has failed to plausibly state a claim against defendants Watson, Elsenbeck, Lynch and Nerber, and the complaint should be dismissed as against them.

## IV. **Defendant Ryan**

Plaintiff further alleges that on June 19, 2021, at approximately 2:15 a.m., while "again exercising [his] right to travel in . . . [his] car . . . emergency lights were seen flashing behind [him]." (Compl. at 7). Plaintiff pulled into his mother's driveway, which was on the same road, at which time a Solvay Police vehicle "followed" plaintiff, "pulling up behind [him], parking in the driveway behind [him]." (*Id.*). Plaintiff "exited [his] car and proceeded to walk to the entrance of his mother's house, when at the moment [he] put [his] hand on the door knob and opened the side door to the garage, [he] felt a bullet go into [his] back, with a wire attached to it." (*Id.*). Plaintiff

6

"grabbed the wire, broke it off from being attached to the bullet and proceeded to enter [his] mom's house." (*Id.*).  Plaintiff then describes "roughly [five] police cars arriving on the scene, emergency lights flashing [sic] there was much commotion in the driveway, waking up my 84 yr. old mother from her sleep, with officers pounding on the house, yelling for me to come out." (*Id.*).  After thirty minutes of "disturbance by the officers," a tow truck arrived and towed plaintiff's car. (*Id.*).  Shortly thereafter, "everyone left the scene." (*Id.*).

After "going to bed to try to get some sleep," plaintiff's phone "started ringing from a restricted number, which [he] assumed was the Solvay police[.]" (*Id.*).  Plaintiff "told the officer on the other end he was bothering [plaintiff], he had no probable cause of a crime, thus no jurisdiction to require [plaintiff] to stop and speak with the officers who had chased [plaintiff] with emergency lights flashing[.]" (*Id.*).  Later that day, defendant Solvay Police Officer Matt Ryan called plaintiff "and told [him] to come in by the end of the weekend for processing, or else [plaintiff] could have a warrant out for [his] arrest." (Compl. at 8).

Although plaintiff does not identify the individual who allegedly followed him to his mother's house and tased him in his factual allegations, plaintiff states in his Fifth Cause of Action that "Defendant, Matthew W. Ryan tried to initiate an unlawful arrest of a peaceful man, and, in doing so, pointed and fired a potentially lethal weapon upon Plaintiff, hitting an unarmed, peaceful Plaintiff in the back with a bullet, intentionally discharged from a taser gun." (Compl. at 28).

For the reasons previously set forth in this court's analysis of the claims asserted

against the other police officer defendants, plaintiff's claims against defendant Ryan arising from the initial stop of his vehicle are not viable, as it is clear defendant Ryan has probable cause for the traffic stop.

Plaintiff also asserts an excessive force claim against defendant Ryan.  "'[A]ll claims that law enforcement officers have used excessive force  . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148-49 (2d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis and internal quotation marks omitted)). Examining the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).  An officer may not constitutionally employ "a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).  It is well-established "that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).

In this case, plaintiff alleges that defendant Ryan violated plaintiff's constitutional right to be free from excessive force when he tased plaintiff in the back, while plaintiff walking into his mother's house, "unarmed." (Compl. at 28).  Mindful of the obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed*

8

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), this court finds that plaintiff's Eighth Amendment excessive force claim against defendant Ryan survives initial review, and requires a response.[2]

## V.   Judicial Immunity

### A.   Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on

---

[2]In doing so, the court expresses no opinion as to whether plaintiff's excessive force claim against defendant Ryan can withstand a properly filed dispositive motion.

occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" – whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)).  The parties must have dealt with the judge in his or her "judicial capacity." *Id.*  The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)).  The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority.  *Id.* (citing *Mireles*, 502 U.S. at 12-13).

## B.    Analysis

Plaintiff has named Town of Salina Justice Paul G. Carey and Village of Solvay Acting Justice Kara A. LaSorsa as defendants.  The complaint alleges that plaintiff appeared in front of both Justices Carey and LaSorsa at "unlawful court proceeding[s] without personal and/or subject matter jurisdiction" over him, in connection with the charges stemming from his various traffic stops.  (Compl. at 8-19, 22).  Although Justice LaSorsa was originally presiding over plaintiff's court proceedings, she apparently recused herself on September 28, 2021, and plaintiff's case was moved to Salina Town Court before Justice Carey.  (*Id.* at 11).  Plaintiff alleges that he received a "threatening letter" from Justice Carey to appear in court, violating his right to due process of law.  (*Id.* at 11).  Plaintiff unsuccessfully attempted to recuse Justice Carey

from his criminal proceedings, because Justice Carey was also presiding over plaintiff's eviction case. (*Id.* at 12-13). Justice Carey also "forced" plaintiff to sign an order of protection against defendant Megan Cavaliere, the Village of Solvay assistant court clerk.[3] (*Id.* at 12, 16). Plaintiff contends that in conjunction with his criminal charges, Justice Carey commenced a bench trial on November 18, 2022, despite plaintiff's insistence on a trial by jury. (Compl. at 30).

Notwithstanding plaintiff's frivolous claim that Justices LaSorsa and Carey lacked jurisdiction over him, it is clear that these individuals were performing authorized judicial functions when each of the alleged violations took place. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corrupt intent. Thus, plaintiff's complaint should be dismissed as against defendant Justices LaSorsa and Carey.

## VI.   Quasi-Judicial Immunity

### A.   Legal Standards

"The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable'

---

[3]As further discussed below, plaintiff alleges that he was wrongfully accused of threatening defendant Cavaliere at the Solvay Village Court, resulting in the filing of a police report and an order of protection issued against him. Although not clear from the complaint, this is, presumably, the reason why the Solvay Village Court Justices recused themselves from plaintiff's case, and his criminal proceedings were transferred to Town of Salina Court.

to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). In evaluating whether an official's duties are "functionally comparable" to those of a judge, courts should consider several factors, including:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 200-02 (citing *Butz*, 438 U.S. at 512); *see also Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) (extending immunity to court clerks when performing judicial functions).

Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). The scope of a judicial officer's jurisdiction, however,

> must be construed broadly in order to allow [him or] her to exercise [his or her] functions with independence and without fear of consequences[; m]ere evidence that an official's action was in error, was done maliciously, or was in excess of [his or her] authority does not undermine [a] claim to absolute immunity so long as it did not fall clearly outside all official authority.

*Id*. (internal quotation marks and citations omitted).

**B.    Analysis**

Plaintiff has also sued various court employees as defendants in his complaint. On the morning of September 22, 2021, plaintiff "went down to the Solvay Village Court Clerk's office to inquire about who sent" an "unofficial" notice to appear in court that evening.  (Compl. at 9).  "[A]fter waiting around for approximately 10 minutes before anyone showed up at the window to attend to [plaintiff's] needs," defendant Solvay Court Clerk Megan Cavaliere "finally appeared[.]" (*Id*.).  Plaintiff showed her the notice, asking her who sent it, to "which she rather rudely stated, 'the court sent it.'" (*Id*.).  Plaintiff then alleges that "after being lied to, with an insufficient response, I proceeded to leave the premises on my own accord."  (*Id*.).  When plaintiff appeared in Salina Town Court on November 18, 2021, he was "handed an order of protection pertaining to [defendant Cavaliere], signed by [defendant Justice Carey], which [he] was forced to sign[.]" (Compl. at 11-12).

Plaintiff alleges that defendant Cavaliere, along with defendants Czerow, Hardy, and Williams, "conspired to fabricate frivolous charges, in relation to the assertion of Plaintiff's Rights, while questioning the competency of [defendant Cavaliere], the lawful authority of the Solvay police, and [defendant Justice LaSorsa]."  (Compl. at 27).  Plaintiff alleges that there was no justifiable basis for the filing of a police report and the order of protection issued against him relative to his interactions with defendant Cavaliere.  (*Id*.).

It is well settled that quasi-judicial immunity attaches when a court clerk

undertakes "discretionary acts that implement judicial decisions or that are performed at the discretion or under the supervision of a judge." *Garcia v. Hebert*, No. 3:08-CV-95, 2013 WL 1294412, at *12 (D. Conn. Mar. 28, 2013) (quoting *Bliven v. Hunt*, No. 05-CV-4852, 2005 WL 3409620, *2 (E.D.N.Y. Dec. 12, 2005) (citations omitted)). Additionally, court clerks are absolutely immune from suit for "functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." *Id.* (quoting *Humphrey v. Court Clerk for the Second Circuit*, No. 5:08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008).

Plaintiff's allegations with respect to defendant Cavaliere are cryptic at best. Although plaintiff alleges that the order of protection is "without merit or fact of any threats . . . made against Defendant Cavaliere, nor fear of perceived danger or injury in the future to [her,]" he has conveniently omitted the specifics of his interaction with her on September 22nd. (Compl. at 9). Thus, at base, plaintiff's claims against defendant Cavaliere fail to state a claim under Fed. R. Civ. P. 8.[4]  In any event, to the extent plaintiff's claims against defendant Cavaliere stem from the tasks she was performing within the scope of her employment that day, i.e. responding to plaintiff's questions about his court appearance, she is protected from suit by quasi-judicial immunity. *See, e.g., Bloom v. New York State Unified Ct. Sys.,* No. 19-CV-7115, 2020 WL 6118828, at

---

[4]Fed. R. Civ. P. 8 requires a " 'short and plain statement' " of a claim, showing that 'the pleader is entitled to relief.' " *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be " 'simple, concise, and direct,' and must give 'fair notice of the claims asserted.' " *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.*

*5 (E.D.N.Y. Oct. 16, 2020) (citing *Weiner v. State*, 710 N.Y.S.2d 325, 327 (N.Y. App. Div. 2000) ("The normal work of a court clerk who participates in the processing of legal proceedings is generally viewed as 'quasi-judicial,' thereby cloaking the clerk with judicial immunity.").  Accordingly, the claims against defendant Cavaliere should be dismissed.

Moreover, at plaintiff's "bench trial" on November 18, 2022, "after a few minutes of [plaintiff] trying to protect [his] Rights, and calling for the arrest of [defendant Justice Carey], " Justice Carey "unlawfully ordered defendant court bailiffs Mike Quigley and John Lyons to arrest plaintiff for being in contempt of court. (Compl. at 19-20).  Quigley and Lyons handcuffed plaintiff and took him away, "kidnapped outside the courtroom, for roughly 90 minutes."  (Compl. at 20).  Plaintiff has asserted a false arrest/imprisonment claim against defendants Quigley and Lyons.

"Neither the Supreme Court nor the Second Circuit has addressed the applicability of quasi-judicial immunity to court officers' conduct while responding to a judge's order, but there is a split among other circuit courts that have addressed the issue." *Bey ex rel. Palmgren v. Conte*, No. 18-CV-9594, 2019 WL 1745672, at *3 (S.D.N.Y. Apr. 18, 2019) (identifying split among circuit courts).  However, in this case, even if the court were to assume the more limited approach to quasi-judicial immunity adopted by the majority of circuit courts, extending the protection only to the acts authorized by court order and not to the manner in which it is executed, the defendant bailiffs in this case are entitled to quasi-judicial immunity.  Plaintiff is challenging Justice Carey's direction to the bailiffs to restrain and "kidnap" plaintiff,

and does not allege that Quigley and/or Lyons exceeded Justice Carey's direction in the manner they executed the order, such as by the use of excessive force.  Accordingly, Quigley and Lyons are entitled to quasi-judicial immunity and plaintiff's false arrest/imprisonment claims against them should be dismissed.  *See Bey ex rel. Palmgren v. Conte*, 2019 WL 1745672 at *4; *Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997) (holding that officer directed by judge to restore order to courtroom is entitled to quasi-judicial immunity for handcuffing and removing individual from courtroom, and stating "[b]ecause judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation.").

## VII.   Prosecutorial Immunity

### A.   Legal Standards

Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation.  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity.  *Peay v. Ajello*, 470

F.3d 65, 67-68 (2d Cir. 2006).  It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision.  *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions.  *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted).  Absolute immunity has not been extended to situations in which the prosecutor gives legal advice to the police.  *Burns v. Reed*, 500 U.S. 478, 492-93 (1991) (citations omitted).  *See Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (denying absolute immunity when precise actions of the prosecutor were unknown).  In these situations, the prosecutor would be entitled only to qualified immunity.

### B.    Analysis

Plaintiff names Onondaga County District Attorney William Fitzpatrick and Onondaga County Assistant District Attorneys Jed Hudson, Alphonse Williams, and Jeffrey D. Albert as defendants.  Generally, plaintiff alleges that despite appearing for his many court appearances as directed, these defendants failed to prosecute his case for "over 15 months."  (Compl. at 30).

On September 22, 2021, ADA Williams appeared at plaintiff's Solvay Village Court proceeding, where Justice LaSorsa entered a "not guilty" plea on plaintiff's behalf and adjourned the case until October 5, 2022.  (Compl. 10).  On September 29, 2022, plaintiff appeared for a Salina Town Court proceeding, at which, "to [his] surprise, for the first time in over 15 months," ADA Hudson "showed up to court to

prosecute [plaintiff's] traffic cases[.]" (Compl. at 17).  On November 18, 2022, the court commenced a trial against plaintiff, during which ADA Hudson "unlawfully prosecuted [plaintiff] during his continued forward movement of this VOID case." (Compl. at 19).

ADA Albert was responsible for "signing off" on a property release form for plaintiff on December 16, 2022, concerning the return of his vehicle after it was towed during a December 10, 2022 traffic stop.  (Compl. 20-21).  The form stipulated that plaintiff needed "proof of registration, insurance and the removal of an Ignition Interlock Device requirement" before his vehicle would be returned to him.  (Compl. at 21).

DA Fitzpatrick is only mentioned once at the end of plaintiff's complaint, where it is alleged that he "abandon[ed] all pretenses of acting in accordance with prosecutorial lawful standards."  (Compl. at 22).  This is but one example of plaintiff's failure to plausibly allege the personal involvement of particular defendants in a violation of plaintiff's constitutional rights, which is a necessary element of a viable civil rights claim.[5]

In any event, because all of the claims against them relate to the prosecution of a criminal case, and other conduct "intimately associated with the judicial phase of the criminal process," these defendants are entitled to absolute immunity.  *Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (citations omitted).  Therefore, plaintiff's complaint should be dismissed as against

---

[5]See "Section IX. Personal Involvement" below.

defendants Fitzpatrick, Williams, Hudson, and Albert.

## VIII.  Claims Against Municipalities and their Agencies

### A.    Legal Standards

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor.  *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]"  *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019)(cleaned up).  "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of

his constitutional rights. *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ").  To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Id.* (quoting *Canton*, 489 U.S. at 389).

**B.    Analysis**

Plaintiff has named the Village of Solvay, the Town of Salina, and the County of Onondaga as defendants in his complaint.  In plaintiff's Tenth Cause of Action, in which plaintiff asserts "*Monell* Liability," plaintiff asserts that the unconstitutional policies and/or practices promulgated by these entities includes

> unlawfully stopping vehicles, seizing property, arresting persons without reasonable suspicion, probable cause or lawful justification; misrepresenting or falsifying evidence, discouraging sheriff deputies and employees of the Office of the Sheriff from filing police reports of corrupt governmental employees; and using excessive force, without reasonable suspicion, probable

> cause or lawful justification, violating [plaintiff's] right to a
> speedy trial, and violating [plaintiff's] right to a Jury[.]

(Compl. at 34).

To the extent plaintiff's claims against the named municipalities stem from the traffic stops affected against him and the related criminal charges subsequently imposed, as well as the repeated seizure of his vehicle, they are patently meritless.  As previously set forth, plaintiff's allegations make clear that probable cause did exist for the defendant law enforcement officers to initially stop plaintiff's vehicle for lacking proper number plates, and for subsequently towing his vehicle and issuing him citations for numerous violations of the New York Vehicle and Traffic Law, which he readily admits to.  Accordingly, plaintiff's *Monell* claims pertaining to the traffic stops fail because he has failed to sufficiently allege any associated unconstitutional policy or custom.

Plaintiff's *Monell* claims are also insufficient to the extent they stem from (1) the alleged use of excessive force by an unnamed Solvay Police Officer on June 19, 2021, (2) the allegedly unconstitutional order of protection issued by Justice Carey on November 18, 2021, and (3) the manner in which his criminal proceedings were handled.  Even if plaintiff had established that any individual defendant violated his constitutional rights on these isolated occurrences, " a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (July 16, 2008); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under

21

Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) ("Plaintiff fails to allege the existence of any other similar incident, which dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.") (citation and quotation marks omitted); *Santana v. City of N.Y.*, No. 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.' " (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  Accordingly, plaintiff has failed to state a viable *Monell* claim against the Village of Solvay, the Town of Salina, and the County of Onondaga.

Plaintiff has also named the Solvay Police Department and the Onondaga County District Attorney's Office as defendants.  Neither is a proper defendant in this matter, as they are "merely administrative arms of a municipality, [and thus] do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Harris v. Tioga Cnty.*, No. 3:17-CV-932, 2023 WL 2604125, at *12 (N.D.N.Y. Mar. 23, 2023) (Courts have routinely . . . conclude[d] that 'the District Attorney's Office is not a suable entity.') (citations omitted); *Kelly v. Guilderland Police Dep't*, No. 8:20-CV-235

(DNH/CFH), 2020 WL 6083454, at *3 (N.D.N.Y. Sept. 10, 2020), *report and recommendation adopted*, 2020 WL 6075844 (N.D.N.Y. Oct. 14, 2020) ("It is well established that '[a] police department is an administrative arm of [a] municipal corporation,' and 'cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.' ") (citation omitted). Accordingly, these claims should also be dismissed for failure to state a claim.

## IX. **Personal Involvement**

### A. **Legal Standards**

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[6]

---

[6] These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

However, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question.  Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.* at 618.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676).  The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation.  *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue.  *Id.*

**B.    Analysis**

Plaintiff has failed to plausibly allege the personal involvement of several named defendants in the complaint.  To begin, plaintiff has named Solvay Police Officers D. Czerow and Joseph Hardy as parties to this action; however their names do not appear

anywhere in the factual allegations.  Plaintiff merely references these defendants in one

sentence in a paragraph setting forth his Fourth Cause of Action, in which he states that

> Solvay Court Clerk Megan Cavaliere, Officer D. Czerow, Officer
> Joseph Hardy and Onondaga County ADA Alphonse Williams,
> conspired together to fabricate frivolous charges, in retaliation to
> the assertion of Plaintiff's Rights, while questioning the
> competency of the Solvay Court Clerk, the lawful authority of the
> Solvay police and acting judge Kara LaSorsa.

(Compl. at 27).  Plaintiff alleges no facts showing specifically how defendants Czerow

and Hardy allegedly violated his rights, but merely offers legal conclusions to this

effect.  Accordingly, the claims against defendants Czerow and Hardy should be

dismissed.

Plaintiff also attempts to impose liability against several named defendants by

reason of their supervisory authority. Plaintiff alleges that on July 29, 2022 he

> met with Town of Salina Supervisor, [defendant] Nick Paro, to
> notify him of and discuss the criminal actions that were being
> committed against [him] by his Town employee, [defendant
> Justice Carey], to which Nick Paro just brushed off my plea for
> help, thus condoning [Justice Carey's] unlawful actions against
> me.

(Compl. at 17).  Even accepting plaintiff's allegations as true, knowledge that

unconstitutional acts were occurring is insufficient to state a claim for supervisory

liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge

does not amount[ ] to the supervisor's violating the Constitution." *Tangreti*, 983 F.3d at

616-17 (quoting *Iqbal*, 556 U.S. at 676-77); *see also Lopez v. Chappius*, No.

6:17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (finding that receipt

of communication insufficient to show personal involvement because "[e]ven before

*Tangreti*, it was 'well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged' " (internal citation omitted)). Accordingly, the complaint fails to state a claim as against defendant Paro.

 Plaintiff further alleges that on or about October 18, 2021, he sent defendant Village of Solvay Mayor Derek Baichi a "Notice making him aware his employees were assaulting me, violating my rights, causing me harm, etc." (Compl. at 11).  Defendant Village of Solvay Chief of Police Derek Osbeck is identified in the "parties" section of the complaint, but is absent from any factual allegations set forth by plaintiff.

Liberally construed, plaintiff's causes of action against defendants Baichi and Osbeck concern the alleged use of excessive force by Solvay Police Officer Matthew W. Ryan, and their "policy that weaponizes [sic] the legal process against plaintiff and unsuspecting, peaceful citizens going about their daily life." (Compl. at 28).  As previously discussed, plaintiff's *Monell* claims against the named municipalities are subject to dismissal.  Otherwise, plaintiff has failed to plausibly allege that either defendant Baichi or Osbeck personally used any physical force on plaintiff, or were even present for the alleged events.  Accordingly, plaintiff's complaint should be dismissed as against these defendants.

Last, plaintiff has named Onondaga County Executive Ryan McMahon as a defendant.  Other than being identified as a party, defendant McMahon is not mentioned throughout plaintiff's factual allegations, and is only generally referred to in plaintiff's Tenth Cause of Action for a claim pursuant to *Monell*.  Plaintiff cannot,

26

however, maintain *Monell* claim against defendant McMahon in his individual capacity.[7] *See Jackson v. Williams,* No. 18-CV-1137, 2017 WL 1162196, at *3 (N.D.N.Y. Mar. 28, 2017) (quoting *Amory v. Katz*, No. 15-CV-1535, 2016 WL 7377091, at *5) ("*Monell* does not apply to . . . individuals who are sued in their individual capacity.").  Because individual defendant McMahon was not personally involved in any of the alleged Constitutional violations asserted by plaintiff, the complaint should be dismissed as against him.

## X.   Remaining Causes of Action

Plaintiff has asserted causes of action under the Fourteenth Amendment for "abuse of process" (Compl. at 25-26); the Sixth Amendment for violations of his right to a speedy trial (Compl. at 29-30); and the Seventh Amendment for violating his right to a jury trial (Compl. at 30-31).  Because the defendants against whom plaintiff has asserted these claims, or against whom the allegations in the complaint plausibly raise these claims, enjoy absolute immunity from suit and should be dismissed from this action for the reasons previously set forth in my analysis, the court recommends that these remaining causes of actions also be dismissed without further consideration of the merits.

---

[7]To the extent plaintiff is suing defendant McMahon in his official capacity, his claim is duplicative of those asserted against the defendant County of Onondaga, and subject to dismissal. *See Mr. Quinn v. Gould*, No. 3:19-CV-820, 2020 WL 1234553, at *4 (D. Conn. Mar. 13, 2020) ("[D]istrict courts within the Second Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative where the plaintiff has named the municipal entity as a defendant.") (collecting cases).  The court reaches the same conclusion with any official capacity claims asserted against defendants Paro, Baichi, and Osbeck.

XI.    **Opportunity to Amend**

A.    **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court

should afford the plaintiff the opportunity to amend at least once; however, leave to

re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer*

*& Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

B.    **Application**

This court is recommending that plaintiff's excessive force claim against

defendant Ryan survive initial review.  Otherwise, the court finds that there is no

amendment that plaintiff can make to his complaint that would allow him to sue the

remaining named defendants.  The defects in plaintiff's claims are substantive, rather

than formal, such that any amendments would be futile.  The majority of plaintiff's

claims are founded on a legal theory that has been uniformly rejected as not just lacking

in merit, but a frivolous waste of court resources.  *See Tyson v. Clifford*, No. 3:18-CV-

1600, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) ("Federal courts across the

country, however, have routinely refused to credit arguments based on a redemption,

sovereign citizen, or other similar theory because the arguments are often frivolous,

irrational and unintelligible."); *Buchholz-Kaestner v. Fitzgerald,* No. 6:16-CV-604

(GTS/TWD), 2017 WL 2345589, at *6 (N.D.N.Y. May 30, 2017) (listing cases).

Accordingly, the court cannot conclude that granting leave to amend as to the

remainder of plaintiff's claims has any likelihood of being productive in this instance.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED,** that the claim for excessive force proceed as against defendant Matthew Ryan; and it is further

**RECOMMENDED**, that the remaining defendants and causes of action be dismissed **WITH PREJUDICE,** and it is further

**ORDERED** that the defendant's deadline to answer or otherwise respond to plaintiff's complaint be stayed until the District Judge has ruled on the instant Report-Recommendation, **,** and it is further

**ORDERED** that, and copy of the Order and Report-Recommendation be served by mail upon plaintiff at his address of record.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: April 10, 2023

Andrew T. Baxter
U.S. Magistrate Judge