**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**RICHARD SPOSATO,**

                              **Plaintiff,**

        **v.**                                                **5:23-CV-364**

**PAUL G. CAREY,** *et al.*,

                              **Defendants.**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**GLENN T. SUDDABY,**
**United States District Judge**


**DECISION and ORDER**

**I.        INTRODUCTION**

        The Clerk sent Plaintiff Richard Sposato's *pro se* Complaint brought pursuant to

42 U.S.C. § 1983, Dkt. No. 1, to the Hon. Andrew T. Baxter, United States Magistrate

Judge, for initial review. *See* 04/10/23 Order and Report-Recommendation ("April

ORR"), Dkt. No. 6.  Plaintiff also moved to proceed *in forma pauperis. See id.*; Dkt. No.

2.  Judge Baxter granted plaintiff's *in forma pauperis* application and then analyzed the

claims in the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). *See generally* April

ORR.  Judge Baxter recommended that the claim for excessive force against defendant

Matthew Ryan be allowed to proceed, but that the remaining defendants and causes of

action be dismissed with prejudice. *See id.* Instead of filing objections as instructed,

plaintiff filed an amended complaint. *See* Amended Complaint ("AC"), Dkt. No. 7.  At the

same time, plaintiff filed a motion to recuse Judge Baxter. Dkt. No. 8.

        Upon review, the Hon. Thomas J. McAvoy determined that because plaintiff was

entitled to file the AC, which superseded the Complaint, "Judge Baxter's findings and

1

conclusions directed to the allegations in the Complaint [were] essentially moot."
06/26/23 Decision and Order ("June D&O"), Dkt. No. 9, at 5.  Accordingly, Judge
McAvoy terminated the April ORR as moot, and sent the case back to Judge Baxter to
analyze the claims in the AC pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). *See id.* at 6.
Judge McAvoy also concluded that plaintiff's recusal motion should be determined by
Judge Baxter in the first instance. *See id.* at 5-6.

On July 27, 2023, Judge Baxter denied the recusal motion, and, after a review of
the allegations in the AC, recommended that: the Court accept the AC as the operative
pleading; plaintiff's claim for excessive force against defendant Matthew Ryan be
allowed to proceed; the remaining defendants and causes of action set forth in the AC
be dismissed with prejudice and without an  opportunity to amend; and, if the district
court adopts the report-recommendation, the case be returned to the magistrate judge[1]
for any orders relating to service of the complaint on defendant Ryan. *See generally*
07/27/23 Order and Report-Recommendation, Dkt. No. 10 ("July ORR"). Judge Baxter
also advised plaintiff that he should not seek to file another amended complaint or a
motion to amend until the district court rules upon the recommendations addressed to
the AC. *See id*. at 19.  Judge Baxter further indicated that any further amended
complaint or motion to amend filed before the district court issued a decision on the July
ORR would be stricken as premature and not considered by the court. *See id.* at 19-20.

On August 7, 2023, plaintiff filed documents identified by the Clerk as exhibits in
support of the Amended Complaint. *See* Dkt. No. 11.

---

[1]On January 5, 2024, for administrative reasons, Chief Judge Brenda K. Sannes reassigned
magistrate judge duties in this case to the Hon. Mitchell J. Katz. *See* Dkt. No. 16.

On August 11, 2023, plaintiff filed objections to the July ORR in which he, *inter alia*, objects to the assignment of this case to Judge Baxter or any other magistrate judge, challenges Judge Baxter's decision on the recusal motion, and challenges Judge Baxter's recommendations on the claims in the AC. *See generally* "Objection to Magistrate Order and Report-Recommendations 7/27/23," Dkt. No. 12 ("Objections" or "Obj.").  Also on August 11, 2023, plaintiff filed a Second Amended Complaint which, upon cursory review, appears to contain similar if not identical claims against the same defendants named in the AC. *See* Dkt. No. 13.

On September 12, 2023, plaintiff filed documents identified by the Clerk as corrected exhibits. *See* Dkt. No. 14.

On December 15, 2023, plaintiff filed a Third Amended Complaint which, upon cursory review, appears to contain similar if not identical claims against the same defendants named in the AC. *See* Dkt. No. 15.

On February 5, 2024, plaintiff filed a Notice of Objection to the reassignment of this case to the Hon. Mitchell J. Katz, United States Magistrate Judge.  *See* Dkt. No. 17.

The matter is ripe for disposition on the issues raised in the Objections, which are addressed below.

## II.    DISCUSSION

### Assignment of A Magistrate Judge

To the extent that Plaintiff objects to the assignment of this case to Judge Baxter, Judge Katz, or any other magistrate judge because plaintiff does not consent to such an assignment, *see* Obj. at ¶ 4,[2] the challenge is rejected.  A district court judge may

---

[2] ("Plaintiff vehemently OBJECT's [sic] to the temporary assignment of this case by [J]udge McAvoy to [M]agistrate [J]udge Baxter, or to any other named magistrate judge, and withdraw [sic] any

designate a magistrate judge to issue a report and recommendation for disposition of dispositive claims or defenses in a case. *See* Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1)(B); *see also Thompson v. Gorcyca*, No. 20-CV-10727, 2021 WL 4220753, at *3 (E.D. Mich. Sept. 16, 2021), *aff'd*, No. 21-1622, 2022 WL 11367756 (6th Cir. June 28, 2022)("[T]he [Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*] provides that a district judge may refer a dispositive motion . . . to a Magistrate Judge so that the Magistrate Judge may issue, among other things, 'recommendations for the disposition' of the motion.")(citing *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999), in turn quoting 28 U.S.C. § 636(b)(1)(B)). The parties' consent for such assignments, contrary to that required by 28 U.S.C. § 636(c) for a magistrate judge to hear and determine all matters in a case, is not required. *See, e.g., Thompson*, 2021 WL 4220753, at *3 ("Such a referral 'does not require the consent of the parties because the magistrate's recommendation receives *do novo* review from the district court judge.'")(quoting *Bond v. Hood*, 889 F.2d 1086 (TABLE), 1989 WL 137846, at *1 (6th Cir. Nov. 21, 1989), and citing *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000) (noting that referrals under "28 U.S.C. § 636(b)(1)(B) do[ ] not require the consent of the parties"); *Gilman v. IRS*, 2015 WL 2345521, at *1 (W.D. Mich. Mar. 25, 2015) (rejecting argument that "the Magistrate Judge's participation in this matter [was] improper because [the plaintiff] did not consent to her handling of his case" and explaining that "[c]onsent from the parties is not required for a Court to refer a matter to a magistrate judge under § 636(b)(1)"); *Fiedler v. Wells Fargo N.A.*, No. 6:18-CV-962, 2018 WL 4193699, at *1 (M.D. Fla. Aug. 16, 2018) ("Plaintiff's consent is not required for the presiding District

---

consent given, implied and/or presumed, towards the previous appointment of a [m]agistrate judge, or future assignment of ANY magistrate judge to this case . . .").

Judge to refer a pretrial matter to a Magistrate Judge or to refer a dispositive matter to a Magistrate Judge for the issuance of a Report and Recommendation.")(citing 28 U.S.C. § 636(b)). Accordingly, plaintiff's objection to the assignment of Judge Baxter or any other magistrate judge is overruled.

### Lack of Jurisdiction

Similarly, to the extent plaintiff's Objections can be construed as challenging Judge Baxter's jurisdiction to issue the reports and recommendations in this case, *see* Obj. at ¶ 5;[3] *see also id.* at pp. 23-24,[4] the challenge is rejected.  Judge Baxter was properly assigned to issue report and recommendations in this case.  The lack of plaintiff's consent does not deprive Judge Baxter of jurisdiction to do so. *See Silver v. Bemporad*, No. 5-19-CV-00284-XR-RBF, 2019 WL 1546963, at *3 (W.D. Tex. Apr. 9, 2019), *report and recommendation adopted,* No. SA-19-CV-00284-XR, 2019 WL 1724047 (W.D. Tex. Apr. 18, 2019)("[C]ontrary to Silver's contentions, Judge Bemporad did not act in the complete absence of all jurisdiction. . . . [C]onsent is not required when, as is the case here, the district court refers a case to a magistrate judge to hear pretrial matters dispositive of claims and enter a recommended disposition. Silver's non-consent to magistrate jurisdiction simply means that the district judge must enter *final judgment* and that a magistrate judge ought to issue a report and recommendation on any dispositive motion.")(footnote omitted, emphasis in original).

---

[3] ("[T]his Plaintiff vehemently ~~Objects to Baxter's unlawful~~ ORR, dated July 27, 2023, and to his proclamations and issuance of legal advice given to Plaintiff therein . . . . Plaintiff will not be taking any of this ADVICE from Baxter, due to his recommendation in the ORR being VOID and a MOOT point.")(strikeout in original)

[4] ("[R]eiterating what was earlier stated, based wholly on evidence of undisputed FACTS submitted as EXHIBITS and Notice of Law(s), Baxter's ORR is VOID and/or MOOT, has no bearing, like a Serv-Pro commercial stating 'like it never even happened', and as such, I will pay no further attention to his VOID/MOOT July Order - Report and Recommendation, nor shall the Trial [sic] judge.")

**Recusal Decision Properly Before Judge Baxter**

To the extent plaintiff objects to Judge Baxter deciding the recusal motion in the first instance, the objection is overruled.  As Judge Baxter stated, "[i]t is well settled that a judge maintains discretion in the first instance in determining whether to disqualify him or herself, because '[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion.'" July ORR at 2-3 (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), and citing *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.,* No. 1:04-CV-0962 (DNH/RFT), 2007 WL 655607, at *3 (N.D.N.Y. Feb. 23, 2007) ("'To be clear, a judge should not refer a recusal motion to another judge but rather should exercise its 'affirmative duty to inquire into the legal sufficiency' of said motion and determine if there is a factual basis to support the charge of a 'bent of mind that may prevent or impede impartiality of judgment.'").

**Substantive Challenge**

To the extent plaintiff objects to Judge Baxter's recusal determination, the objection is overruled.  The objection is essentially an appeal from Judge Baxter's determination. *Cf. Dubnoff v. Goldstein*, 385 F.2d 717, 721 (2d Cir. 1967) (court's decision "not to disqualify himself is ordinarily reviewable only upon appeal from a final decision on the cause in which the application . . . was filed.").  A district court judge reviewing a magistrate judge's non-dispositive pretrial order, as is in issue here, may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law. *Labarge v. Chase Manhattan Bank, N.A.*, 1997 U.S. Dist. LEXIS 13803, 1997 WL 5853122, at *1 (N.D.N.Y. Sept. 3, 1997) (citing 28 U.S.C. § 636(b)(1)); Fed. R. Civ. P. 72(a); *Mathias v. Jacobs*, 167 F.Supp.2d 606, 621-23 (S.D.N.Y. 2001). Findings are

6

clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *Lanzo v. City of New York*, 1999 U.S. Dist. LEXIS 16569, 1999 WL 1007346, *2-3 (E.D.N.Y. Sept. 21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines the magistrate judge abused his discretion. *Labarge,* 1997 U.S. Dist. LEXIS 13803, 1997 WL 583122 at *1.

For the reasons stated by Judge Baxter, the recusal decision is not clearly erroneous or made contrary to law. *See* July ORR at 2-4.  Plaintiff's contention that Judge Baxter improperly denied recusal because the alleged facts support plaintiff's claims, *see, e.g.*, Obj. at ¶¶ 8-10, only serves to buttress Judge Baxter's conclusion that the recusal motion is based upon plaintiff's disagreement with Judge Baxter's recommendations in the April ORR – an insufficient basis for recusal. *See* July ORR at 3 ("Plaintiff has offered no objective facts to suggest that I have any personal bias against plaintiff. Although plaintiff clearly disagrees with my previous recommendations in this action, that disapproval alone does not 'constitute a valid basis for a bias or partiality motion.'")(quoting *Liteky v. U.S.*, 510 U.S. 540, 555 (1994)).

Similarly, the Court rejects plaintiff's contention that Judge Baxter must recuse himself because he purportedly ignored "undisputed evidence." *See* Obj. at ¶¶ 8-12, 14. Plaintiff's contention of undisputed evidence rests on the misguided proposition that because various defendants failed to respond to Plaintiff's demands to prove certain facts, or to prove their authority and jurisdiction, these issues are purportedly undisputed.  As discussed more fully below, this is a legally frivolous argument carrying

no weight. Further, this challenge is based upon plaintiff's disagreement with Judge Baxter's conclusions, not upon some objective evidence of impartiality or bias.

Judge Baxter's observation that plaintiff's allegations are consistent with ideologies shared by "Sovereign Citizens"[5] does not, by itself, establish impartiality or bias. *See* July ORR at 3.  The Court agrees with Judge Baxter that "[r]egardless of whether the plaintiff actually identifies with this group of individuals, his lengthy pleadings clearly establish his disregard for various state and local laws." *Id.*  Judge Baxter's observation in this regard does not indicate a personal bias against plaintiff.

---

[5] The Court agrees with Judge Baxter's observation that "[p]laintiff's allegations are consistent with those ideologies shared by 'Sovereign Citizens,' 'a loosely affiliated group who follow their own set of laws and, accordingly, do not recognize federal, state, or local laws, policies or regulations as legitimate.'" April ORR at 3 (citing *United States v. DiMartino*, 949 F.3d 67, 69 (2d Cir. 2020) (internal quotation marks and citation omitted). Indeed, in his Objections plaintiff asserts: "[A]s Plaintiff pointed out in his amended complaint and EXHIBITS, by law Corporate STATE statutes and codes DO NOT apply to the living, breathing man, identified as the Plaintiff herein, absent injury, damage, or consent, to which Plaintiff NEVER lawfully consented to and/or has rescinded any prior consent and as such, *Plaintiff is one of the People that clearly has sovereignty himself.*" Obj. at ¶ 20 (emphasis added). These allegations, together with plaintiff's contentions that he did not need a New York State driver's license or New York State issued vehicle registration to operate his automobile on New York roadways, are classic examples of Sovereign Citizen ideology. *See United States v. Ulloa,* 511 Fed. Appx. 105, 107 n.1 (2d Cir. 2013)(describing "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior" ); *Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019) (finding frivolous Appellant's argument that "his 1994 Florida conviction is invalid because the state, as a 'corporate entity,' lacked subject matter jurisdiction over him, a 'flesh and blood man'"); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); *Johnson v. Weare Police Dept.*, No. 12-CV-032-SM, 2013 WL 5740453, at *2, n. 2 (D.N.H. Oct. 23, 2013)("In his various filings, Johnson refers to himself as a 'Free American Sovereign,' and as 'david:Johnson, Sui Juris, an Art 30 american [sic] sovereign of the New Hampshire citizenry.' His expressed belief that he needs neither a driver's license nor a vehicle registration is consistent with those of the sovereign citizen movement."); *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (Fed. Cl. 2011) (noting that "[s]o-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings"); *Ninth Amend. Party Assn. v. Rambrosk*, No. 2:23-CV-830-SPC-NPM, 2023 WL 7109666, at *1, n. 1 (M.D. Fla. Oct. 27, 2023)(citing Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 171, 176-77, 180 (2019) for the propositions that sovereign citizens believe that "a state, as an artificial person created by the People, cannot rule over them as sovereigns," sovereign citizens' disbelief in traffic laws and their belief in the "the right not to be stopped," and the importance of the UCC to sovereign citizens).

Accordingly, plaintiff's appeal in this regard is denied and Judge Baxter's recusal decision is affirmed.

### Standard of Review – Objections to July ORR

Regarding plaintiff's objections to the July ORR, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997)(The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.).  After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

### Analysis – Objections to July ORR

The Court has conducted a *de novo* review of those portions of the July ORR to which Plaintiff makes specific objections. For reasons discussed here, these objections are overruled.

### Legally Frivolous Propositions

The majority of plaintiff's objections are based, in whole or in part, upon his improper interpretation of relevant law, and/or upon his actions that have no legal effect.

On the first issue, plaintiff contends that: (1) he did not need a New York State driver's license or a New York State issued license plate (obtained by registering a vehicle with the New York State Department of Motor Vehicles) to drive on New York roadways because his vehicle was being used for "non-commercial" purposes as

identified on a self-made placard on the back of the vehicle, *see, e.g.*, Obj. at ¶ 19;[6]

and, (2) he is not bound by the laws of New York inasmuch as he never consented to

New York State authority and because he "has sovereignty himself." *See, e.g.*, Obj. at ¶

20.[7]   These legal theories and propositions are legally frivolous. *See, e.g., Perkins v.*

*Ivey*, 772 F. App'x 245, 246 (5th Cir. 2019)(Denying "sovereign citizen" claims of no duty

to have a driver's license or vehicle registration because the Supreme Court established

"long ago that states may regulate the operation of all motor vehicles that drive within

their borders," including the licensing and registration of drivers "pursuant to their

constitutionally protected police power.")(citing *Hendrick v. Maryland*, 235 U.S. 610, 622

(1915)); *Van Horne v. Valencia*, No. 1:21-CV-00173-BU, 2022 WL 3574299, at *5 (N.D.

Tex. Feb. 16, 2022), *report and recommendation adopted,* No. 1:21-CV-173-H, 2022

WL 2800878 (N.D. Tex. July 18, 2022)("Van Horne's claims that a motor vehicle

---

[6] Plaintiff contends:

19. That, pertaining to Baxter's postulation Plaintiff committed a "traffic" violation, where probable cause existed for defendant Ryan to initiate the traffic stop [arrest], as Plaintiff pointed out in his amended complaint the definition of "commerce" and to which it relates to "traffic" (see Amended Complaint, pg. 9), which due to the Plaintiff displaying a rear plate stating used automobile to be PRIV4T3, DOT exempt, NOT FOR COMMERCIAL USE, signifying to any Law Enforcement Officer that Plaintiff was outside the jurisdiction of Commerce and to which the NYS VAT LAW applies, defendant Ryan committed an unlawful attempted stop/arrest at that time, CLEARLY without any lawful authority or jurisdiction to act, nor existence of probable cause authorizing such act, and as such, Plaintiff has lawful authority to resist defendant Ryan's unlawful arrest.
Obj., ¶ 19.

[7] Plaintiff contends:

20. That, Baxter has made clear he has no knowledge of the Law, because as Plaintiff pointed out in his amended complaint and EXHIBITS, by law Corporate STATE statutes and codes DO NOT apply to the living, breathing man, identified as the Plaintiff herein, absent injury, damage, or consent, to which Plaintiff NEVER lawfully consented to and/ or has rescinded any prior consent and as such, Plaintiff is one of the People that clearly has sovereignty himself (see EXHIBIT 4.10, sub EXHIBIT A), and the same power voted prior for a state [the republic state called New York] to be created sovereign, as well as the right and duty to overthrow a fraudulent government and/ or when the government is not working for said People, and for Baxter to think otherwise, is a clear history misunderstanding of our country's birth and the laws on hand at its creation, that are still laws and rights on the books today, even though they are tough to see and aren't seen by MOST people, Plaintiff not being one of them.
Obj., ¶ 20.

operator is not required to have a driver license without the driver's consent to be bound by the laws of Texas is an oft-rejected argument that is blatantly incorrect.")(cleaned up); *id.* ("Van Horne continues to assert that he possesses a constitutional and God-given right to travel on the roads of the State of Texas without having to comply with the laws of the State of Texas. These arguments derive from the so-called sovereign citizen movement and are legally frivolous.")(cleaned up); *Estell El ex rel. Whitaker v. City of Greensboro, N.C.*, No. 1:22-CV-48, 2022 WL 2915473, at *2 (M.D.N.C. July 12, 2022), *aff'd,* No. 22-1790, 2022 WL 17581957 (4th Cir. Dec. 12, 2022)("The constitutional right to travel gives a United States citizen the right to travel from one State to another, but it is not, as Ms. Estell El seems to think, a right to travel in any manner, without regulation, and it does not provide travelers a right to ignore state traffic laws.")(cleaned up); *id.* At *4 ("After reviewing all the documents filed in this case, as well as the relevant case law, the Court agrees with Defendants that, as to Plaintiff's claims that derive from the so-called sovereign citizen movement or other similar argument, such claims are legally frivolous.")(cleaned up); *Paul v. New York*, No. 13-CV-5047 SJF AKT, 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013)("Contrary to plaintiff's contentions, sovereign citizens, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside. Plaintiff's purported status as a sovereign citizen does not enable him to violate state and federal laws without consequence.")(cleaned up); *cf. Linge v. State of Georgia Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) (finding the sovereign citizen argument to be to "wholly insubstantial and frivolous"); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting sovereign citizen argument as "shop worn" and frivolous); *Williams v. U.S.*, No. 5:21-CV-00061 (MTT/CHW), 2021 WL 1239810, at *2

(M.D. Ga. Apr. 2, 2021)("It is plain on the face of Plaintiff's Complaint that his claims are brought under a sovereign citizen theory. This is a frivolous legal theory that is consistently rejected by federal courts.")(cleaned up); *Santiago v. Century 21/PHH Mortgage*, No. 1:12-CV-02792, 2013 WL 1281776, at *5 (N.D. Ala. Mar. 27, 2013) ("The ... theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system.").

Based upon plaintiff's frivolous legal theories and propositions, plaintiff argues that police officers did not have the authority to stop him while driving, charge him with vehicle and traffic law offenses, impound his vehicle, or charge him with other offenses ensuing from the traffic stops and/or subsequent prosecutions; prosecutors lacked authority to prosecute him for these offenses; and courts, judges, and court staff lacked authority to entertain the cases against him. *See, e.g.*, Obj. at ¶¶18-19.  Plaintiff's objections premised upon these frivolous legal theories and propositions are overruled.

On the second issue, plaintiff contends that he submitted demands to various defendants to prove certain facts and/or establish their jurisdiction and authority, and by failing to respond the facts asserted by plaintiff and the defendants' lack of jurisdiction

and authority is "undisputed." *See, e.g.*, Obj. at ¶ 8;[8] ¶ 16;[9] ¶ 17;[10] ¶ 22.[11]  From this, plaintiff contends that the various defendants are not entitled to any immunity or other defense relative to plaintiff's claims against them. *See, e.g., id.* at ¶¶ 15-17, 19, 22-25, 28-30.

Plaintiff's contentions are without merit as his demands and defendants' failures to respond thereto have no legal effect. *See Santiago v. Century 21/PHH Mortgage*, No. 1:12-CV-02792-KOB, 2013 WL 1281776, at *1 n.3 (N.D. Ala. Mar. 27, 2013) ("The court recognizes the use of 'affidavits' and other pseudo-legal documents that purport to require responses within a specified time or face 'legal consequences' of the author's own making. Such tactics do not create valid legal documents."); *Mitchell v. Vesely*, No. 5:17-CV-325-OC-30PRL, 2017 WL 11049094, at *3 (M.D. Fla. Aug. 23, 2017)("Courts have recognized that the use of affidavits and other pseudo-legal documents that purport to require responses within a specified time or face 'legal consequences' of the author's own making do not create valid legal documents. Indeed, this Court has dismissed and sanctioned parties for raising similar arguments in foreclosure

---

[8] (Defendant Cavaliere's "narration of the events" of  September 22, 2021 are superseded "due to her non [sic] rebuttal of Plaintiff's Affidavit of Fact after honorable Plaintiff gave her 21 days to object to and/or rebut the statement therein, but defaulted on said opportunity instead by remaining silent, which now allows for the court to find the facts Plaintiff presented in said affidavit, to be as stated.")

[9] ("[T]he FACTS of this case stated [in the AC and attached Exhibits] conclusively demonstrate Defendant(s) [sic] lack of jurisdiction, with regard to this Plaintiff and his situation at hand, via unrebutted affidavits and Affidavit of Status, which make Plaintiff's amended complaint substantially stronger [than the Complaint] and lawfully sound . . . due to the confirmation of Defendant's [sic] lack of personal and subject matter jurisdiction with regards to this Plaintiff, Plaintiff's claims in his amended complaint ARE NOT patently frivolous, based in whole or in part of the common law, contract law via commercial affidavit process, therefore, DO NOT FAIL to state a claim for relief.")

[10] ("Baxter has made NO reference to the affidavits of FACT, which clearly demonstrate lack of jurisdiction, as seen throughout Plaintiff's extensive EXHIBIT list.")

[11] ("[D]ue to [Defendants  Carey and LaSorsa] not having jurisdiction with regards to this Plaintiff, as seen in Plaintiff's EXHIBIITS [sic] therein complaint [sic], via unrebutted affidavits demanding defendant's [sic] Carey and LaSorsa to document their lawful authority and jurisdiction with regards to this Plaintiff, with Defendant(s) providing no such documented evidence on the record of their jurisdiction, their judicial functions were NOT lawfully authorized against this Plaintiff, and as such, Defendant's [sic] had no jurisdiction to act.").

actions.")(citations omitted).  Plaintiff's objections premised upon this legally frivolous theory are overruled.

The Court turns to the specific objections lodged by plaintiff, and, in doing so, rejects outright plaintiff's contentions based upon the legally frivolous theories and propositions addressed above. *See* Obj., *passim*.

### Defendants Carey and Hudson

To the extent Plaintiff objects to Judge Baxter's recommendations that the claims against Defendants Carey and Hudson be dismissed, *see* Obj. at pp. 5, 8, 12-14, 18, the objections are overruled.  The Court agrees with Judge Baxter that these defendants are entitled to absolute judicial immunity and absolute prosecutorial immunity, respectively, on plaintiff's claims against them. *See* July ORR at 9-10, 15.

### Defendants Watson, Elsenbeck, Lynch and Nerber

To the extent plaintiff objects to Judge Baxter's recommendation that the claims against defendants Watson, Elsenbeck, Lynch and Nerber be dismissed, *see* Obj. at pp. 8-10, 12, the objection is overruled.  "Plaintiff claims that these law enforcement defendants violated his constitutional rights when they 'unlawfully' stopped and arrested plaintiff, and towed his car, during the course of various different traffic stops." July ORR at 6 (citing AC at 16-19, 24, 35-36, 47-48).  On *de novo* review, the Court agrees with Judge Baxter that the claims against these defendants are patently frivolous and fail to state a claim for relief because the defendants had probable cause for the traffic stops they initiated. *See* July ORR at 6 (citing April ORR at 4-6); *see also id*. at 9 ("In this case, plaintiff has made clear his complete disregard for various state and local laws governing his right to operate a motor vehicle on public roads, as well as his disregard

for the authority of local and state law enforcement to enforce said traffic rules. It is, in fact, plaintiff's admitted and baseless evasion of these established laws that renders the majority of his claims against the various law enforcement defendants meritless.").

### Defendant Ryan

To the extent plaintiff objects to Judge Baxter's recommendation that the claims against defendant Ryan, other than for excessive force, be dismissed, *see* Obj. at ¶¶ 18-20, the objection is overruled.  The Court agrees with Judge Baxter that "[i]t is clear that probable cause existed for defendant Ryan to initiate the traffic stop," July ORR at 8, making the traffic stop lawful. *See Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996)("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015) ("Traffic stops are presumptively reasonable under the Fourth Amendment if the officer has probable cause to believe that a traffic infraction has occurred."); *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009)(it is lawful to make a traffic stop when officers have "reasonable suspicion of a traffic violation"); *United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006)("We find no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates, which would have been a violation of  VTL § 402(1)(a).").  This is so even though plaintiff mistakenly believed he could operate his vehicle for non-commercial purposes and with only a self-made placard on it (discussed above), and mistakenly believed he did not have to stop his vehicle after Ryan activated

his patrol vehicle's flashing lights because, in Plaintiff's opinion, the situation was not an emergency. Obj. at ¶ 18.[12]

Based on the existence of probable cause for the traffic stop, plaintiff did not have the option to disobey Ryan's directive to stop the vehicle, *see* N.Y. Veh. & Traf. Law § 1102 ("No person shall fail or refuse to comply with any lawful order or direction of any police officer . . . ."); *cf. United States v. Bogle*, 2008 WL 222673, *3 (E.D.N.Y. 2008) ("[w]hen [the officer] turned on his siren and lights, indicating that [the defendant] should pull over, [the defendant] attempted to flee in violation of N.Y. Veh. & Traf. Law § 1102"); *see also United States v. Swindle*, 407 F.3d 562, 566 (2d Cir. 2005)("We agree that any reasonable driver would understand a flashing police light to be an order to pull over, although the Supreme Court has said that such an order would not give rise to a 'stop' unless the driver submitted to the order or was physically apprehended.")(citation omitted), or avoid engaging with Ryan once plaintiff pulled into his mother's driveway, at least to address the ordinary inquires incident to a traffic stop. *See Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015)("Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary

---

[12] Plaintiff contends:

18. That, Plaintiff accepts Baxter's finding that Plaintiff's Eight [sic] Amendment claim survives initial review, but vehemently Objects to Baxter's opinion that it survives solely as to the issue of whether the alleged use [taser definitely used, supported via defendant Ryan's own statement] of the taser on Plaintiff was reasonable under the circumstances in section **V. - Defendant Ryan,** wherein Baxter reiterated Plaintiff alleges police were behind Plaintiff with emergency lights flashing, which in New York State Vehicle and Traffic Law, Section 375.41. 2 states: "Red lights and certain white lights may be displayed and flashing on an authorized emergency vehicle when such vehicle is  engaged in an EMERGENCY operation", which I highly doubt any reasonable person will conclude that going a few miles over a posted speed limit, or not having headlight fully deployed with zero pedestrians or other vehicles on the above satisfactory, well lit [sic] road, constitutes an emergency, and /or reasonable cause to be arrested, and as such, Plaintiff lawfully disregarded defendant Ryan's flashing lights, as they were unauthorized by law to be turned on in the first place.

Obj., ¶ 18 (bracketed statement in original).

inquiries incident to the traffic stop.  Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.")(cleaned up).

### Defendant LaSorsa

To the extent plaintiff objects to Judge Baxter's recommendation that the claims against defendant LaSorsa be dismissed, *see* Obj. at pp. 12-13, the objection is overruled.  As discussed above, plaintiff's legally frivolous theories and propositions fail to establish that defendant LaSorsa lacked jurisdiction to preside over the charges against plaintiff.  Therefore, for the reasons stated by Judge Baxter, defendant LaSorsa is entitled to absolute judicial immunity on plaintiff's claims against her. *See* July ORR at 9-10.

### Defendant Cavaliere

To the extent plaintiff objects to Judge Baxter's recommendation that the claims against defendant Cavaliere be dismissed based on the application of quasi-judicial immunity, *see* Obj. at ¶ 25, the objection is overruled.  Plaintiff argues that defendant Cavaliere is not entitled to quasi-judicial immunity because defendant LaSorsa "did not have jurisdiction with this Plaintiff and no immunity herself with regards to this Plaintiff," and therefore "defendant Cavaliere has no quazi-judicial [sic] immunity that flows down" from defendant LaSorsa. *Id.* As stated above, the Court rejects plaintiff's contention that defendant LaSorsa was without jurisdiction.  From this, the Court rejects plaintiff's argument that defendant Cavaliere was not acting within her official duties as the Town

of Solvay Court Clerk when she encountered plaintiff at the Court Clerk's Office on September 22, 2021.  Accordingly, the Court agrees with Judge Baxter's conclusion that "because plaintiff's claims against defendant Cavaliere stem from the tasks she was performing within the scope of her employment," she is entitled to quasi-judicial immunity on those claims. July ORR at 10-12.

### Defendants Quigley and Lyons

To the extent Plaintiff objects to Judge Baxter's recommendation that the claims against defendants Quigley and Lyons be dismissed, *see* Obj. at ¶ 24, the objection is overruled.  The Court agrees with Judge Baxter's conclusion that plaintiff's claims against these defendants should be dismissed because they are each entitled to quasi-judicial immunity on those claims. *See* July ORR at 10.  In reaching this conclusion, the Court rejects plaintiff's argument that defendant Carey was without jurisdiction and, therefore, rejects plaintiff's contention that defendants Quigley and Lyons, acting on defendant Carey's allegedly "moot orders," are not entitled to quasi-judicial immunity. As stated above, defendant Carey had jurisdiction to preside over plaintiff's case and, consequently, defendants Quigley and Lyons, acting on defendant Carey's legitimate order, are entitled to quasi-judicial immunity on plaintiff's claims against them.

### Defendants Czerow and Hardy

Plaintiff's objection to Judge Baxter's recommendation that the claims against defendants Czerow and Hardy be dismissed, *see* Obj. at pp. 15-18, is overruled.  As Judge Baxter explained,

> Solvay Police Officers Czerow and Hardy are also named in plaintiff's amended complaint. According to the plaintiff, defendants Czerow and Hardy prepared the criminal complaint with which plaintiff was ultimately charged for trespass and obstructing government administration in conjunction with his

interaction with defendant Cavaliere at Solvay Village Court. (AC at 28-30). Plaintiff alleges that these defendants "fabricate[d] frivolous charges," in retaliation for plaintiff engaging in a "constitutionally protected activity pertaining to matters of business" at the Solvay Village Court, in violation of his First Amendment rights. (AC at 58-59).

July ORR at 12-13 (footnotes omitted).

The Court agrees with Judge Baxter's conclusion that "even if plaintiff's conduct did constitute protected speech for purposes of the First Amendment, plaintiff has admitted that he was engaged in the complained of conduct, and . . . the defendants' actions were objectively reasonable given the existence of probable cause to believe plaintiff had committed the charged crimes." July ORR at 14. By plaintiff's own admissions, he went to the Village of Solvay Court Clerk's Office on September 22, 2021 and engaged defendant Cavaliere in communications for 3-5 minutes during which he demanded to know who sent him a court appearance notice; berated Cavalier that she did not know how to do her job; stated that the court had no jurisdiction over him; and raised his voice after Cavaliere shut the blinds on the security window and retreated to her desk at the back of the office for the second time during the encounter. *See* Dkt. No. 7-4 at CM/ECF pp. 38-39;[13] AC ¶¶ 96-100.[14] Plaintiff's minimalization of, and

---

[13] In this "Notice: Affidavit of Fact," plaintiff attests that at the Solvay Village Court Clerk's Office on September 22, 2021, he asked a woman believed to be Cavaliere who sent him a court appearance notice and when he was advised that the Court sent it, he stated "the Court can't send anything out, as the Court is a corporation;" that when the woman went to the back of the room to sit at her desk, he asked again who sent the notice and when the woman "refused to answer [plaintiff's] legitimate question of who is responsible for this action," the woman "proceeded to pull the blinds down on the window, going back to her desk;" that plaintiff then "immediately tried to get an answer out of her, to no avail and after about 20 seconds of no reply, [plaintiff] decided to leave;" and that plaintiff contends that the woman did not ask him to leave and he "left freely on [his] own accord after approximately about 3-5 minutes max of communication, getting no satisfactory response to [his] question."

[14] Plaintiff sets forth his versions of events at the Solvay Village Court Clerk's Office on September 22, 2021, including that after Cavaliere closed the blinds on the window and went back to her seat at her desk "in the back of the room" a second time, plaintiff, "after being lied to, with an insufficient response," then "tried to get [Cavaliere's] attention, needed to raise [his] voice slightly, such as any disgruntled customer would now that [Cavaliere] is in the back of the room, to no avail, which after

purported justification for, his actions on September 22, 2021 (including his contention that he voluntarily left the Village of Solvay Court Clerk's office without hearing Cavaliere asking him to leave), does not negate the probable cause defendants Czerow and Hardy obtained from Cavalier's statement to police. *See* Dkt. No. 7-4 at CM/ECF p. 34;[15] *see also Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)("An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed ... a crime.")(citation omitted); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.")(internal quotation marks and citation omitted); *Sessoms v. Cnty. of Suffolk*, No. 20-CV-509-ARR-SJB, 2023 WL 3179994, at *5 (E.D.N.Y. May 1, 2023)("[I]n cases where a victim directly identifies a perpetrator, that statement alone can provide probable cause to arrest.")(citing *O'Brien v. City of Yonkers*, No. 07-CV-3974 (KMK) (LMS), 2013 WL 1234966, at *9 (S.D.N.Y. Mar. 22, 2013) (collecting cases)); *Lederman v. Benepe*, 12

---

roughly 30 seconds, this plaintiff proceeded to leave the premises on his own accord, without ever hearing defendant Cavaliere ask [him] to leave."

[15] Officer Czerow's "Narrative Supplement" provides that upon being dispatched to the Solvay Court in regards to a harassment complaint on September 22, 2021, he met with Megan Cavaliere who told him that plaintiff, who Cavaliere knew from prior encounters at the Solvay Village Court Clerk's Office and who "routinely [tried] to disrupt her by engaging in legal questions and making accusations," had come to the Solvay Court Clerk's Office and loudly and sternly demanded to know who sent him a court appearance notice; that when Cavaliere stated that it was a standard court notice to appear, and then confirmed that advice after contacting a coworker by telephone, plaintiff began to yell loudly at Cavaliere that she did not know how to do her job; that when Cavaliere advised plaintiff that he needed to leave, plaintiff continued to verbally engage Cavaliere and did not leave the building; and that when Cavaliere closed the blinds to the security window plaintiff remained on the other side of the blinds yelling that Cavaliere did not know how to do her job and the court had no jurisdiction over him.

Civ. 6028, 2014 WL 1318356, at *9 (S.D.N.Y. March 28, 2014)("Where there is probable cause to believe that a plaintiff has committed a crime, . . . the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary."). This so even if plaintiff professed his innocence or justification for his conduct to the arresting officers. *See Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022), *cert. denied,* 143 S. Ct. 485 (2022)("[A]n officer is not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause.").

Likewise, for reasons discussed above, there is no merit to plaintiff's contention that the facts underlying the encounter on September 22, 2021 are proven or established because defendants Cavaliere and LaSorsa failed to respond to plaintiff's "Affidavits of Fact." *See* Obj. at ¶ 28. Moreover, even if plaintiff's Affidavits of Fact somehow established the facts underlying the events on September 22, 2021 (which they do not), they are of no moment to the probable cause determination because there is no contention that evidence of this process was presented to defendants Czerow and Hardy at the time of arrest. *See Stansbury*, 721 F.3d at 89 (In assessing probable cause, a court "must consider only those facts available to the officer at the time of the arrest and immediately before it.")(cleaned up).  Accordingly, plaintiff's objection in this regard is overruled.

### Defendants Hudson, Williams, and Albert

The Court agrees with Judge Baxter that plaintiff's claims against defendants Hudson, Williams, and Albert, each an assistant district attorney, should be dismissed

because each is entitled to absolute prosecutorial immunity. *See* July ORR at 15.  In this regard, the Court agrees with Judge Baxter that "plaintiff's claims against these defendants relate to the prosecution of a criminal case, and other conduct 'intimately associated with the judicial phase of the criminal process[.]'" *Id.* (quoting April ORR at 16-19).  The Court rejects plaintiff's frivolous argument that these defendants lost their prosecutorial immunity because they failed to respond to plaintiff's demand "to see proof of Defendant's [sic] Lawful Authority and Jurisdiction." Obj. at ¶ 30.

### New York State Department of Motor Vehicles

The Court agrees with Judge Baxter's conclusion that all claims against the New York State Department of Motor Vehicles ("NY DMV") are barred by Eleventh Amendment sovereign immunity. *See* July ORR at 15-17.  Plaintiff's objection based on his contention that New York State waived sovereign immunity by entering the Driver License Compact, *see* Obj. ¶ 31, is wholly without merit.

The Driver License Compact "is a multi-jurisdictional agreement mandating that each member state to treat traffic vehicular convictions with reciprocal recognition." *People v. Rivera*, 32 Misc. 3d 1209(A), 934 N.Y.S.2d 36 (Crim. Ct. 2011)(citing NY VTL § 516 (Article I, Section 2)). "Traffic offenses subject to the compact include such offense as operating a motor vehicle while under the influence of an alcohol or a drug, any speeding offense and reckless driving." *Id.* (citing NY VTL § 516(b), (c)). "Furthermore, all states have access to the National Driver's Registry, which can easily be accessed by computers within police cars." *Id.*  There is no indication that New York State waived sovereign immunity by entering the Driver License Compact, *see* NY VTL

§ 516, and plaintiff's arguments to the contrary, *see* Obj. at pp. 18-20, are specious at best.  Accordingly, plaintiff's objection in this regard is overruled.

**Municipal Liability**

The Court agrees with Judge Baxter that any claims against defendants Town of Salina, Village of Solvay, and the County of Onondaga should be dismissed because plaintiff has not sufficiently alleged any unconstitutional policy or custom associated with these municipal entities. *See* July ORR at 17 (citing April ORR at 20-22). Plaintiff's objection is based upon his contention that, by enforcing the New York State Vehicle and Traffic Laws, these municipalities have established unlawful policies impeding plaintiff's "liberty and freedom to travel." Obj. at ¶ 32. The objection is overruled as it is wholly without merit. *See Perkins*, 772 F. App'x at 246 ("[T]he Supreme Court established long ago that states may regulate the operation of all motor vehicles that drive within their borders, including the licensing and registration of drivers pursuant to their constitutionally protected police power.")(cleaned up); *Van Horne*, 2022 WL 3574299, at *5 ("Van Horne continues to assert that he possesses a constitutional and God-given right to travel on the roads of the State of Texas without having to comply with the laws of the State of Texas. These arguments derive from the so-called sovereign citizen movement and are legally frivolous.") (cleaned up); *Estell El ex rel. Whitaker*, 2022 WL 2915473, at *2 ("The constitutional right to travel gives a United States citizen the right to travel from one State to another, but it is not, as Ms. Estell El seems to think, a right to travel in any manner, without regulation, and it does not provide travelers a right to ignore state traffic laws.")(cleaned up); *Paul*, 2013 WL 5973138, at *3 ("Contrary to plaintiff's contentions, sovereign citizens, like all citizens of

the United States, are subject to the laws of the jurisdiction in which they reside. Plaintiff's purported status as a sovereign citizen does not enable him to violate state and federal laws without consequence.")(cleaned up).

### Defendant Commissioner of Motor Vehicles

In the AC, plaintiff names as a defendant Mark F. Schroeder, the New York State Commissioner of Motor Vehicles. AC at 5. Plaintiff states that he is suing Commissioner Schroeder both individually and in his official capacity. *Id.* at 1.

The Court agrees with Judge Baxter that "plaintiff's claim against Commissioner Schroeder in his official capacity is barred by the Eleventh Amendment." July ORR at 17 (citing *Clark v. Schroeder,* 847 F. App'x 92, 93 (2d Cir. 2021)(district court correctly held that the Eleventh Amendment immunized defendant Schroeder, a state official, from suit in his official capacity)). The Court also agrees with Judge Baxter's conclusion that, "to the extent plaintiff has sufficiently [pled] the violation of any of his constitutional rights in his amended complaint, he has not [pled] facts demonstrating that Commissioner Schroeder had any direct, personal involvement" in the underlying conduct. July ORR at 17-18 (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."); *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)(To establish personal involvement, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution.")(cleaned up). The fact that Commissioner Schroeder's signature appears on Plaintiff's driving record indicating that plaintiff's driving privileges

had been "revoked" does not establish that Commissioner Schroeder had any direct

personal involvement in the underlying circumstances leading to the revocation.

Accordingly, plaintiff's objection in this regard is overruled.

**Injunctive Relief Against**
**Commissioner Schroeder and NY DMV**

To the extent plaintiff argues he is entitled to go forward against Commissioner

Schroeder in his official capacity and against the NY DMV on his demand for injunctive

relief, *see* Obj. at ¶ 34, the argument is rejected.

"A party seeking a preliminary injunction must ordinarily establish (1) irreparable

harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious

questions going to the merits of its claims to make them fair ground for litigation, plus a

balance of the hardships tipping decidedly in favor of the moving party; and (3) that a

preliminary injunction is in the public interest." *New York ex rel. Schneiderman v.*

*Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)(cleaned up); *see also Metro. Taxicab*

*Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010)(To justify a

preliminary injunction, "a movant must demonstrate (1) irreparable harm absent

injunctive relief; and (2) either a likelihood of success on the merits, or a serious

question going to the merits to make them a fair ground for trial, with a balance of

hardships tipping decidedly in the plaintiff's favor.")(cleaned up).

Even liberally construing the AC, the only injunctive relief plaintiff seeks against

Commissioner Schroeder and/or the NY DMV is for reinstatement of plaintiff's New York

State driver's license. *See* AC at pp. 68-70.  Assuming without deciding that plaintiff

would suffer irreparable harm by Commissioner Schroeder's and/or the NY DMV's

failure to reinstate plaintiff's New York State driving privileges, plaintiff is unable to

demonstrate either a likelihood of success on the merits of the claims against these defendants, or a serious question going to the merits of the claims to make them a fair ground for litigation.  Indeed, as discussed above, plaintiff's claims against these defendants are barred by Eleventh Amendment sovereign immunity.  Furthermore, because it is undisputed that plaintiff was operating a motor vehicle in violation of the New York State Vehicle and Traffic Laws, he is unable to establish that a preliminary injunction prohibiting the enforcement of these laws by Commissioner Schroeder and/or the NY DMV would be in the public interest.  Accordingly, plaintiff's objection in this regard is overruled.

### Opportunity to Amend

The Court agrees with Judge Baxter's conclusion that, other than the excessive force claim against defendant Ryan, "the majority of Plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources." July ORR at 19.  Hence, the Court agrees with Judge Baxter's recommendation that, with the exception of the excessive force claim against defendant Ryan, the Court should dismiss the AC with prejudice and without leave to amend as against the remaining defendants and causes of action. *See id.*  Plaintiff's objection based upon his challenge to Judge Baxter's authority to issue the July ORR, *see* Obj. at pp. 22-23, does not change this conclusion.  Thus, the objection in this regard is overruled.

### Second and Third Amended Complaints

To the extent plaintiff objects to Judge Baxter's advice that plaintiff should not file any new amended complaint or motion to amend until the district court rules on the July

ORR, and that any such pleadings would be stricken and not considered, *see* Obj. at pp. 22-23, the objection is overruled.  As Judge Baxter stated, "[w]hen a pro se plaintiff qualifies to proceed IFP, the court 'shall dismiss a case at any time if the court determines' that the action is '(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.'" July ORR at 4 (quoting 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii)).  Here, as discussed above, with the exception of the excessive force claim against defendant Ryan, the claims in the AC fall into at least one of the categories referenced at § 1915 (e)(2)(B)(i)-(iii).  It would be an extreme waste of scarce judicial resources to require a magistrate judge to review another amended complaint that contains many, if not all, of the claims that the Court rejects here.  Accordingly, the Second and Third Amended Complaints, Dkt. Nos. 13 & 15, are stricken.  This case will move forward only on plaintiff's excessive force claim against defendant Ryan. Plaintiff is free to move before Judge Katz to seek leave to amend to add any related claim provided the claim is not simply a renewal or recasting of a claim dismissed with prejudice here.[16]

## III.    CONCLUSION

For the reasons stated above,

Judge Baxter's decision to deny plaintiff's recusal motion, Dkt. No. 8, is

**AFFIRMED**; and,

---

[16] "The Court cautions Plaintiff that, although the Court must construe a *pro se* litigant's submissions liberally, the Court 'should not excuse frivolous or vexatious filings by *pro se* litigants ... and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Holland v. Lions Gate Ent. Corp.*, No. 21 CIV. 2944 (AT), 2023 WL 3554447, at *2 (S.D.N.Y. Apr. 12, 2023)(quoting *Triestman v. Fed. Bureau Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (cleaned up)).

The Court **ACCEPTS** Judge Baxter's July 27, 2023 Order and Report-Recommendation, Dkt. No. 10, in its entirety.  Accordingly, it is hereby

**ORDERED** that the Amended Complaint, Dkt. No. 7, is accepted as the operative pleading; and it is further,

**ORDERED** that plaintiff's claim for excessive force as against defendant Matthew Ryan is allowed to proceed; and it is further,

**ORDERED** that the remaining defendants and causes of action set forth in the Amended Complaint are **DISMISSED WITH PREJUDICE and WITHOUT THE OPPORTUNITY TO AMEND**; and it is further,

**ORDERED** that the case be presented to Judge Katz for any orders relating to service of the Amended Complaint on defendant Ryan; and it is further,

**ORDERED** that the Second and Third Amended Complaints, Dkt. Nos. 13 & 15, are **STRICKEN**.

**IT IS SO ORDERED.**

Date: February 15, 2024

Glenn T. Suddaby
U.S. District Judge