UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

RICHARD SPOSATO,

                Plaintiff,

    v.

MATTHEW W. RYAN, Individually and in his Official Capacity,

                Defendant.

**OFFICER RYAN'S STATEMENT OF MATERIAL FACTS**
Case No.: 5:23-cv-364 (GTS/MJK)

───────────────────────────────

       Defendant Matthew W. Ryan, Individually and in his Official Capacity ("Officer Ryan"), for his Statement of Material Facts as to which he contends there is no material issue to be tried, pursuant to Local Rule 56.1(a), states as follows:

       1.     On June 19, 2021, Officer Ryan was employed by the Village of Solvay as a Police Officer. See Declaration of Matthew W. Ryan ("Ryan Dec."), ¶ 1.

       2.     At all relevant times on June 19, 2021, Officer Ryan was working in his capacity as a Police Officer for the Village of Solvay. See Ryan Dec., ¶ 2; Exhibit P to Declaration of Paul V. Mullin, Esq. ("Mullin Dec."), ¶ 1.

**Officer Ryan Attempts to Conduct a Traffic Stop**

       3.     On June 19, 2021, at approximately 2:15 a.m., Officer Ryan was in a marked patrol unit. See Ryan Dec., ¶ 2; Exhibit A to Ryan Dec., p. 5.

       4.     On June 19, 2021, at approximately 2:15 a.m., Officer Ryan was parked in the 2200 block of West Genesee Street, conducting vehicle and traffic enforcement. See Ryan Dec., ¶ 2; Exhibit A to Ryan Dec., p. 5; Exhibit P to Mullin Dec., ¶ 2.

1

5. On June 19, 2021, at approximately 2:15 a.m., Officer Ryan saw a maroon Honda Accord ("vehicle") traveling westbound on West Genesee Street, and then stop at a red light at the intersection of West Genesee Street and Fay Road. See Ryan Dec., ¶ 3; Exhibit A to Ryan Dec., p. 5; see also Exhibit G to Mullin Dec. ("Plaintiff Tr."), p. 20 lines 16-23.

6. The driver of the vehicle that Officer Ryan observed at approximately 2:15 a.m. on June 19, 2021 was plaintiff Richard Sposato. See Ryan Dec., ¶¶ 3-9; Exhibit A to Ryan Dec., p. 5.

7. When Officer Ryan saw the plaintiff's vehicle at approximately 2:15 a.m. on June 19, 2021, the plaintiff's vehicle did not have its headlights on. See Ryan Dec., ¶ 3; Exhibit A to Ryan Dec., p. 5; Exhibit B to Mullin Dec. ("Am. Comp."), ¶ 75; Exhibit P to Mullin Dec., ¶ 3; Plaintiff Tr., p. 21 lines 2-15, p. 38 line 20 – p. 40 line 7, p. 41 line 14 – p. 43 line 11, p. 69 lines 3-13; Exhibits I and J to Mullin Dec.

8. When the traffic light at the intersection of West Genesee Street and Fay Road turned green, the plaintiff accelerated quickly and began traveling in excess of 40 mph in a 30 mph zone. See Ryan Dec., ¶ 4; Exhibit A to Ryan Dec., p. 5.

9. Officer Ryan confirmed that the plaintiff was traveling in excess of 40 mph using the HR Falcon RADAR unit he had in his police vehicle. See Ryan Dec., ¶ 4; Exhibit A to Ryan Dec., p. 5.

10. The posted speed limit on the portion of West Genesee Street where the vehicle was traveling was 30 mph. See Ryan Dec., ¶ 4; Exhibit A to Ryan Dec., p. 5.

11. The plaintiff was traveling above the posted speed limit when he was on West Genesee Street. See Ryan Dec., ¶ 4; Exhibit A to Ryan Dec., p. 5; Plaintiff Tr., p. 26 line 20 – p. 27 line 22.

12. Officer Ryan pulled behind the plaintiff's vehicle as it traveled on West Genesee Street. See Ryan Dec., ¶ 5; Exhibit A to Ryan Dec., p. 5.

13. Officer Ryan began following the plaintiff's vehicle because he had observed the plaintiff commit a traffic violation. See Ryan Dec., ¶¶ 3-5; Exhibit A to Ryan Dec., p. 5.

14. Officer Ryan began following the plaintiff's vehicle because he had observed the plaintiff commit two traffic violations: the lack of illuminated headlights and speeding. See Ryan Dec., ¶¶ 3-5; Exhibit A to Ryan Dec., p. 5.

15. The plaintiff became aware that there was a police vehicle behind him when he was on West Genesee Street. See Plaintiff Tr., p. 22 lines 6-11, p. 25 line 25 – p. 26 line 4.

16. The plaintiff made a right turn from West Genesee Street onto North Orchard Road. See Ryan Dec., ¶ 6; Exhibit A to Ryan Dec., p. 5.

17. When the plaintiff made a right turn from West Genesee Street onto North Orchard Road, he did not signal before the turn. See Ryan Dec., ¶ 6; Exhibit A to Ryan Dec., p. 5.

18. Officer Ryan activated the emergency lights on his police vehicle to conduct a vehicle and traffic stop of the plaintiff's vehicle. See Ryan Dec., ¶ 6; Exhibit A to Ryan Dec., p. 5; see also Exhibit P to Mullin Dec., ¶ 6.

19. After Officer Ryan activated his police vehicle's emergency lights, the plaintiff did not pull his vehicle over. See Ryan Dec., ¶ 6; Exhibit A to Ryan Dec., p. 5; Plaintiff Tr., p. 26 lines 5-19, p. 27 line 23 – p. 28 line 6.

20. After Officer Ryan activated his police vehicle's emergency lights, the plaintiff continued traveling on North Orchard Road. See Ryan Dec., ¶ 6; Exhibit A to Ryan Dec., p. 5; Plaintiff Tr., p. 26 lines 5-19, p. 27 line 23 – p. 28 line 6.

21. Officer Ryan followed the plaintiff's vehicle on North Orchard Road with the emergency lights and siren on his police vehicle activated. See Ryan Dec., ¶ 7; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

22. While Officer Ryan followed the plaintiff's vehicle on North Orchard Road with the emergency lights and siren on his police vehicle activated, the plaintiff did not pull his vehicle over. See Ryan Dec., ¶ 7; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

23. While Officer Ryan followed the plaintiff's vehicle on North Orchard Road, the plaintiff traveled down the center of the road. See Ryan Dec., ¶ 7; Exhibit A to Ryan Dec., p. 5.

24. As he drove on North Orchard Road, the plaintiff was aware that a Solvay police vehicle was behind him with its emergency lights flashing. See Am. Comp., ¶¶ 64-65, 75; Plaintiff Tr., p. 26 lines 5-10; Plaintiff's Affidavit in Support of Motion for Summary Judgment ("Plaintiff's Affidavit"), ¶ 8.

25. As he drove on North Orchard Road, and was aware that a Solvay police vehicle was behind him with its emergency lights flashing, the plaintiff did not pull his vehicle over. See Plaintiff Tr., p. 26 lines 5-19, p. 27 line 23 – p. 28 line 6; Am. Comp., ¶¶ 64-65; Plaintiff's Affidavit, ¶¶ 8-10.

### The Plaintiff Continues to Flee From Officer Ryan

26. The plaintiff made a left turn into the driveway of his mother's house at 510 North Orchard Road. See Ryan Dec., ¶ 8; Exhibit A to Ryan Dec., p. 5; Am. Comp., ¶ 65; Plaintiff Tr., p. 28 lines 12-18.

27. When the plaintiff pulled into the driveway of 510 North Orchard Road, Officer Ryan was still behind him, with the emergency lights on his police vehicle still activated. See Plaintiff Tr., p. 27 line 23 – p. 28 line 18; see also Plaintiff's Affidavit, ¶ 11.

4

28. Deposition Exhibit 1 fairly and accurately depicts the house at 510 North Orchard Road and its driveway. See Plaintiff Tr., p. 31 line 17 – p. 32 line 7; Exhibit H to Mullin Dec.

29. The plaintiff parked his vehicle at the top of the driveway of 510 North Orchard Road. See Ryan Dec., ¶ 9; Plaintiff Tr., p. 28 lines 19-25, p. 32 lines 8-14; Exhibit H to Mullin Dec.

30. Officer Ryan parked his police vehicle and approached the plaintiff's vehicle. See Ryan Dec., ¶ 8.

31. The plaintiff exited his vehicle and headed toward a door that led into the garage of 510 North Orchard Road. See Ryan Dec., ¶ 9; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Am. Comp., ¶ 66; Plaintiff Tr., p. 29 lines 15-18; Plaintiff's Affidavit, ¶¶ 10-11.

32. This door was located on the right side of the garage, as the garage is depicted in Deposition Exhibit 1. See Plaintiff Tr., p. 32 lines 15-20; Exhibit H to Mullin Dec.

33. After the plaintiff exited his vehicle, Officer Ryan recognized him as Richard Sposato. See Ryan Dec., ¶ 9; Exhibit A to Ryan Dec., p. 5.

34. As the plaintiff proceeded toward the house, he knew that the police vehicle had also stopped at 510 North Orchard Road. See Plaintiff Tr., p. 29 lines 2-18, p. 34 lines 9-15; Plaintiff's Affidavit, ¶¶ 10-11.

35. As he proceeded toward the house at 510 North Orchard Road, the plaintiff "did not pay any attention to anything that was going on behind [him]." See Am. Comp., ¶ 67; see also Plaintiff Tr., p. 29 lines 15-24, p. 34 lines 9-15, p. 35 lines 12-14.

36. After he exited his vehicle, the plaintiff fled toward the house at 510 North Orchard Road. See Ryan Dec., ¶ 9; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Am. Comp., ¶¶ 66-67; Plaintiff Tr., p. 29 lines 2-18, p. 34 lines 9-15; Plaintiff's Affidavit, ¶¶ 10-11.

37. Officer Ryan pursued the plaintiff on foot. See Ryan Dec., ¶¶ 8-10.

38. Before Officer Ryan deployed his department-issued Taser X26 ("Taser"), he gave the plaintiff a verbal command to stop. See Ryan Dec., ¶¶ 10-12; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., pp. 1, 3; see also Exhibit P to Mullin Dec., ¶ 8.

39. After Officer Ryan gave the plaintiff a verbal command to stop, the plaintiff did not stop. See Ryan Dec., ¶ 10-11; Exhibit C to Ryan Dec., pp. 1, 3.

40. Before Officer Ryan deployed his Taser, he gave the plaintiff a verbal command to show him his hands. See Ryan Dec., ¶¶ 10-12; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; see also Exhibit P to Mullin Dec., ¶ 8.

41. After Officer Ryan gave the plaintiff a verbal command to show him his hands, the plaintiff did not show Officer Ryan his hands. See Ryan Dec., ¶¶ 10-11; Exhibit C to Ryan Dec., p. 3.

42. Before Officer Ryan deployed his Taser, he told the plaintiff that if he did not stop, he would be tased. See Ryan Dec., ¶ 10.

43. After Officer Ryan gave the plaintiff verbal commands to stop and show him his hands, the plaintiff continued to proceed toward entering the house at 510 North Orchard Road. See Ryan Dec., ¶¶ 10-11; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

44. After Officer Ryan gave the plaintiff verbal commands to stop and show him his hands, the plaintiff continued to flee. See Ryan Dec., ¶¶ 10-11; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

45. The plaintiff claims that he did not hear Officer Ryan give any verbal commands or requests. See Am. Comp., ¶ 67; Plaintiff Tr., p. 29 line 25 – p. 30 line 5, p. 33 line 24 – p. 34 line 3, p. 35 lines 5-7, p. 60 line 25 – p. 61 line 6.

46. If the plaintiff had heard Officer Ryan tell him to stop and show his hands, the plaintiff would have ignored those commands. See Plaintiff Tr., p. 65 line 6 – p. 66 line 20.

47. Officer Ryan deployed his Taser as the plaintiff was entering either the garage or the interior of the house. See Ryan Dec., ¶ 12; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Am. Comp., ¶¶ 67-68; Plaintiff Tr., p. 12 line 25 – p. 13 line 7, p. 13 lines 16-22, p. 31 lines 3-8, p. 33 lines 3-9; Exhibit M to Mullin Dec., ¶ 6.

48. When Officer Ryan deployed his Taser, the plaintiff was still fleeing. See Ryan Dec., ¶¶ 10-12; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., pp. 1, 3.

49. Only one of the two Taser probes made contact with the plaintiff's body. See Ryan Dec., ¶¶ 12-14; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 1; Am. Comp., ¶¶ 67-68.

50. One Taser probe made contact with the plaintiff's back. See Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., pp. 1-3; Am. Comp., ¶ 67; Plaintiff Tr., p. 10 line 22 – p. 11 line 14; Plaintiff's Affidavit, ¶ 13.

51. After the Taser probe made contact with the plaintiff's body, the plaintiff continued to enter the garage or house. See Ryan Dec., ¶ 12; Exhibit A to Ryan Dec., p. 5; Am. Comp., ¶¶ 67-68; Plaintiff Tr., p. 13 lines 5-15, p. 13 line 23 – p. 14 line 11, p. 16 lines 3-5; Plaintiff's Affidavit, ¶¶ 12-14.

52. After the Taser probe made contact with the plaintiff's body, the plaintiff continued to flee from Officer Ryan. See Ryan Dec., ¶ 12; Exhibit A to Ryan Dec., p. 5; Am. Comp., ¶¶ 67-68; Plaintiff Tr., p. 13 lines 5-15, p. 13 line 23 – p. 14 line 11, p. 16 lines 3-5; Plaintiff's Affidavit, ¶¶ 12-14.

53. According to Officer Ryan, when he deployed his Taser, the plaintiff was already closing the door to the interior of the house, and when the plaintiff shut the door, that caused at

least one of the two Taser probes to miss, and not make contact with the plaintiff's body.  See Ryan Dec., ¶ 12; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

54. According to the plaintiff, after the Taser probe struck him, he "grabbed the taser wire" that was attached to that probe and, as he walked into the garage, he "broke [the wire] off" and then entered the house.  See Am. Comp., ¶¶ 67-68; Plaintiff Tr., p. 13 lines 5-15, p. 13 line 23 – p. 14 line 5; Exhibit M to Mullin Dec., ¶ 6; Plaintiff's Affidavit, ¶ 14.

55. When Officer Ryan recovered the spent Taser cartridge, one probe was still connected to the wire, and the other was missing.  See Ryan Dec., ¶ 13; Exhibit C to Ryan Dec., p. 3.

56. Because both of the Taser probes did not make contact with the plaintiff's body, the circuit was never completed, and the Taser did not emit any electrical charge.  See Ryan Dec., ¶ 14.

57. The plaintiff did not receive any electrical charge from Officer Ryan's Taser.  See Ryan Dec., ¶ 14; Plaintiff Tr., p. 15 line 24 – p. 16 line 2.

58. Because the Taser did not emit any electrical charge, this was an ineffective and unsuccessful use by Officer Ryan of his Taser.  See Ryan Dec., ¶ 14; Exhibit C to Ryan Dec.; see also Exhibit P to Mullin Dec., ¶ 8.

59. On June 19, 2021, on the premises of 510 North Orchard Road, Officer Ryan did not discharge a gun.  See Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec.

60. On June 19, 2021, on the premises of 510 North Orchard Road, Officer Ryan did not shoot the plaintiff with a bullet.  See Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec.

61. Officer Ryan did not pursue the plaintiff into the interior of the house.  See Ryan Dec., ¶ 15.

62. After the plaintiff entered the house, he refused to come back out. See Ryan Dec., ¶ 15; Exhibit A to Ryan Dec., p. 5; Plaintiff Tr., p. 55 lines 19-21.

63. After the plaintiff entered the house, the plaintiff and Officer Ryan had no further in-person contact on June 19, 2021. See Ryan Dec., ¶ 16; see also Plaintiff Tr., p. 55 lines 8-21.

**The Plaintiff's Alleged Injuries**

64. After the plaintiff entered the house, either he or his mother removed the Taser probe from his back by pulling it out. See Plaintiff Tr., p. 12 lines 11-24, p. 14 lines 6-13, p. 16 lines 6-7, p. 73.

65. Before the Taser probe was removed, the plaintiff took a picture of it. See Plaintiff Tr., p. 40 line 8 – p. 41 line 8, p. 45 line 22 – p. 46 line 24.

66. The photograph the plaintiff took of the probe still attached to his body was marked as Deposition Exhibit 4. See Plaintiff Tr., p. 45 line 22 – p. 46 line 24; Exhibit K to Mullin Dec.

67. The plaintiff also took a photograph of the Taser probe after it was removed from his back. See Plaintiff Tr., p. 47 lines 8-21.

68. The photograph the plaintiff took of the Taser probe after it was removed from his back was marked as Deposition Exhibit 5. See Plaintiff Tr., p. 47 lines 8-21; Exhibit L to Mullin Dec.

69. The plaintiff testified that when he pulled out the Taser probe, there was "[a] little bit" of blood. See Plaintiff Tr., p. 14 lines 12-15.

70. The plaintiff initially testified that he did not put a bandaid on the spot where the Taser probe made contact with his body. See Plaintiff Tr., p. 14 line 24 – p. 15 line 2.

71. The plaintiff then testified: "But let's just say I can't remember if I used a bandaid. How's that?" See Plaintiff Tr., p. 14 line 24 – p. 15 line 6.

72. The plaintiff testified that when the probe made contact with him, it was "like getting shot with a dart." See Plaintiff Tr., p. 15 lines 17-20.

73. The plaintiff testified that he experienced soreness after he removed the Taser probe. See Plaintiff Tr., p. 37 lines 8-16.

74. The plaintiff testified that there was a bruise where the Taser probe contacted him. See Plaintiff Tr., p. 15 lines 21-23, p. 37 line 17 – p. 38 line 8.

75. Officer Ryan contacted the plaintiff by telephone on June 19, 2021. See Ryan Dec., ¶ 16; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Plaintiff Tr., p. 61 lines 16-19.

76. During that telephone conversation on June 19, 2021, Officer Ryan asked the plaintiff if he needed medical attention, and the plaintiff said no. See Ryan Dec., ¶ 16; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Plaintiff Tr., p. 61 lines 16-25; Plaintiff's Affidavit, ¶ 18; Exhibit P to Mullin Dec., ¶ 9.

77. During that telephone conversation on June 19, 2021, the plaintiff told Officer Ryan that he had not been struck by a Taser probe. See Ryan Dec., ¶ 16; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3.

78. The plaintiff did not receive any medical treatment as a result of the Taser probe's contact with his back. See Plaintiff Tr., p. 11 lines 15-18, p. 11 line 25 – p. 12 line 10; see also Exhibit N to Mullin Dec., ¶¶ 6-8, 15, 25.

79. The plaintiff did not receive any counseling or mental health treatment as a result of the Taser probe's contact with his back. See Plaintiff Tr., p. 11 line 19 – p. 12 line 10; see also Exhibit N to Mullin Dec., ¶¶ 6-8, 15, 25.

80. The plaintiff has not incurred any out-of-pocket expenses for medical or psychological care as a result of being struck with a Taser probe. See Plaintiff Tr., p. 48 line 21 – p. 49 line 11; Exhibit M to Mullin Dec., ¶ 8.

81. The plaintiff is not making a claim for lost wages. See Exhibit M to Mullin Dec., ¶ 2; Exhibit N to Mullin Dec., ¶¶ 19, 24.

### The Tickets Issued to the Plaintiff and the Charges Against Him

82. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for no/inadequate lights, in violation of Vehicle & Traffic Law § 375(2)(a)(1). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 1.

83. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for speeding 40 mph in a 30 mph zone, in violation of Vehicle & Traffic Law § 1180(d). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 2.

84. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for insufficient turn signal, in violation of Vehicle & Traffic Law § 1163(b). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 3.

85. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for failure to keep right, in violation of Vehicle & Traffic Law § 1120(a). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 4.

86. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for failure to comply with a lawful order, in violation of Vehicle & Traffic Law § 1102. See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 5.

87. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for operating an unregistered motor vehicle, in violation of Vehicle & Traffic Law § 401(1)(a). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 6.

88. On June 19, 2021, the plaintiff's vehicle was not registered. See Plaintiff Tr., p. 63 lines 22-25, p. 64 lines 8-9; Exhibit N to Mullin Dec., ¶ 27.

89. On June 19, 2021, the plaintiff did not have a government-issued license plate on his vehicle. See Plaintiff Tr. p. 64 line 10 – p. 65 line 5.

90. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for operating an uninspected motor vehicle, in violation of Vehicle & Traffic Law § 306(b). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 7.

91. On June 19, 2021, the plaintiff's vehicle was not inspected. See Plaintiff Tr. p. 64 lines 6-9.

92. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for operating a motor vehicle without insurance, in violation of Vehicle & Traffic Law § 319(1). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 8.

93. On June 19, 2021, the plaintiff did not have liability insurance for his vehicle. See Plaintiff Tr. p. 64 lines 2-4, p. 64 lines 8-9.

94. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for aggravated unlicensed operation of a motor vehicle in the second degree, in violation of Vehicle & Traffic Law § 511(2)(a)(ii). See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 9.

95. On June 19, 2021, the plaintiff did not have a valid driver's license. See Exhibit N to Mullin Dec., ¶ 26.

96. As a result of the incident on June 19, 2021, Officer Ryan issued a ticket to the plaintiff for operating a motor vehicle without an ignition interlock device, in violation of Vehicle & Traffic Law § 1198(9)(d).  See Ryan Dec., ¶ 20; Exhibit B to Ryan Dec.; Exhibit D to Ryan Dec., p. 10.

97. As a result of the incident on June 19, 2021, the plaintiff was charged with obstructing governmental administration in the second degree, in violation of Penal Law § 195.05.  See Ryan Dec., ¶ 21; Exhibits B and E to Ryan Dec.

98. As a result of the incident on June 19, 2021, the plaintiff was charged with resisting arrest, in violation of Penal Law § 205.30.  See Ryan Dec., ¶ 21; Exhibits B and E to Ryan Dec.

## Facts Regarding this Litigation

99. The only claim the plaintiff has against Officer Ryan is for excessive force arising out of Officer Ryan's deployment of his Taser.  See Exhibit D to Mullin Dec., pp. 15-17, 26-28.

100. In a Decision and Order filed in this action on February 15, 2024, the District Court (Hon. Glenn T. Suddaby) concluded that there was probable cause for Officer Ryan to initiate the traffic stop of the plaintiff's vehicle.  See Exhibit D to Mullin Dec., pp. 15-16.

101. In a Decision and Order filed in this action on February 15, 2024, the District Court (Hon. Glenn T. Suddaby) concluded that the plaintiff "did not have the option to disobey Ryan's directive to stop the vehicle."  See Exhibit D to Mullin Dec., p. 15.

102. In a Decision and Order filed in this action on February 15, 2024, the District Court (Hon. Glenn T. Suddaby) concluded that the plaintiff "did not have the option to . . . avoid engaging with Ryan once plaintiff pulled into his mother's driveway, at least to address the ordinary inquires incident to a traffic stop."  See Exhibit D to Mullin Dec., pp. 16-17.

13

103. Officer Ryan's response to the plaintiff's Request for Admissions was signed by Officer Ryan's attorney, Paul V. Mullin, Esq. <u>See</u> Exhibit P to Mullin Dec.

Dated: April 25, 2025

<u>S/Paul V. Mullin</u>
Paul V. Mullin, Esq.
Bar Roll. No. 501346
**SUGARMAN LAW FIRM, LLP**
Attorneys for Officer Ryan
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: (315) 474-2943
Facsimile: (315) 474-0235
pmullin@sugarmanlaw.com
