UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD SPOSATO,

                  Plaintiff,

    v.

                                      Case No.: 5:23-cv-364
                                      (GTS/MJK)

MATTHEW W. RYAN, Individually and in his Official
Capacity,

                  Defendant.
_____

**DEFENDANT MATTHEW W. RYAN'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Paul V. Mullin, Esq.
Bar Roll. No. 501346
**Sᴜɢᴀʀᴍᴀɴ Lᴀᴡ Fɪʀᴍ, LLP**
Attorneys for Matthew W. Ryan
Office and Post Office Address
211 West Jefferson Street – Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943
Facsimile:  (315) 474-0235
pmullin@sugarmanlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................... 1

LEGAL ARGUMENT

      POINT I
      LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT ...................... 1

      POINT II
      OFFICER RYAN'S ALLEGEDLY IMPROPER VERIFICATION
      DOES NOT ENTITLE THE PLAINTIFF TO SUMMARY JUDGMENT....................... 2

      POINT III
      THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
      DENIED AND OFFICER RYAN'S CROSS-MOTION SHOULD BE GRANTED ........ 4

            A.  Officer Ryan Did Not Violate the Plaintiff's Right to Be Free from Excessive
            Force Under the Fourth Amendment ..................................................... 5

                1. The Force Used Was Reasonable Under the Graham Factors ............... 6

                2. The Force Used By Officer Ryan Was De Minimis............................. 12

            B.  Officer Ryan is Entitled to Qualified Immunity Because He Did Not Violate a
            Clearly-Established Right of the Plaintiff............................................. 15

      POINT IV
      THE PLAINTIFF HAS NO FOURTH
      AMENDMENT CLAIM FOR UNLAWFUL ENTRY ...................................... 19

      POINT V
      THE REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED ................. 20

CONCLUSION................................................................................... 20

## PRELIMINARY STATEMENT

The following Memorandum of Law is respectfully submitted on behalf of defendant Matthew W. Ryan, Individually and in his Official Capacity ("Officer Ryan"), in opposition to the motion of *pro se* plaintiff Richard Sposato, which was filed with this Court on March 5, 2025, and which seeks, *inter alia*, an order granting summary judgment in his favor pursuant to Fed. R. Civ. P. 56. This Memorandum of Law is also submitted in support of Officer Ryan's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56, which seeks dismissal of the plaintiff's Amended Complaint, in its entirety and with prejudice.

For all of the following reasons, the plaintiff's motion should be denied, Officer Ryan's cross-motion for summary judgment should be granted, and the plaintiff's Amended Complaint should be dismissed, in its entirety and with prejudice.

## LEGAL ARGUMENT

### POINT I

### LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Roe, 542 F.3d at 35 (quoting Anderson, 477 U.S. at 248).

A court deciding a motion for summary judgment "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary

judgment." <u>Roe</u>, 542 F.3d at 35 (quotation marks omitted). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." <u>Id.</u> at 35-36 (quotation marks omitted). A nonmoving party can only defeat a motion for summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." <u>Id.</u> at 36 (quotation marks omitted). This requires the nonmoving party to "'do more than simply show that there is some metaphysical doubt as to the material facts.'" <u>See</u> <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).

When, as in this case, the plaintiff is proceeding *pro se*, this Court will "liberally construe" his submissions, and read them "to raise the strongest arguments they suggest." <u>See</u> <u>McLeod v. Jewish Guild for the Blind</u>, 864 F.3d 154, 156 (2d Cir. 2017) (quotation marks omitted). That liberal construction does not, however, alter the *pro se* plaintiff's evidentiary burden. <u>See</u> <u>Minto v. Molloy Univ.</u>, 715 F. Supp. 3d 422, 430 (E.D.N.Y. 2024). Similarly, "a *pro se* party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>See</u> <u>Dubuque v. Nowicki</u>, 2015 WL 3960909, *4 (N.D.N.Y. 2015) (Suddaby, J.) (quotation marks omitted).

## POINT II

### OFFICER RYAN'S ALLEGEDLY IMPROPER VERIFICATION DOES NOT ENTITLE THE PLAINTIFF TO SUMMARY JUDGMENT

The plaintiff served a Request for Admission on Officer Ryan on January 15, 2025, and Officer Ryan served a timely response. <u>See</u> Exhibit P to Declaration of Paul V. Mullin, Esq. ("Mullin Dec."). However, the Individual Verification attached to Officer Ryan's response indicated that he was verifying "the foregoing Request for Admission," rather than "the foregoing

Response to Request for Admissions." <u>See</u> Exhibit P to Mullin Dec. The plaintiff has taken what was clearly a typographical error and turned it into his primary argument in support of his motion for summary judgment. He claims that because Officer Ryan's response to his Request for Admission was not properly verified, all of the assertions in that request must be deemed admitted under Fed. R. Civ. P. 36(a)(3), and that those admissions entitle him to summary judgment. <u>See</u> Plaintiff's Memorandum of Law ("MOL"), pp. 1, 3. The plaintiff's argument should be rejected.

Requests for admission are governed by Fed. R. Civ. P. 36. Rule 36(a)(3) provides, in relevant part, that a matter will be deemed admitted unless, within 30 days of service, "the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and *signed by the party or its attorney*." <u>See</u> Fed. R. Civ. P. 36(a)(3) (emphasis added). Under the plain language of Fed. R. Civ. P. 36(a)(3), a party is not required to sign his response to a request for admission himself, and a party does not have to submit that response under oath. <u>See</u> <u>Richard v. Dignean</u>, 332 F.R.D. 450, 458 (W.D.N.Y. 2019); <u>Go v. Rockefeller Univ.</u>, 280 F.R.D. 165, 180 (S.D.N.Y. 2012). Although Fed. R. Civ. P. 36 previously included a requirement that a response to a request for admission be sworn, that requirement was removed when Rule 36 was amended in 1970, "in favor of a provision that the answer by signed by the party or his attorney." <u>See</u> 1970 Advisory Committee Note to Fed. R. Civ. P. 36.

Officer Ryan's response to the plaintiff's Request for Admissions was proper and in compliance with Rule 36(a)(3) because it was signed by his attorney, Paul V. Mullin, Esq. <u>See</u> Exhibit P to Mullin Dec. Any certification the plaintiff claims he is entitled to is "inherent in the attorney's signature and need not be expressly written in the discovery document." <u>See</u> <u>Go</u>, 280 F.R.D. at 180 (citing Fed. R. Civ. P. 26(g)(1)); <u>Richard</u>, 332 F.R.D. at 458. Further, although the Individual Verification contained a typographical error, Officer Ryan himself also signed his

response to the plaintiff's Request for Admissions.  See Exhibit P to Mullin Dec.  There is, therefore, no basis for the plaintiff's argument that all of the assertions in his Request for Admissions should be deemed admitted.

Alternatively, in the unlikely event this Court does deem all of the assertions in the plaintiff's Request for Admissions to have been admitted, the plaintiff would still not be entitled to summary judgment.  As set forth in Point III below, the undisputed facts in this case entitle Officer Ryan to summary judgment, and not the plaintiff.

**POINT III**

**THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
DENIED AND OFFICER RYAN'S CROSS-MOTION SHOULD BE GRANTED**

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021) (quotation marks omitted).  As both the Supreme Court and the Second Circuit have stated, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  See id. (quotation marks omitted); Guan v. City of New York, 37 F.4th 797, 806-07 (2d Cir. 2022) (quotation marks omitted).

When a police officer invokes qualified immunity at the summary judgment stage, this Court "must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." See Cugini v. City of New York, 941 F.3d 604, 611 (2d Cir. 2019).  If the answer to the first question is "no," the defendant has no need for an "immunity shield" because there is no viable constitutional claim, and there is, therefore, no need to engage in any further inquiries regarding qualified immunity.  See Mara v.

4

Rilling, 921 F.3d 48, 68 (2d Cir. 2019).  If, however, the answer is "yes," or not definitively "no," the defendant may still be entitled to qualified immunity if the right at issue was not clearly established at the time of the defendant's challenged actions.  See id.  In fact, a court may decide the second question in the defendant's favor and award qualified immunity without even conclusively answering the first question.  See id.

This Court may exercise its discretion in deciding which of the two prongs of the qualified immunity analysis to address first.  See Cugini, 941 F.3d at 611 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).  However, since this motion practice began with the plaintiff seeking a ruling that Officer Ryan's conduct was unconstitutional, Officer Ryan will take the questions in order and address the merits of the plaintiff's Fourth Amendment excessive force claim first.  As set forth below, because there are no genuine issues of material fact as to whether Officer Ryan violated the plaintiff's right to be free from excessive force under the Fourth Amendment, the plaintiff's motion for summary judgment should be denied, and Officer Ryan's cross-motion should be granted.  In the alternative, the plaintiff's motion should be denied, and Officer Ryan's cross-motion should be granted, because Officer Ryan did not violate a clearly established right of the plaintiff and is, therefore, entitled to qualified immunity.

### A.    Officer Ryan Did Not Violate the Plaintiff's Right to Be Free from Excessive Force Under the Fourth Amendment

The Fourth Amendment, which protects against unreasonable searches and seizures, governs claims of excessive force that arise from an arrest, an investigatory stop, or other seizure of a free person.  See Graham v. Connor, 490 U.S. 386, 394-95 (1989).  In an excessive force case, the key determination is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  See Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (quoting Graham, 490 U.S. at 397).  This

reasonableness test examines "'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  See Mickel, 297 F.3d at 122 (quoting Graham, 490 U.S. at 396); see also Sullivan v. Gagnier, 225 F.3d 161 (2d Cir. 2000).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396 (quotation marks omitted).  Courts also recognize that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly-evolving—about the amount of force that is necessary in a particular situation.  Id. at 396-97; see also LaPoint v. Vasiloff, 2018 WL 4938559, *3 (N.D.N.Y. 2018) ("Officers are often required to make sudden decisions during hostile or tense encounters that in hindsight may appear overly harsh.").

Officer Ryan did not violate the plaintiff's Fourth Amendment right to be free from excessive force for the following reasons.

### 1.   *The Force Used Was Reasonable Under the* Graham *Factors*

Officer Ryan did not violate the plaintiff's Fourth Amendment right to be free from excessive force because his use of force was reasonable upon an "aggregate assessment" of the factors outlined by the Supreme Court in Graham, 490 U.S. 386.  See Brown v. City of New York, 798 F.3d 94, 102 (2d Cir. 2015).

The first Graham factor considers the severity of the crime at issue.  See 490 U.S. at 396.  The severity of the plaintiff's offenses should be considered in their totality, because that is how they were observed and noted by Officer Ryan on June 19, 2021.  The plaintiff operated a motor

vehicle above the speed limit without its headlights on in the middle of the night; failed to signal a turn and drove down the center of the road; refused to pull his vehicle over, even though he knew he was being followed by a police vehicle with its emergency lights engaged; and then fled into a house, while failing to comply with lawful verbal commands to stop and show Officer Ryan his hands. The plaintiff's multiple offenses posed a danger to himself, and to every other motorist on the road. They also demonstrate that the plaintiff had, in the words of Magistrate Judge Baxter, a "complete disregard for various state and local laws governing his right to operate a motor vehicle on public roads, as well as [a] disregard for the authority of local and state law enforcement to enforce said traffic rules." See Exhibit C to Mullin Dec., p. 9.

The second Graham factor considers whether the suspect posed an immediate threat to the safety of the officer or others. See 490 U.S. at 396. The undisputed evidence establishes that the plaintiff engaged in conduct that violated the Vehicle & Traffic Law, was aware that he was being pursued by law enforcement, and fled in his vehicle and then on foot, and did not obey lawful verbal commands to stop and show his hands. Even if this Court concludes that the plaintiff was not violent or aggressive towards Officer Ryan, and did not try to attack Officer Ryan, that would not be dispositive and would not require summary judgment in the plaintiff's favor, or for Officer Ryan's cross-motion to be denied. See, e.g., Crowell v. Kirkpatrick, 400 Fed. App'x 592, 594-95 (2d Cir. 2010); Wittmer v. City of Oneonta, 2016 WL 11505503, *6-7 (N.D.N.Y. 2016). Indeed, this Court could conclude that the first two Graham factors weigh in the plaintiff's favor and still deny his motion and grant Officer Ryan's cross-motion. See, e.g., Crowell, 400 Fed. App'x 592 at 594-95.

The third factor of the Graham analysis, which asks whether the suspect was actively resisting arrest or trying to evade arrest by flight, is the most critical one in this case and weighs

decisively in Officer Ryan's favor.  See 490 U.S. at 396.  As this Court has recognized, some degree of force is justified when a suspect flees and attempts to evade arrest.  See, e.g., Alexander v. Nolan, 2018 WL 6621400, *7 (N.D.N.Y. 2018) (Suddaby, J.); Regels v. Giardono, 113 F. Supp. 3d 574 (N.D.N.Y. 2015) (Suddaby, J.).  Further, Courts in this Circuit have recognized that it can be "reasonable to tase a fleeing or unruly suspect who has not yet been handcuffed or otherwise secured."  See Lee v. City of Utica, 2013 WL 12140336, *4 (N.D.N.Y. 2013); see also Blackmon v. McKimmie, 2019 WL 7195320, *4 (W.D.N.Y. 2019) ("Courts in the Second Circuit have upheld the non-lethal use of taser against claims of excessive use of force against non-compliant individuals, particularly for individuals who are resisting arrest or are fleeing.") (citations omitted); Arnold v. Buck, 2013 WL 3992361, *5 (D. Conn. 2013) ("Courts considering the use of tasers have found no constitutional violation where the suspect was resisting the police officers."); Thompson v. Village of Spring Valley, 2006 WL 1889912, *4 (S.D.N.Y. 2006) (granting the defendants' motion for summary judgment where it was undisputed that the plaintiff, who was tased in the back, actively resisted arrest and attempted to evade arrest by flight).

The undisputed facts in this case conclusively establish that the plaintiff fled from Officer Ryan and was non-compliant with lawful orders.  First, the plaintiff fled from Officer Ryan in his vehicle, when he refused to pull over even though he knew there was a police vehicle behind him with its emergency lights flashing.  See Ryan Dec., ¶¶ 6-7; Exhibit B to Mullin Dec. ("Am. Comp."), ¶¶ 64-65; Exhibit G to Mullin Dec. ("Plaintiff Tr."), pp. 26-28; Plaintiff's Affidavit in Support of Motion for Summary Judgment ("Plaintiff's Affidavit"), ¶¶ 8-10.  Then, after he reached the driveway of his mother's house at 510 North Orchard Road, the plaintiff fled to the house on foot, even though he knew the police vehicle that was following him had also stopped. See Ryan Dec., ¶¶ 8-9; Am. Comp., ¶¶ 66-67; Plaintiff Tr., pp. 29, 34-35; Plaintiff's Affidavit, ¶¶

10-11.  Then, the plaintiff continued to flee and failed to comply with lawful orders when Officer

Ryan, who was pursuing him on foot, commanded him to stop and show his hands, and told him

that he would be tased if he did not stop.  See Ryan Dec., ¶¶ 10-11.  The plaintiff even continued

to flee into the house *after* Officer Ryan deployed his Taser and *after* he was struck by one of the

Taser probes  See Ryan Dec., ¶ 12; Am. Comp., ¶¶ 67-68; Plaintiff Tr., pp. 13-14, 16; Plaintiff's

Affidavit, ¶¶ 12-14.  In the plaintiff's telling, he actually "grabbed the taser wire" that was attached

to the probe that struck him and "broke [the wire] off," so that he could enter the house.  See Am.

Comp., ¶¶ 67-68; Plaintiff Tr., pp. 13-14; Exhibit M to Mullin Dec., ¶ 6; Plaintiff's Affidavit, ¶ 14.

Therefore, the undisputed evidence establishes that Officer Ryan attempted to make lawful

contact with the plaintiff to effectuate a traffic stop, but the plaintiff took knowing and intentional

action to evade that contact.  This is true regardless of whether the plaintiff walked from his vehicle

to the house (as he claims) or ran (as Officer Ryan testifies).  The plaintiff had started fleeing and

resisting police contact before he even arrived at his mother's driveway, and he only continued

that flight and resistance when he exited his vehicle and headed immediately and directly for the

inside of the house.  The fact that the Taser probe struck the plaintiff in the back is not, as he claims,

proof that Officer Ryan's use of force was excessive.  See Plaintiff's MOL, p. 1.  Rather, it is proof

that the plaintiff was still fleeing, still resisting, and still refusing to comply when Officer Ryan

deployed his Taser.

There is no merit to the plaintiff's argument that he was "not resisting or fleeing arrest"

because "in [his] mind [he] had done nothing worthy of an arrest."  See Plaintiff's Affidavit, ¶ 12.

The plaintiff's subjective intentions and motivations are irrelevant because the proper focus is on

the events from the perspective of a reasonable officer at the scene.  See Muschette v. Gionfriddo,

910 F.3d 65, 71 (2d Cir. 2018); MacLeod v. Town of Brattleboro, 548 Fed. App'x 6, 8 (2d Cir.

2013).  In any event, this Court has already concluded that there was probable cause for Officer

Ryan to initiate the traffic stop, and that the plaintiff "did not have the option to disobey [Officer]

Ryan's directive to stop the vehicle," or to "avoid engaging with [Officer] Ryan once plaintiff

pulled into his mother's driveway, at least to address the ordinary inquires incident to a traffic

stop."  See Exhibit D to Mullin Dec., pp. 16-17.[1]

The plaintiff's claim that he could not hear Officer Ryan's verbal commands is irrelevant.

Again, this Court must view the events from the perspective of a reasonable officer at the scene,

who would only have seen a suspect he was pursuing fail to comply with verbal commands.  See

Muschette, 910 F.3d at 71 (concluding that a factual dispute over whether the suspect, who was

deaf, received the officer's instructions did not prevent a grant of qualified immunity).  Further,

the plaintiff admitted at his deposition that even if he had heard Officer Ryan's commands, he

would have ignored them.  See Plaintiff Tr., pp. 65-66.

> Q.    And if the officer was in the driveway requesting you stop
> and show your hands, do you believe you had a right to ignore those
> commands?
>
> A.    At that time, if he said that, which I was not aware of any of
> those commands, yes. Because if -- if I didn't commit a crime, I
> don't have to stop. The law says you don't have to stop and talk with
> police.
>
> Q.    Okay. And if you did commit a crime, would you have
> stopped?
>
> A.    If I did commit a crime, which to me a crime is endangering
> or -- or injuring someone or damaging property, then yes, I would've
> stopped.
>
> Q.    And your actions that evening didn't amount to those?
>
> A.    Correct.

---

[1] This Court has also already rejected as "legally frivolous" the plaintiff's "sovereign citizen"
claims that he is not bound by the laws of New York State.  See Exhibit D, pp. 9-12.

<u>See</u> Exhibit G to Mullin Dec., p. 65.

In excessive force cases involving Tasers, some District Courts in this Circuit have considered an additional factor, whether the officer warned the suspect prior to deploying a Taser. <u>See</u> <u>DeGroat v. Buck</u>, 2023 WL 4763806, *9 (N.D.N.Y. 2023); <u>Hamell v. City of Utica</u>, 2019 WL 1933938, *14 (N.D.N.Y. 2019). To the extent this Court considers this additional factor, it is satisfied here, because Officer Ryan told the plaintiff that if he did not stop, he would be tased. <u>See</u> Ryan Dec., ¶ 10.

Finally, this Court should reject the plaintiff's arguments that he is entitled to summary judgment because the charges against him were ultimately dismissed and because Officer Ryan allegedly entered his mother's property unlawfully, without a warrant. <u>See</u> Plaintiff's MOL, pp. 2, 4; Plaintiff's Affidavit, ¶¶ 16, 21-23. This Court has already dismissed the plaintiff's false arrest claim and, as set forth in Point IV below, the plaintiff does not have any claim for unlawful entry against Officer Ryan. <u>See</u> Exhibit D to Mullin Dec., pp. 15-17, 26-28. This Court has also already determined that there was probable cause for Officer Ryan's traffic stop and that the plaintiff "did not have the option to . . . avoid engaging with [Officer] Ryan once plaintiff pulled into his mother's driveway, at least to address the ordinary inquires incident to a traffic stop." <u>See</u> Exhibit D to Mullin Dec., pp. 16-17. However, even if this Court had not made these findings, and even if probable cause was completely absent, and even if Officer Ryan was unlawfully on the plaintiff's mother's property, the plaintiff would still not automatically be entitled to summary judgment. This Court would still need to weigh the <u>Graham</u> factors, which always govern an excessive force claim. <u>See</u> <u>County of Los Angeles v. Mendez</u>, 581 U.S. 420 (2017); <u>Aponte v. Kanbur</u>, 2021 WL 3854069, *4-5 (2d Cir. 2021); <u>Jones v. Parmley</u>, 465 F.3d 46, 61-62 (2d Cir. 2006); <u>Kayo v. Mertz</u>, 531 F. Supp. 3d 774, 796-97 (S.D.N.Y. 2021). As set forth above, an "aggregate assessment" of

those factors establishes that Officer Ryan did not violate the plaintiff's Fourth Amendment rights.

Therefore, the plaintiff's motion for summary judgment should be denied and Officer Ryan's cross-motion should be granted.

### 2. *The Force Used By Officer Ryan Was* De Minimis

It is well-established that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted). Accordingly, "'a *de minimis* use of force will rarely suffice to state a constitutional claim.'" See Kistner v. City of Buffalo, 2024 WL 2525332, *5 n.6 (2d Cir. 2024) (quoting Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)). As this Court has recognized, a "de minimis injury can serve as conclusive proof evidence that de minimis force was used." See Alexander, 2018 WL 6621400 at *7 (quotation marks omitted) (Suddaby, J.); Regels, 113 F. Supp. 3d at 599 (Suddaby, J.). Injuries that have been held to be *de minimis* for purposes of a Fourth Amendment excessive force claim include, *inter alia*, short-term pain, swelling, bruising, and two superficial scratches with a cut inside the mouth. Id.[2]

It is undisputed that the plaintiff did not receive any electrical charge from Officer Ryan's Taser. See Plaintiff Tr., pp. 15-16. Because only one of the two Taser probes made contact with the plaintiff's body, the electrical circuit was never completed and the Taser did not emit any

---

[2] The Second Circuit recognized in Ketcham v. City of Mount Vernon, 992 F.3d 144, 150-51 (2d Cir. 2021), that it had "never held that a court may grant summary judgment to officers on an excessive force claim merely because the injuries were minor even where the force was unreasonable." The Court went on to state that "[w]hile the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone." Id. at 151. This Court should deny the plaintiff's motion and grant Officer Ryan's cross-motion regardless of whether this Court considers the *de minimis* nature of the plaintiff's injuries as only one part of its reasonableness analysis under Graham, or as dispositive proof that only *de minimis* force was used.

electrical charge.  See Ryan Dec., ¶ 14; Exhibit C to Ryan Dec.[3]  According to the plaintiff's testimony, the only injuries he suffered were as follows: a feeling "like getting shot with a dart" when the probe made contact; "[a] little bit" of blood when the Taser probe was removed;[4] soreness after the probe was removed; and a bruise where the probe contacted him.  See Plaintiff Tr., pp. 14-15, 37-38.  When Officer Ryan contacted the plaintiff by telephone later on June 19, 2021, he told Officer Ryan that he did not need medical attention.  See Ryan Dec., ¶ 16; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3; Plaintiff Tr., p. 61.  Indeed, the plaintiff admits that he never received any medical or mental health treatment as a result of being struck by the Taser probe.  See Plaintiff Tr., pp. 11-12, 48-49; Exhibit N to Mullin Dec., ¶¶ 6-8, 15, 25.

Cases like this one, where a police officer's use of a Taser is unsuccessful, are relatively rare.  However, similar facts were presented in McCray v. City of Homestead, 2020 WL 5264521 (S.D. Fla. 2020).  The *pro se* plaintiff in McCray was stopped by police for driving without his headlights, and fled from the police after he was asked to get out of his car.  The parties disputed whether the plaintiff was already handcuffed and whether he was no longer resisting at the time he was tased.  The parties agreed, however, that the plaintiff did not receive an electric shock from the Taser.  In McCray, like in this case, one of the Taser probes struck the plaintiff in the back, but the other probe struck the ground, and the electrical circuit was not completed.

The Magistrate Judge in McCray recommended granting the defendant's motion for summary judgment on the ground of qualified immunity, and that recommendation was adopted

---

[3]  See Kapuscinski v. City of Gibraltar, 821 Fed. App'x 604, 606 n.1 (6th Cir. 2020) ("Both probes must attach in order for a circuit to be completed and a taser discharge to succeed in shocking a target."); Bussey-Morice v. Gomez, 587 Fed. App'x 621, 625 (11th Cir. 2014); Pino v. Carey, 2016 WL 8849028, *2 (M.D. Pa. 2016).

[4]  The plaintiff initially testified that he did not use a bandaid, but then testified: "But let's just say I can't remember if I used a bandaid.  How's that?"  See Plaintiff Tr., pp. 14-15.

by the District Court.  See 2020 WL 5264802 (S.D. Fla. 2020).  The Magistrate Judge concluded that even if the plaintiff was handcuffed when the officer deployed his Taser, the officer did not use unreasonable force because the plaintiff was not actually subjected to an electrical shock and the process of arresting him was ongoing.  Although the plaintiff claimed that he was injured by the Taser probe puncture, the Magistrate Judge concluded that this allegation was contradicted by the record because the plaintiff denied any pain when he was taken to the hospital after the event. The Judge held that because the force used was _de minimis_ and applied in the course of a lawful arrest, the plaintiff could not establish a Fourth Amendment violation.[5]

McCray can, and should, be read for the proposition that the type of unsuccessful Taser deployment that occurred in this case – where the Taser prong made contact with the suspect but the suspect was not subjected to any electrical charge – does not constitute more than a _de minimis_ use of force.  Moreover, the minor, transitory injuries the plaintiff is claiming, for which he admittedly sought no treatment, are _de minimis_ themselves, which further establishes that only _de minimus_ force was used.  See, e.g., Green-Page v. United States, 2024 WL 3584194, *12

---

[5]  A District Court in Texas reached a different result in Sanchez v. Gomez, 2017 WL 3842137 (W.D. Tex. 2017).  In that case, one officer's Taser struck the decedent but failed to lodge in his chest, and the other officer fatally shot the decedent.  The Court rejected the defendants' argument that they were entitled to summary judgment because the two red abrasions on the decedent's elbow that were allegedly caused by the Taser were _de minimis_.  The Court stated: "Being shot with metal barbs that are supposed to emit a paralyzing jolt of electricity to their subject does not strike the Court as a de minimis injury, even if Plaintiffs do not allege that the barbs emitted any electricity as they normally do."  Sanchez, 2017 WL 3842137 at *9.  The Court also observed "that taser subjects sometimes require medical attention to remove the metal barbs."  Id.  The Court, however, also reasoned that "the specific physical manifestation of the injury here (two abrasions) should not be removed from the context in which it was inflicted."  Id.  Importantly, the context in Sanchez was far different than the facts of this case, because it involved three officers against one unarmed suspect, who had not exhibited any signs of aggressiveness other than to tell the officers to leave his home, who was not told he was under arrest or why he was being pursued, and who was moving away from the officers when he was tased.

(W.D.N.Y. 2024) (stating, in a case where the plaintiff's wrist were secured by zip ties, and he claimed he suffered minor scratches to his wrist that required only a band-aid, that "[s]uch injuries are generally treated as *de minimis* and insufficient to give rise to a constitutional violation"); Kaid v. Rudnick, 2018 WL 3850828, * (W.D.N.Y. 2018) (holding that the plaintiff's allegation of "soreness" after being punched, for which he sought no treatment, was insufficient to defeat the defendants' summary judgment motion on his excessive force claim); Brown v. City of New York, 2015 WL 427942, *5 (E.D.N.Y. 2015) (concluding that the plaintiff's injury was *de minimis* where he was knocked to the floor by an officer's shield and suffered a cut to his lip); Bermudez v. Waugh, 2013 WL 654401, *5 (N.D.N.Y. 2013) (holding, in an Eighth Amendment case, that the use of force was *de minimis* where the plaintiff described his injuries as a "little red mark," or "red bruise," which was only "a couple centimeters across"); Peterson v. Lester, 2013 WL 3822080, *4 (N.D.N.Y. 2013) (awarding the plaintiff only nominal damages for excessive force following the defendants' default where his injuries, which included minor cuts, bleeding, and bruises, was *de minimis*).

**B.    Officer Ryan is Entitled to Qualified Immunity Because He Did Not Violate a Clearly-Established Right of the Plaintiff**

Even if this Court concludes that there are genuine issues of material fact as to whether Officer Ryan violated the plaintiff's Fourth Amendment right to be free of excessive force, this Court should still deny the plaintiff's motion for summary judgment, and grant Officer Ryan's cross-motion, because Officer Ryan did not violate a clearly established right of the plaintiff.

"[A]n officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Frost v. New York City Police Dep't, 980 F.3d 231, 252 (2d Cir. 2020) (quotation marks omitted). If the constitutional right the plaintiff

invokes was not "clearly established" at the time of the alleged violation, qualified immunity will preclude any civil liability and entitle the defendant to summary judgment. See McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022).

A constitutional right will be considered "clearly established" for purposes of a qualified immunity analysis "if [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." See McKinney, 49 F.4th at 738. Although courts do not require a case that is directly on point to conclude that a defendant's conduct violated a clearly established right, "existing precedent must have placed the statutory or constitutional question beyond debate." See McKinney, 49 F.4th at 739 (quotation marks omitted).

In determining whether a right was clearly established, and in particularly in Fourth Amendment excessive force cases, a court should define that right "with specificity," and not "at a high level of generality." See City of Escondido v. Emmons, 586 U.S. 38, 42 (2019) (quotation marks omitted); see also Jones v. Treubig, 963 F.3d 214, 224 (2d Cir. 2020). In order to deny a defendant qualified immunity, "the law must be so clearly established with respect to the '*particular* conduct' and the 'specific context' at issue that 'every reasonable official would have understood that his conduct was unlawful.'" Mara, 921 F.3d at 68-69 (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)) (emphasis in original). "If the illegality of the challenged conduct would not be so apparent, officers are entitled to qualified immunity." Mara, 921 F.3d at 69. "In short, if at least some reasonable officers in the defendant's position could have believed that the challenged conduct was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." Id. (quotation marks omitted); see also Cugino, 941 F.3d at 615. This standard is "deliberately forgiving," and gives officers "breathing room to make reasonable but mistaken judgments without fear of disabling liability." Mara, 921 F.3d at 69 (quotation marks

omitted).

When this incident occurred in June 2021, there was no clearly established law that using a Taser on a fleeing or non-compliant suspect amounted to unconstitutional excessive force under the Fourth Amendment.  See Jones, 963 F.3d at 228 ("[T]here was no clearly established law that would fairly warn police officers that a taser could not be used against a resisting arrestee."); Soto v. Gaudett, 862 F.3d 148, 159 (2d Cir. 2017) (stating that "no precedent as of January 23, 2008, established that a suspect who was fleeing had a right not to be stopped by means of a taser"); Penree v. City of Utica, 694 Fed. App'x 30, 33 (2d Cir. 2017) ("Our precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest.") (emphasis in original); Harris v. Leon, 2023 WL 2051171, *6 (S.D.N.Y. 2023) (reviewing Second Circuit precedent from 2011 to 2020 and concluding that it was not clearly established "that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force"); Bryant v. City of Hartford, 2021 WL 4477311, *12 (D. Conn. 2021) ("The Hartford Police Department Defendants are entitled to qualified immunity as to this attempt to use a taser on Mr. Bryant, because he was fleeing and evading arrest."); Wehling v. Village of Medina, 2020 WL 5633631, *9 (W.D.N.Y. 2020), adopted by 2020 WL 5628990 (W.D.N.Y. 2020) (citing Soto, 862 F.3d 148, and noting that the plaintiff failed to cite any precedent that, as of June 20, 2015, a fleeing suspect had a right not to be stopped by a taser); Scott v. Lazure, 2020 WL 2615502, *8 (D. Conn. 2020) ("There are no Supreme Court or Second Circuit cases precluding the single use of a Taser . . . to stop a fleeing suspect who fails to heed a police officer's commands and actively resists arrest.  Indeed, reported cases suggest that a use of force was reasonable."); Neal v. Wilson, 2017 WL 4129635, *8 (S.D.N.Y. 2017) ("Courts have generally granted qualified immunity for deploying a taser if the suspect is fleeing or poses an

17

immediate threat to officers."); <u>Wittmer</u>, 2016 WL 11505503, *7 n.10 (stating that "it was not clearly established in October 2013 that it was unreasonable for a police officer to Taser a fleeing suspect under the circumstances here").

In this case, as discussed at length above, the undisputed facts establish that the plaintiff was a fleeing, resisting, and non-compliant suspect. These undisputed facts are dispositive, and entitle Officer Ryan to qualified immunity. <u>See Soto</u>, 862 F.3d at 159. Given the state of the law in June 2021, a reasonable officer in Officer Ryan's position could very well have concluded that deploying a Taser in the circumstances facing him did not violate the plaintiff's Fourth Amendment rights. <u>See Cugini</u>, 941 F.3d at 615.

Officer Ryan is also entitled to qualified immunity for an additional reason: because his Taser deployment was unsuccessful. In <u>Pino v. Carey</u>, 2016 WL 8849028 (M.D. Pa. 2016), adopted by 2017 WL 1541792 (M.D. Pa. 2017), the police stopped the plaintiff's vehicle following a high speed chase, and the defendant deployed his taser while the plaintiff was still in the driver's seat. One of the probes struck the plaintiff's body, but the other lodged against the rubber seal in the car door. As in this case, since both taser probes did not make contact with his body, the plaintiff in <u>Pino</u> did not experience any electric current.

The Magistrate Judge in <u>Pino</u> recommended an award of qualified immunity in favor of the defendant, and the District Court adopted that recommendation and granted the defendant's motion for summary judgment. Applying law from the Third Circuit similar to the Second Circuit law discussed above, the Magistrate Judge concluded that the right to be free from the use of a taser while resisting arrest was not clearly established. Importantly, however, the Magistrate Judge and the District Court also agreed that the defendant was entitled to qualified immunity "since the deployment of his taser did not result in any electrical discharge." <u>See Pino</u>, 2017 WL 1541792 at

*4; Pino, 2016 WL 8849028 at *2.  The Magistrate Judge specifically concluded that "no reasonable officer in [the defendant's] position would have believed that the unsuccessful use of a taser in the manner described here, where that use resulted in no electrical discharge, would have violated *clearly established law*."  Pino, 2016 WL 8849028 at *2 (emphasis in case); see also Wilkins v. Blackman, 2022 WL 2612653 (S.D. Fla. 2022), adopted by 2022 WL 3975136 (S.D. Fla. 2022) (granting summary judgment to the defendant on the ground of qualified immunity where the plaintiff was struck with taser probed, but the taser malfunctioned and had no effect on the plaintiff).

Officer Ryan is, therefore, entitled to qualified immunity and dismissal of the plaintiff's Complaint.

## POINT IV

### THE PLAINTIFF HAS NO FOURTH AMENDMENT CLAIM FOR UNLAWFUL ENTRY

As part of his motion for summary judgment, the plaintiff seeks a finding that Officer Ryan's warrantless entry onto the property of 510 North Orchard Road was unlawful under the Fourth Amendment.  See Plaintiff's Notice of Motion; Plaintiff's Affidavit, ¶ 33; Plaintiff's MOL, pp. 2, 4-5.  This request for relief should be denied because the plaintiff does not have any claim against Officer Ryan for unlawful entry.  This Court's prior Decision and Order very specifically provided that the *only* claim that survived initial review of the plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) was his claim for excessive force against Officer Ryan.  See Exhibit D to Mullin Dec., pp. 15-17, 26-28.  In any event, it is well-established that Officer Ryan's entry onto the plaintiff's mother's property to effectuate the traffic stop was not unconstitutional.  See, e.g., Seidman v. Colby, 2022 WL 137852, *1-3 (N.D.N.Y. 2022); Croke v. County of Suffolk, 2021 WL 4311000, *3-4 (E.D.N.Y. 2021); Nasca v. County of Suffolk, 2008

19

WL 53247, *4-8 (E.D.N.Y. 2008).

## POINT V

### THE REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Even if this Court does not dismiss the plaintiff's Amended Complaint in its entirety, this Court should still dismiss his request for punitive damages. Punitive damages are only warranted in an action pursuant to 42 U.S.C. § 1983 where the defendant's violation of the plaintiff's constitutional rights was intentional, or where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." See McCardle v. Haddad, 131 F.3d 43, 53 (2d Cir. 1997) (quotation marks omitted). Even viewing the facts of this case in the light most favorable to the plaintiff, none of Officer Ryan's alleged conduct rises to the level where punitive damages would be appropriate.

## CONCLUSION

For all of the foregoing reasons, the plaintiff's motion should be denied, Officer Ryan's cross-motion for summary judgment should be granted, and the plaintiff's Amended Complaint should be dismissed, in its entirety and with prejudice.

Dated: April 25, 2025

_s/ Paul V. Mullin_

_____

Paul V. Mullin, Esq.
Bar Roll. No. 501346
**SUGARMAN LAW FIRM, LLP**
Attorneys for Officer Ryan
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: (315) 474-2943
Facsimile: (315) 474-0235
pmullin@sugarmanlaw.com