DISTRICT COURT N.D. OF N.Y.

**FILED**

MAY 1 5 2025

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Richard Sposato, ) | Civil Case No.: 5:23cv-364 |
| ) | (Judges Initials) GTS / MJK |
| Plaintiff, ) | |
| ) | **RESPONSE TO** |
| v. ) | **DEFENDANT'S** |
| ) | **STATEMENT OF MATERIAL** |
| MATTHEW W. RYAN, individually and in his, ) | **FACTS LR 7.1(c)** |
| official capacity, ) | |
| ) | |
| Defendant(s). ) | |

Plaintiff Richard Sposato, pro se, respectfully responds to the Defendant Matthew W.

Ryan's Statement of Material Facts pursuant to Local Rule 56.1(b). All numbered paragraphs

below correspond to the numbered paragraphs in Defendant's Statement.

1. Admit.

2. Admit.

3. Admit.

4. Plaintiff admits that Officer Ryan was located within the 2200 block of West Genesee
   Street but denies that he was simply parked on a public street. As stated in Plaintiff's
   Affidavit and Deposition, Officer Ryan was parked in the private lot of Patrick's Dry
   Cleaners, concealed behind work vans, see Dkt. 81–2, ¶ 4 and Dkt. 94-8, at 22:8–19).

5. Admit in part and deny in part. Plaintiff admits that around 2:15 a.m. on June 19,
   2021, he was traveling westbound on West Genesee Street and stopped at the red
   light at Fay Road. Plaintiff denies that Officer Ryan could have accurately observed
   the vehicle from his position, as Ryan has not stated the direction he was facing or
   how he identified the vehicle from his concealed location (see Dkt. 81–2, ¶ 4).

1

6. Admit in part and deny in part. Plaintiff admits he was driving a maroon Honda Accord westbound on West Genesee Street around 2:15 a.m. on June 19, 2021. Plaintiff denies that Officer Ryan recognized or identified him at that time, as Ryan previously stated he only recognized Plaintiff after he exited the vehicle at 510 North Orchard Road (see Ryan Dec., ¶ 9). Plaintiff also notes that Ryan's position behind work vans in a private lot (see Dkt. 81–2, ¶ 4) makes any such identification speculative.

7. Plaintiff acknowledges that Officer Ryan alleged Plaintiff's headlights were not fully deployed. Plaintiff denies that the headlights were entirely off or inoperative, stating he was able to drive safely on a well-lit roadway and was unaware of any issue at the time (see Dkt. 81–2, ¶ 5; Dkt. 94–8, at 21:21–22:4, 42:1–22, 69:5–13). Plaintiff's Facebook posts stating, "I didn't notice my headlights weren't on," reflect a lack of awareness, not a concession (see Dkt. 94–8, Exs. 2 & 3). Defendant has not produced any video or photographic evidence confirming that all lights were, in fact, off.

8. Admit and Deny in part. Plaintiff admits he accelerated promptly when the light turned green, reflecting attentiveness to traffic signals, but denies that this acceleration equated to traveling "in excess of 40 mph" in a 30 mph zone, or any form of evasive conduct. Plaintiff estimates his speed was slightly above 30 mph and appropriate for the conditions (see Dkt. 94–8, at 27:13–22). Notably, Defendant's assertion that Plaintiff was "traveling above the posted speed" lacks specificity regarding the operation of a motor vehicle, rendering his issuance of a speeding ticket unsupported by any objective evidence.

9. Disputed. Plaintiff disputes that Officer Ryan reliably confirmed a speed "in excess of 40 mph" using the HR Falcon RADAR. No calibration logs, certification, or timestamped readout have been produced, nor any dash or body cam footage verifying the alleged speed (see Dkt. 81–2, ¶¶ 28–30). Plaintiff testified he was traveling at a prudent speed, possibly slightly above 30 mph, under safe and low-traffic conditions (see Dkt. 94–8, at 27:20–22). In the absence of supporting documentation, the radar claim is unsubstantiated.

10. Admit and Clarify. Plaintiff acknowledges the posted speed limit on West Genesee Street is 30 mph but maintains it is outdated given the wide, multi-lane road and low-traffic conditions at 2:15 a.m. (see Dkt. 94–8, at 25:2–20). Plaintiff was traveling at a prudent speed. Any related citations were dismissed with prejudice (see Dkt. 81–3, at 20; Dkt. 81–2, ¶¶ 21–23).

11. Admit in part and Deny in part. Plaintiff acknowledges traveling slightly above the posted 30 mph speed limit on West Genesee Street at approximately 2:15 a.m. on June 19, 2021, describing his speed as "prudent" under the circumstances (see Dkt. 94–8, at 27:16–22). However, Plaintiff denies that this speed constituted a traffic violation or posed any danger warranting police intervention. The roadway was clear, traffic was minimal, and his driving was consistent with safe and reasonable operation. Furthermore, the speeding ticket issued in connection with this allegation was dismissed (see Dkt. 81–3, at 20), indicating the absence of a sustained legal violation.

12. Admit in part and Deny in part. Plaintiff acknowledges that Officer Ryan positioned his vehicle behind Plaintiff's while both were traveling on West Genesee Street, see

Dkt. 81–2, ¶ 5. However, Plaintiff denies that this action was supported by any lawful or reasonable suspicion of wrongdoing. At that time, Officer Ryan had not identified Plaintiff nor observed any criminal or dangerous conduct. The absence of dash cam or body cam footage further undermines the credibility and motivation for Officer Ryan's pursuit and engagement (see Dkt. 81–2, ¶¶ 28–30).

13. Deny. Plaintiff denies that Officer Ryan observed a clear traffic violation justifying pursuit. The only alleged infraction was that Plaintiff's headlights were "not fully deployed," which Plaintiff contests was either inadvertent or incorrect based on available lighting and Plaintiff's own perception (see Dkt. 81–2, ¶ 5; Dkt. 94–8, at 21:21–22:4, 42:1–22). There is no objective evidence, such as body cam, dash cam, or equipment calibration records, confirming that a violation occurred or that Officer Ryan lawfully initiated pursuit. Furthermore, the vague and conclusory assertion that a "traffic violation" occurred is insufficient under the summary judgment standard, and the material facts remain in dispute (see Dkt. 81–2, ¶¶ 28–30).

14. Disputed. Plaintiff disputes that Officer Ryan lawfully observed two independent traffic violations, non-illuminated headlights and speeding, prior to engaging with Plaintiff. While the Court has ruled that the legality of the stop itself is not at issue, the alleged basis for the stop remains pertinent to evaluating the reasonableness of the force employed under the Fourth Amendment. The cited materials (Ryan Dec. ¶¶ 3–5; Ex. A, p. 5) lack contemporaneous dash cam, body cam, radar data, or photographic evidence substantiating either violation. Plaintiff's deposition testimony reflects a reasonable belief that his headlights were on (see Dkt. 94–8, at 21:3–15, 42:1–22) and that he was traveling at a prudent speed given road conditions (see Dkt.

94–8, at 26:20–27:20). These credibility disputes directly inform the question of whether the use of force was objectively reasonable and thus preclude summary judgment on this issue.

15. Admit. Plaintiff admits that he became aware of a police vehicle behind him while traveling on West Genesee Street (see Dkt. 94-8, Plaintiff Tr. at 22:6–11, 25:25–26:4).

16. Admit. Plaintiff admits that he made a right turn from West Genesee Street onto North Orchard Road (see Dkt. 81–2, ¶ 7, Dkt. 94–8, Plaintiff Tr. at 26:16–17; see also Ryan Dec., ¶ 6).

17. Denied. Plaintiff denies that he failed to signal before turning from West Genesee Street onto North Orchard Road. As set forth in Plaintiff's sworn affidavit and deposition, Plaintiff used his turn signal prior to making the right-hand turn (see Dkt. 81–2, ¶ 7, Dkt. 94–8, Plaintiff Tr. at 26:16–17). Defendant has offered no dash cam, body cam, or third-party witness evidence to support the allegation. Additionally, the failure-to-signal ticket issued was dismissed (see Dkt. 81–3, at 20), further undermining the credibility of Defendant's claim and establishing a genuine dispute of material fact.

18. Admit in part and Deny in part. Plaintiff admits that Officer Ryan eventually activated the emergency lights on his vehicle, but denies that they were initially directed at him or that he understood them to be a signal for a traffic stop (see Dkt. 94–8, at 26:9–19; Dkt. 81–2, ¶ 8).

19. Admit in part and Deny in part. Plaintiff admits he did not immediately stop upon observing the emergency lights. However, he slowed his vehicle and moved to the

right, expecting Officer Ryan to pass (see Dkt. 94–8, Plaintiff Tr. at 28:3–4; Dkt. 81-2, ¶ 9). Given that Plaintiff was within seconds of reaching his mother's driveway, he chose to pull in there rather than stop mid-road. This brief continuation was not evasive but a reasonable decision based on his beliefs at the time.

20. Refer to Response to Paragraph 19. Plaintiff incorporates by reference his response to Statement of Material Fact No. 19, which fully addresses the allegations regarding Plaintiff's conduct following the activation of Officer Ryan's emergency lights.

21. Denied. Plaintiff denies that Officer Ryan followed him with both emergency lights and a siren activated. While Plaintiff acknowledges that emergency lights were eventually turned on, he consistently testified that he did not hear any siren during the incident, stating, "I can't say that I heard any sirens" (see Dkt. 94–8, at 28:9–11). Defendant has not produced any dash cam, body cam, or audio evidence to confirm the siren was in use. Notably, Officer Ryan's SMF #19 omits any reference to a siren during the same timeframe, casting doubt on the credibility and consistency of his account.

22. Denied. Plaintiff denies that Officer Ryan was following him with both emergency lights and a siren activated, and thus denies the implication that Plaintiff failed to yield in disregard of a clear police signal. Plaintiff testified he did not hear a siren (see Dkt. 94–8, at 28:9–11) and believed the emergency lights might not have been directed at him (see Dkt. 94–8, at 26:9–19). Defendant has provided no objective evidence, such as dash cam, body cam, or audio, to verify siren use. Furthermore, Defendant's reliance on Exhibit C to the Ryan Declaration is improper, as that exhibit was never filed with the Court and was not entered into the record; thus, it must be

stricken and cannot support this statement under Local Rule 56.1. Accordingly, Plaintiff's decision to proceed to his mother's nearby driveway was reasonable under the circumstances and not evasive.

23. Denied. Plaintiff denies traveling down the center of North Orchard Road and states he remained on the right half of the roadway in accordance with VTL § 1120(a). Defendant has offered no objective evidence to support this claim and the related charge was dismissed with prejudice (see Dkt. 81–3, at 20).

24. Disputed. Plaintiff did not immediately observe the emergency lights of the Solvay police vehicle upon entering North Orchard Road. His deposition testimony indicates that he first noticed the lights approximately halfway down the road, not at the outset as implied. (Dkt. 94–8, at 26:5–10).

25. Disputed. Plaintiff did not immediately observe emergency lights, and upon noticing them, he slowed down and moved to the right side of the road. When the officer did not pass, Plaintiff continued a short distance and pulled into his mother's driveway. (Dkt. 94-8, at 27:23–28:15; Dkt. 81-3, ¶¶ 8–10).

26. Admitted. Plaintiff turned left into the driveway of his mother's residence at 510 North Orchard Road. (Dkt. 94–8, at 28:12–15).

27. Admitted in part, disputed in part. Plaintiff admits Officer Ryan followed him into the driveway with emergency lights activated. However, Plaintiff did not observe at the time exactly where the police vehicle stopped in the driveway, as he did not pay attention to its final position while walking toward the side garage door of the house. Video evidence recorded after Plaintiff entered the house confirms that Officer Ryan

parked in the driveway behind Plaintiff. (See MSJ Exhibit 7, video file #

20210619_024040.mp4; Dkt. 94-8, at 28:19–29:14; Dkt. 81-3, ¶ 4; Dkt. 81-2, ¶ 11).

28. Admitted. Deposition Exhibit 1 fairly and accurately depicts the house at 510 North

Orchard Road and its driveway. (Dkt. 94–8, at 31:17–32:7).

29. Admitted. Plaintiff parked his vehicle near the top of the driveway at 510 North

Orchard Road. (Dkt. 94-8, at 28:19–25, 32:8–14).

30. Admitted in part, disputed in part. Plaintiff admits Officer Ryan parked and exited his

vehicle but disputes that Ryan parked on the street or the manner in which he

approached. Plaintiff testified that Ryan pulled into the driveway behind him, and the

video evidence confirms this. (See MSJ Exhibit 7, video file #

20210619_024040.mp4; Dkt. 94-8, at 29:1–24).

31. Admitted. Plaintiff exited his vehicle and proceeded toward the side door leading into

the garage of 510 North Orchard Road (see Dkt. 94-14, ¶ 6, Dkt. 94-8, at 29:15–18;

Dkt. 81–3, ¶ 10).

32. Admitted. The door Plaintiff approached was located on the right side of the garage,

as shown in Deposition Exhibit 1 (see Dkt. 94-14, ¶ 6, Dkt. 94–8, at 32:15–20).

33. Disputed. Plaintiff cannot confirm what Officer Ryan recognized or perceived upon

his exit from the vehicle, and therefore lacks knowledge sufficient to admit the

assertion. (See Dkt. 94-8, at 29:15–18).

34. Admitted. As Plaintiff proceeded toward the house, he was aware that the police

vehicle had entered and stopped in the driveway at 510 North Orchard Road (see MSJ

Exhibit 7, video file # 20210619_024040.mp4, Dkt. 94-8, at 29:2–18; 34:9–15; Dkt.

81–2, ¶ 11; Dkt. 81–3, ¶ 4).

35. Admitted. As Plaintiff proceeded toward the house, he did not pay attention to what was occurring behind him. (Dkt. 94-8, at 29:15–30:5; 34:9–15; 35:12–14).

36. Denied. Plaintiff did not flee but exited his vehicle and walked calmly toward the house. He was not under arrest, was not commanded to stop, and was unaware of Officer Ryan's movements. The use of the term "fled" is legally inaccurate under NY Penal Law §§ 270.25 and 205.05, and mischaracterizes Plaintiff's conduct. (see Dkt. 94-14, ¶ 6, Dkt. 94-8, at 29:2–18; 34:9–15; Dkt. 81–2, ¶ 11; Dkt. 81–3, ¶ 5).

37. Denied. Plaintiff did not observe Officer Ryan's movements after exiting his vehicle and was struck with a Taser as he opened the exterior side door to the garage, while still outside. Officer Ryan falsely claims he parked on the street, pursued Plaintiff into the garage, and deployed the Taser as Plaintiff attempted to enter the interior door of the residence, claims that contradict Plaintiff's testimony and objective evidence, including Ryan's own declaration. Ryan also stated the Taser was deployed from approximately 20 feet away, despite never entering the garage, which is neither 20 feet in width nor depth and was obstructed by a parked vehicle and stored items. Video evidence and the physical layout of the garage demonstrate that Ryan's account is materially false. (see Dkt. 94-14, ¶ 6, MSJ Exhibit 7, video file # 20210619_024040.mp4; Dkt. 94-8, at 29:2–24; Dkt. 81-2, ¶ 11; Dkt. 94-22, at 2–3; Dkt. 94-19, ¶¶ 8–10).

38. Denied. Plaintiff did not hear any verbal command to stop before being struck with the Taser. At the time of deployment, Plaintiff was walking along the cement pathway beside the house and was unaware of Officer Ryan's presence or actions. The claim that a verbal warning was given is contradicted by Plaintiff's sworn

deposition and interrogatory response, and is further undermined by Ryan's inaccurate account of chasing Plaintiff into the garage and falsely claiming he parked on the street. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 94-19, ¶¶ 10–12; MSJ Exhibit 7, video file # 20210619_024040.mp4).

39. Denied. Plaintiff did not hear any verbal command to stop and was unaware of Officer Ryan's presence at the time of the Taser deployment. Because no command was heard, Plaintiff could not have refused to comply. Moreover, Plaintiff's conduct did not constitute "fleeing" under New York Penal Law § 270.25, as he was neither speeding nor engaged in reckless behavior, and had already exited his vehicle on private property and was walking calmly toward the residence of his mom. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6).

40. Denied. Plaintiff did not hear any verbal command to show his hands prior to being struck with the Taser and was unaware of Officer Ryan's presence. The claim that a verbal command was given is contradicted by Plaintiff's deposition and interrogatory response and is further undermined by Officer Ryan's false narrative that Plaintiff was "fleeing" inside the garage. Ryan later admitted under oath that Plaintiff was not suspected of any specific crime and that his use of force was based solely on alleged noncompliance, not any threat or danger. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 94-16, Interrogatory ¶ 12; Dkt. 94-19, ¶¶ 10–12).

41. Denied. Plaintiff did not hear any command to show his hands and was unaware of Officer Ryan's presence at the time. Because no command was heard, Plaintiff could not have refused to comply. Plaintiff was unarmed, not resisting, and had no reason to

believe he was under arrest or subject to police authority. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 81-2, ¶ 12).

42. Denied. Plaintiff did not hear any statement or warning from Officer Ryan before being struck with the Taser and was unaware of Ryan's presence at the time. Plaintiff was unarmed, not resisting, and had no reason to believe he was subject to arrest or that a warning had been given. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 81-2, ¶ 12).

43. Denied. Plaintiff did not hear any verbal commands to stop or show his hands and was unaware of Officer Ryan's presence at the time. Plaintiff proceeded toward the house without knowledge of any commands. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 81-2, ¶ 12).

44. Denied. Plaintiff did not hear any verbal commands to stop or show his hands and was unaware of Officer Ryan's presence at the time. Plaintiff proceeded calmly toward the house without knowledge of any commands and was not fleeing, as he had committed no crime, did not believe he was being detained or arrested, with all charges were later dismissed. (Dkt. 94-8, at 29:25–30:5; Dkt. 94-14, ¶ 6; Dkt. 81-2, ¶ 12; Dkt. 81-3, at 20).

45. Admitted. Plaintiff has consistently testified that he did not hear any verbal commands or requests from Officer Ryan prior to being struck with the Taser. (Dkt. 94-8, at 29:25–30:5; 33:24–34:3; 35:5–7; 60:25–61:6).

46. Denied. Plaintiff did not hear any commands and cannot speculate on how he might have responded. Plaintiff testified that he did not believe he had committed any crime and did not understand why police intervention was occurring. Plaintiff did not say he

would ignore lawful commands; he stated he did not hear them. When Plaintiff asked

for clarification as to the definition of a crime, defense counsel abruptly redirected the

questioning to economic damages rather than identifying any basis for lawful police

action. (Dkt. 94-8, at 29:25–30:5; 33:24–34:3; 35:5–7; 60:25–61:6; 65:6–66:21).

47. Denied. Plaintiff was struck with a Taser while standing outside, as he opened the

exterior side door leading into the garage. Plaintiff has consistently testified that he

was not inside the garage or residence at the time of the Taser deployment. Officer

Ryan has made conflicting sworn statements, variously claiming that Plaintiff was

entering the garage, entering the residence, had already shut the interior door, or that

Ryan had followed Plaintiff into the garage. These contradictions undermine Ryan's

credibility and demonstrate that his version of events is materially inconsistent and

factually unreliable. (Dkt. 94-8, at 12:25–13:7, 13:16–22, 31:3–8, 33:3–9; Dkt. 94-14,

¶ 6; Dkt. 81-2, ¶ 11; Dkt. 94-19, ¶ 12; Exhibit A to Ryan Dec., p. 5; Exhibit C to

Ryan Dec., p. 3).

48. Denied. Plaintiff was not fleeing at the time the Taser was deployed. Plaintiff had

exited his vehicle, was walking calmly toward the side door of his mother's garage,

and was struck with a Taser while opening that door. Officer Ryan's claim that

Plaintiff was still fleeing is contradicted by the physical layout of the property,

Plaintiff's deposition and affidavit, and Ryan's own conflicting statements. Ryan's

Subject Management Report admits that Plaintiff was tased for allegedly ignoring

commands, not because he posed a threat or was engaged in active flight. The report

also contains a prejudicial and unsubstantiated reference to Plaintiff's character,

which is misleading. Plaintiff is not "known" for resistance but is a respected

community member, Bowling Hall of Famer, and President/CEO of Lane #1

Bowling. (Dkt. 94-8, at 12:25–13:7, 29:25–30:5, 33:3–9; Dkt. 81-2, ¶ 11; Dkt. 94-14,

¶ 6; Dkt. 94-22, ¶ 1).

49. Admitted. Plaintiff acknowledges that only one of the two Taser probes made contact

with his body, and the Taser did not properly discharge. This is confirmed by

Plaintiff's testimony, photographic evidence, and sworn affidavit. (Am. Comp., ¶¶

67–68; Dkt. 81-2, ¶¶ 13–14; Dkt. 94-8, at 11:2–6, 12:11–15, 17:7–10, 33:8–9, 40:10–

13, 40:18–19, 47:15–16; MSJ Exhibit 7, 20210619_023215.jpg).

50. Admitted. Plaintiff acknowledges that one Taser probe made contact with his back.

(Am. Comp., ¶ 67; Dkt. 81-2, ¶ 13; Dkt. 94-8, at 10:22–11:14).

51. Admitted in part, disputed in part. Plaintiff acknowledges that after being struck with

the Taser, he continued into the garage and then into the house. However, Plaintiff

was already at the garage door when the Taser probe made contact, and his entry was

a natural continuation of his movement, not in reaction to any commands or pursuit.

(Am. Comp., ¶¶ 67–68; Dkt. 81-2, ¶¶ 12–14; Dkt. 94-8, at 13:5–15, 13:23–14:11,

16:3–5).

52. Denied. Plaintiff did not flee from Officer Ryan. Plaintiff was struck with the Taser

while opening the exterior side door to the garage and continued inside as a natural

reaction to the impact. Plaintiff had committed no crime, was not resisting arrest, and

had no reason to believe he was being lawfully detained. (Am. Comp., ¶¶ 67–68; Dkt.

81-2, ¶¶ 12–14; Dkt. 94-8, at 13:5–15, 13:23–14:11, 16:3–5).

53. Denied. Plaintiff was not closing the interior door to the house when the Taser was

deployed. Plaintiff was struck by the Taser while opening the exterior side door to the

garage and had not yet entered the garage or residence. Officer Ryan's claim that the interior door was shut, causing a Taser probe to miss, is contradicted by Plaintiff's testimony. There is no credible evidence that any door-closing action caused the failed probe contact. (Dkt. 81-2, ¶¶ 12–14; Dkt. 94-8, at 12:25–13:7, 13:23–14:11, 33:3–9).

54. Admitted. Plaintiff testified and stated in his affidavit that after being struck with the Taser probe, he grabbed the attached wire, broke it off, and continued through the garage into the house. Plaintiff was entering the garage at the time of the Taser deployment, directly contradicting Officer Ryan's claim that he had already followed Plaintiff inside. (Am. Comp., ¶¶ 67–68; Dkt. 94-8, at 13:5–14:5, Dkt. 81-2, ¶ 14; Dkt. 94-14, ¶ 6).

55. Admitted in part, disputed in part. Plaintiff lacks personal knowledge of the condition of the Taser cartridge recovered by Officer Ryan. However, the assertion that one probe was still connected to the wire and the other was missing is consistent with Plaintiff's account, that one probe struck him in the back and he manually removed the attached wire. (Dkt. 94-8, at 13:5–14:5; Dkt. 81-2, ¶¶ 13–14).

56. Admitted. Plaintiff acknowledges that both Taser probes did not make contact, the circuit was not completed, and no electrical charge was emitted. This is consistent with Plaintiff's testimony that he felt the impact of the probe but did not experience any electrical discharge. (Dkt. 81–2, ¶ 14; Dkt. 94–8, at 13:5–14:5).

57. Admitted. Plaintiff did not receive an electrical charge from Officer Ryan's Taser because the circuit was not completed due to only one probe making contact. (Dkt. 94–8, at 15:24–16:2; Dkt. 81–2, ¶ 14).

14

58. Admitted in part, disputed in part. Plaintiff acknowledges that the Taser did not emit an electrical charge and that the deployment was physically ineffective. However, the act of deploying a Taser against an unarmed individual on private property was an unjustified use of force. Plaintiff was in close proximity to a cement step at the time and could have suffered serious injury or death had the Taser functioned properly and caused him to fall. (Dkt. 94–8, at 15:24–16:2; Dkt. 81–2, ¶ 14).

59. Admitted. Plaintiff acknowledges that Officer Ryan did not discharge a firearm on June 19, 2021. Plaintiff described the impact of the Taser probe as feeling like a "bullet," reflecting the sudden and forceful nature of the strike. Although Plaintiff did not refer to it as a "Taser gun" in his filings, that term is commonly used as a street name for the weapon due to its appearance, firing mechanism, and projectile function. (Dkt. 94–8, at 33:9–14, 40:17–24, 47:15).

60. Admitted. Plaintiff acknowledges that Officer Ryan did not shoot him with a firearm bullet on June 19, 2021. Plaintiff's references to a "bullet" were intended to describe the impact and nature of the Taser probe that struck him. Tasers are often referred to as "Taser guns" due to their shape, trigger mechanism, and the fact that they fire metal-tipped projectiles similar to bullets, though less destructive. (Dkt. 94–8, at 33:9–14, 40:17–24, 47:15).

61. Admitted in part, disputed in part. Plaintiff acknowledges that Officer Ryan did not enter the interior of the house. However, Officer Ryan has previously claimed multiple times that he pursued Plaintiff into the garage, and it is undisputed that he entered the driveway. Both the garage and the driveway constitute protected curtilage under the Fourth Amendment. Officer Ryan entered and remained on that curtilage

15

without a warrant, consent, or any lawful justification. (Dkt. 94–14, ¶ 6; Dkt. 81–2, ¶ 12; Dkt. 94–19, ¶ 10; Exhibit A to Ryan Dec., p. 5; Exhibit C to Ryan Dec., p. 3, MSJ Exhibit 7, video file # 20210619_024040.mp4).

62. Disputed. Plaintiff remained inside the residence after entering but did not refuse to come back out. Plaintiff had just been struck with a Taser, was not told he was under arrest, and did not understand why police were attempting to detain him. He was under no legal obligation to exit the home absent a warrant or lawful authority (Dkt. 94–8, at 55:19–21; Dkt. 81–2, ¶ 14).

63. Disputed. While Plaintiff and Officer Ryan had no further direct in-person contact after Plaintiff entered the house, Officer Ryan and other officers remained outside and repeatedly pounded loudly on the doors of the residence attempting to get Plaintiff to come out. These actions continued the encounter and contributed to Plaintiff's fear and confusion (Dkt. 94–8, at 55:8–21; Dkt. 81–2, ¶ 14; MSJ Exhibit 7, video file 20210619_025542.mp4).

64. Admitted in part, disputed in part. After Plaintiff entered the house, the Taser probe remained in his back until it was removed by his mother. Plaintiff had initially grabbed the wire, but the probe itself was ultimately extracted by his mother. (Dkt. 94–8, at 12:11–24, 14:6–13, 16:6–7, 73:9).

65. Admitted. Plaintiff took a photograph of the Taser probe in his back before it was removed, as shown in the image submitted as evidence. (Dkt. 94–8, at 40:8–41:11, 45:22–47:7; MSJ Exhibit 7, 20210619_023215.jpg).

66. Admitted. The photograph Plaintiff took of the Taser probe still attached to his body was marked as Deposition Exhibit 4. (Dkt. 94–8, at 45:22–47:7; Dkt. 94–12, MSJ Exhibit 7, 20210619_023215.jpg).

67. Admitted. Plaintiff took a photograph of the Taser probe after it was removed from his back. (Dkt. 94–8, at 47:8–21).

68. Admitted. The photograph Plaintiff took of the Taser probe after it was removed from his back was marked as Deposition Exhibit 5. (Dkt. 94–8, at 47:8–21; Dkt. 94-13. MSJ Exhibit 7, 20210619_023441.jpg)

69. Admitted. Plaintiff testified that when the Taser probe was removed, there was a little bit of blood. (Dkt. 94–8, at 14:12–15).

70. Admitted. Plaintiff initially testified that he did not put a bandaid on the spot where the Taser probe made contact with his body. (Dkt. 94–8, at 14:24–15:2).

71. Admitted. Plaintiff testified that he could not recall with certainty whether he used a bandaid on the spot where the Taser probe made contact. (Dkt. 94–8, at 14:24–15:6).

72. Admitted. Plaintiff testified that when the probe made contact with him, it felt "like getting shot with a dart." (Dkt. 94–8, at 15:17–20).

73. Admitted. Plaintiff testified that he experienced soreness after the Taser probe was removed. (Dkt. 94–8, at 37:8–16).

74. Admitted. Plaintiff testified that there was a bruise where the Taser probe contacted him. (Dkt. 94–8, at 15:21–23, 37:17–38:8).

75. Admitted. Plaintiff testified that Officer Ryan contacted him by telephone on June 19, 2021. (Dkt. 94–8, at 61:16–19).

76. Disputed. Plaintiff acknowledges that Officer Ryan contacted him by telephone on June 19, 2021 and asked if he needed medical attention, to which Plaintiff responded no. However, Plaintiff did not tell Officer Ryan that he had not been struck by a Taser probe. That claim is false and contradicted by Plaintiff's consistent sworn testimony and photographic evidence showing the probe embedded in his back. (Dkt. 94-8, at 40:8–41:11, 47:8–21, 61:16–25; Dkt. 81-2, ¶ 13; Dkt. 94-12, MSJ Exhibit 7, 20210619_023215.jpg; Dkt. 94–19, ¶ 16).

77. Admitted in part, disputed in part. Plaintiff admits that Officer Ryan created the CNYLEADS Incident Report and attached it as Exhibit A to his declaration. However, Plaintiff disputes the accuracy and truthfulness of portions of the report, as they contradict Plaintiff's sworn testimony and objective evidence. (Dkt. 94–20).

78. Admitted. Plaintiff admits that Officer Ryan created the Arrest Report and attached it as Exhibit B to his declaration. The Arrest Report states that Plaintiff was arrested on June 20, 2021, which confirms that no arrest occurred at the time of the June 19 incident involving the Taser, and that the use of force occurred outside the context of a lawful arrest. (Dkt. 94–21).

79. Admitted. Plaintiff did not receive formal counseling or mental health treatment as a result of the Taser incident. However, Plaintiff reserves the right to seek emotional distress damages based on the trauma and fear resulting from the use of force. (Dkt. 94–8, at 11:19–12:10; Dkt. 94–15, ¶¶ 6–8, 15, 25).

80. Admitted. Plaintiff has not incurred out-of-pocket expenses for medical or psychological care as a result of being struck with the Taser probe. However, Plaintiff

reserves the right to seek non-economic damages for emotional distress and trauma. (Dkt. 94–8, at 48:21–49:11; Dkt. 94–14, ¶ 8).

81. Admitted. Plaintiff is not making a claim for lost wages. (Dkt. 94–14, ¶ 2; Dkt. 94–15, ¶¶ 19, 24).

82. Admitted in part, disputed in part. Plaintiff admits that Officer Ryan issued a traffic ticket on June 19, 2021 for no/inadequate lights under Vehicle & Traffic Law § 375(2)(a)(1). However, Plaintiff disputes the validity of the stop and the use of that ticket as justification for the subsequent use of force. Although the Court previously found probable cause for the stop, that decision was made without the benefit of the Certificate of Disposition, which confirms that all charges, including this ticket, were ultimately dismissed, suggesting no lawful authority existed for the stop or continued seizure. (Dkt. 81–3, at 20).

83. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20).

84. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20).

85. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20).

86. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20).

87. Admitted in part, disputed in part. See above. Plaintiff disputes the applicability of the New York State Vehicle and Traffic Law definition of "motor vehicle" in this context and asserts the non-applicability of the term under 18 U.S.C. § 31(6), which limits "motor vehicles" to those used for commercial purposes. This interpretation is further supported by Plaintiff's analysis of federal and state statutes, including New York's Transportation Law § 2(18), the Driver License Compact, and various federal definitions in Title 49. Plaintiff maintains that his private conveyance, not used in

commerce, does not meet these definitions and is therefore not subject to vehicle registration, licensing, or insurance mandates. Plaintiff has also extensively set forth this argument under federal and state statutory law, with this statutory conflict being central to Plaintiff's federal claims and anticipated appeal. All charges stemming from the June 19, 2021 incident were ultimately dismissed. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34).

88. Admitted in part, disputed in part. See above. Plaintiff admits that his vehicle was not registered with the State of New York on June 19, 2021. However, Plaintiff disputes that any registration was legally required, as his private conveyance does not fall within the definition of a "motor vehicle" under 18 U.S.C. § 31(6) and was not being used for commercial purposes. All charges stemming from the June 19, 2021 incident were ultimately dismissed. (Dkt. 81–3, at 20; Dkt. 7–8, at 29, Dkt. 94-3, ¶¶ 29-34, Dkt. 94–8, at 63:22–64:9; Dkt. 94–15, ¶ 27).

89. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29, Dkt. 94-3, ¶¶ 29-34, Dkt. 94–8, at 64:10–65:5).

90. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29, Dkt. 94-3, ¶¶ 29-34).

91. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94-3, ¶¶ 29-34, Dkt. 94–8, at 64:5–9).

92. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29, Dkt. 94–3, ¶¶ 29–34).

93. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34; Dkt. 94–8, at 64:2–4, 8–9).

94. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34).

95. Admitted in part, disputed in part. See above. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34, Dkt. 94-15, ¶ 26).

96. Admitted in part, disputed in part. See above. Plaintiff further notes that the ignition interlock device requirement had expired prior to June 19, 2021, rendering the charge factually and legally unsupported. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34).

97. Admitted in part, disputed in part. See above. Plaintiff admits he was issued a charge under Penal Law § 195.05 on June 19, 2021. However, Plaintiff disputes that he obstructed any lawful governmental function, as Officer Ryan was not acting pursuant to valid authority and the underlying stop, entry onto private property, and use of force were unlawful. The Certificate of Disposition confirms that this charge was ultimately dismissed. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34).

98. Admitted in part, disputed in part. See above. Plaintiff admits he was charged with resisting arrest under Penal Law § 205.30 on June 19, 2021. However, Plaintiff disputes that a lawful arrest was underway at the time. Officer Ryan lacked a warrant or probable cause and was not acting within the bounds of lawful authority. Moreover, the Arrest Report confirms that Plaintiff was not arrested until June 20, 2021, further negating the basis for any resisting arrest charge on June 19. All charges, including this one, were ultimately dismissed. (Dkt. 81–3, at 20; Dkt. 7–8, at 29; Dkt. 94–3, ¶¶ 29–34; Dkt. 94–21).

99. Admitted in part, disputed in part. Plaintiff acknowledges that the only remaining claim against Officer Ryan at this stage is for excessive force arising out of the Taser deployment. However, Plaintiff disputes that this is the only viable claim and preserves his objections to prior dismissals and his intent to appeal those rulings. (see Dkt. 94–5, at 15–17, 26–28).

100.    Admitted in part, disputed in part. Plaintiff acknowledges that the District Court issued a Decision and Order on February 15, 2024, in which it concluded that there was probable cause for Officer Ryan to initiate a traffic stop. However, Plaintiff disputes that any lawful seizure occurred under the Fourth Amendment. Under California v. Hodari D., 499 U.S. 621 (1991), a seizure does not occur unless the individual either submits to a show of authority or is physically apprehended. Plaintiff did neither prior to being struck with the Taser. Therefore, even if probable cause existed, no lawful stop or seizure had occurred at the time of the use of force. (see Dkt. 94–5, at 15–16).

101.    Admitted in part, disputed in part. Plaintiff acknowledges that the District Court issued a Decision and Order on February 15, 2024, which included the finding that Plaintiff "did not have the option to disobey Ryan's directive to stop the vehicle." However, Plaintiff disputes the legal correctness of this conclusion. Under California v. Hodari D., 499 U.S. 621 (1991), a person is not "seized" under the Fourth Amendment unless they submit to a show of authority or are physically apprehended. Plaintiff did neither before the use of force occurred. Therefore, the existence of a directive alone does not establish a lawful seizure. (see Dkt. 94–5, at 15).

22

102.    Admitted in part, disputed in part. Plaintiff acknowledges that the District Court

issued a Decision and Order on February 15, 2024, which included the conclusion

that Plaintiff "did not have the option to . . . avoid engaging with Ryan once plaintiff

pulled into his mother's driveway, at least to address the ordinary inquiries incident to

a traffic stop." However, Plaintiff disputes the legal correctness of this conclusion. As

noted in California v. Hodari D., 499 U.S. 621 (1991), no seizure occurs unless there

is submission to authority or physical restraint, which had not occurred at the time of

the Taser deployment. Additionally, Officer Ryan entered constitutionally protected

curtilage without a warrant, exigent circumstances, or consent, and used force prior to

any meaningful engagement or inquiry. (see Dkt. 94–5, at 16–17).

103.    Admitted in part, disputed in part. Plaintiff admits that Officer Ryan's responses

to Plaintiff's Requests for Admissions were signed by his attorney, Paul V. Mullin,

Esq., as shown in Exhibit P to the Mullin Declaration. However, Plaintiff disputes

that the responses were properly verified, as Officer Ryan did not personally verify

the responses under oath, nor did counsel include a sworn verification. Only the

Requests themselves appear to have been verified. (Exhibit P to Mullin Dec.).

Dated: May 15, 2025

Respectfully submitted,

By: _____

Richard Sposato, Plaintiff Pro Se
c/o 510 N. Orchard Rd.
Solvay, New York [13209]
richie@nusoundmusic.com
315-412-1776