UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD SPOSATO,

                              Plaintiff,

                                                          5:23-CV-0364
v.                                                        (GTS/MJK)

MATTHEW W. RYAN, individually and in his
official capacity,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

RICHARD SPOSATO
    Plaintiff, *Pro Se*
510 North Orchard Road
Solvay, NY 13209

SUGARMAN LAW FIRM LLP                           PAUL V. MULLIN, ESQ.
    Counsel for Defendant Ryan
211 West Jefferson Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action brought by Richard Sposato

("Plaintiff") against Matthew Ryan ("Defendant"), are the following two motions: (1) Plaintiff's

motion for summary judgment pursuant to Fed. R. Civ. P. 56; and (2) Defendant's cross-motion

for summary judgment pursuant to Fed. R. Civ. P. 56.   (Dkt. Nos. 81, 94.)   For the reasons set

forth below, Plaintiff's motion for summary judgment is denied, Defendant's cross-motion for

summary judgment is granted, and Plaintiff's remaining claim is dismissed.

## I.      RELEVANT BACKGROUND

## A. Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff asserted a number of different claims against 27 defendants. (Dkt. No. 7.) All of those claims were dismissed pursuant to a Report-Recommendation by U.S. Magistrate Judge Andrew T. Baxter on July 27, 2023 (which was adopted by this Court on February 15, 2024), except for a claim of excessive force brought against Defendant related to events that occurred on June 19, 2021. (Dkt. Nos. 10, 19.) Because that is the only remaining claim in this action, it is the only one the Court will discuss.

Plaintiff alleges that, on June 19, 2021, at approximately 2:15 AM, he was "exercising [his] right to travel" on North Orchard Road in the Town of Solvay in his 2008 Honda Accord when he saw emergency lights flashing behind him. (Dkt. No. 7, at ¶ 64.) He "paid no attention" to the police officer behind him despite seeing the emergency lights flashing and instead moved out of the way to let the officer pass and then pulled into the driveway of his mother's house at 510 North Orchard Road. (*Id.* at ¶ 65.) Despite being aware that the police officer had followed him and pulled behind him in that driveway, Plaintiff exited his car and "peacefully walked" to the door on the right side of the garage; he did not pay attention to the officer and did not hear any orders to stop. (*Id.* at ¶¶ 66-67.) As he opened the side door to the garage, he felt a "bullet" go into his back, which turned out to be from a Taser. (*Id.* at ¶ 67.) Plaintiff broke the wire attached to that "bullet," walked into the garage, and then entered the house from there. (*Id.* at ¶ 68.) Some time later, Plaintiff received a phone call from Defendant stating that he (Defendant) had witnessed Plaintiff violate multiple sections of the Vehicle and Traffic Law, and instructing Plaintiff he needed to turn himself in for processing or a warrant would be issued for his arrest. (*Id.* at ¶¶ 74-75.)

## B. Undisputed Material Facts on Cross-Motions for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."   *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).   Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"   *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported by record citations by Defendant, and either expressly admitted or denied without a supporting record citation by Plaintiff.

### Plaintiff's Statement of Undisputed Material Facts

1.     On June 19, 2021, at approximately 2:00 AM, Defendant was on duty as a police officer for the Village of Solvay Police Department.

2.     Defendant observed a maroon Honda Accord traveling in the Village of Solvay without its headlights on.[1]

3.     Plaintiff drove to his mother's house at 510 North Orchard Road in Solvay and pulled into the driveway.[2]

4.     Defendant entered the driveway at that address without a warrant.[3]

5.     Plaintiff exited his vehicle and moved toward the side entrance to the house.[4]

---

[1]     The Court has altered Plaintiff's asserted fact to more accurately reflect the content of the evidence on which he relies for it.

[2]     Defendant purports to deny part of this asserted fact, but that denial is of a fact that was never asserted by Plaintiff. *See Thurmond v. Bowman*, 211 F. Supp. 3d 554, 561-62 (W.D.N.Y. 2016) (deeming admitted movant's factual assertions where non-movant failed to adduce a responsive statement of material facts); *Emanuel v. Griffin*, 13-CV-1806, 2015 WL 1379007, at *1 (S.D.N.Y. Mar. 25, 2015) ("Plaintiffs' Rule 56.1 statement routinely recites facts that are irrelevant to the paragraph of Defendants' statement to which they ostensibly correspond and, just as often, engages in inappropriate legal argument.").   This fact has therefore been deemed to be admitted under N.D.N.Y. L.R. 56.1(b).

[3]     Defendant does not deny the factual content of the asserted fact, but rather argues that he was not required to have a warrant under the circumstances.   (Dkt. No. 94, Attach. 26, at ¶ 4.) As an initial matter, this response is defective because it denies a fact that was never asserted but was only subjectively inferred by Defendant Ryan: the fact in question never included an assertion that Defendant Ryan *was* required to have a warrant.   *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of inferred facts).   In any event, whether a warrant was required under the circumstances demands a legal conclusion that is outside the scope of this statement of material *facts*.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

[4]     Defendant properly disputes Plaintiff's assertion that he *walked* towards the side entrance to the house by citing to contrary evidence that Plaintiff *ran* or *fled* toward it.   (Dkt. No. 94, Attach. 26, at ¶ 5.)   However, there is no genuine dispute that Plaintiff *moved* toward the side entrance to the house.

6.      While Plaintiff was still moving, Defendant deployed his department-issued Taser, causing one of the Taser probes to make contact with Plaintiff's back.[5]

7.      Plaintiff was unarmed at the time Defendant deployed his Taser.[6]

8.      Defendant did not have a search warrant or an arrest warrant at the time of the incident.[7]

9.      Defendant called Plaintiff, asking if he needed medical attention as a result of the use of force, but Plaintiff denied he needed any medical attention.[8]

---

[5]      There is a genuine dispute of fact as to where precisely Plaintiff was located at the time the Taser was deployed, with Plaintiff asserting he had just reached "the side entrance" and Defendant asserting Plaintiff was inside the garage.   (*Compare* Dkt. No. 81, Attach. 3, at ¶ 6 *with* Dkt. No. 94, Attach. 26, at ¶ 6.)   The Court has further altered the asserted fact because the evidence provided by both parties substantiates that only one probe actually made contact with Plaintiff's body.

[6]      Defendant has not disputed the fact that Plaintiff was unarmed, given that his lack of knowledge does not constitute a proper basis for denial of the asserted fact.   However, the Court does count as disputed the portion of Plaintiff's fact that he posed no danger, because Defendant has cited admissible record evidence showing that Plaintiff engaged in multiple violations of the Vehicle and Traffic Law, including failing to stop when Defendant engaged his emergency lights.   The Court also relies on a police report, adduced by Defendant, stating that Plaintiff was "known to police to be resistant from previous encounters."   (Dkt. No. 94, Attach. 22, at 1.)   After all, the standard governing Plaintiff's remaining claim of excessive force does require assessing the situation from the perspective of a reasonable officer.

[7]      As discussed above in Note 3 of this Decision and Order, the issue of whether such warrants were required at any point during the relevant use of force presents a legal question that is outside the scope of this statement of material *facts*.

[8]      The Court has omitted the portion of the relevant fact related to apparent calls by Defendant and other officers telling Plaintiff to "turn himself in," because they are not relevant to his remaining excessive force claim.

10.     Defendant has not provided body camera footage of the incident, stating (in a response to Plaintiff's Interrogatories) that Solvay Police did not equip their officers with cameras on the day of June 19, 2021.

## Defendant's Statement of Undisputed Material Facts

1.      On June 19, 2021, Defendant was employed by the Village of Solvay as a police officer.

2.      At all relevant times on June 19, 2021, Defendant was working in his capacity as a police officer for the Village of Solvay.

3.      On June 19, 2021, at approximately 2:15 a.m., Defendant was in a marked patrol unit.

4.      At that time, Defendant was parked in the 2200 block of West Genesee Street conducting vehicle and traffic enforcement.[9]

5.      Defendant saw a maroon Honda Accord traveling westbound on West Genesee

---

[9]      Plaintiff admits the asserted fact, but specifies that Defendant was not parked on the street, but rather in a parking lot behind work vans.  (Dkt. No. 99, at ¶ 4.)   However, Plaintiff does not deny the asserted fact, but merely adds facts, which is not the purposes of his response pursuant to Local Rule 7.1.   *See* N.D.N.Y. L.R. 56.1(b) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that a plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

Street, which then stopped at a red light at the intersection of West Genesee Street and Fay

Road.[10]

6.      The driver of the vehicle that Defendant observed was Plaintiff.[11]

7.      When Defendant saw the vehicle at that time, it did not have its headlights on.[12]

8.      When the traffic light at the intersection turned green, Plaintiff accelerated

quickly and began travelling over the posted speed limit of 30 miles per hour.[13]

---

[10]     Plaintiff denies this asserted fact in part, specifically that Defendant could have accurately observed him from his position at the time.   (Dkt. No. 99, at ¶ 5.)   As an initial matter, the creation of the dispute of fact in question requires an improper finding by the court that Defendant's affidavit and/or deposition testimony is incredible. *See McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impunging [a witness'] honesty").   In any event, the evidence cited by Plaintiff does not support his denial.   This fact is therefore deemed to be admitted.

[11]     Plaintiff denies this asserted fact in part, specifically that Defendant could have identified him as the driver while they were in their relative positions.   (Dkt. No. 99, ¶ 6.)   However, again, this finding requires a credibility determination which the Court is unable to render on a motion for summary judgment.   *See, supra,* Note 10 of this Decision and Order.   In any event, the asserted fact does not state that Defendant identified Plaintiff at that specific moment, but rather only that the person driving the car was Plaintiff.   Because Plaintiff does not deny that he was in fact driving that vehicle, this asserted fact is deemed to be undisputed.

[12]     Plaintiff denies this asserted fact, denying that his headlights were off or entirely inoperative.   (Dkt. No. 99, at ¶ 7.)   However, none of the evidence he cites supports that denial.  Specifically, Plaintiff cites his statements and testimony that he was not aware at the time that his headlights were off, or that he was able to see fine enough to drive, or that his car has some lights that are always on such that his headlights were merely not "fully deployed."   None of this evidence controverts the assertion (supported by Defendant's evidence) that Defendant observed that the headlights themselves were not on at the relevant time.   In any event, Plaintiff's lack of awareness of whether his headlights were on or not is hardly knowledge that can create a genuine dispute of material fact.   *See Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016) (summary order) (noting that a statement that one "ha[d] no recollection" of a fact "does not constitute a denial"); *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses . . . do not create genuine issues of material fact.").

[13]     Plaintiff does not deny that he accelerated "promptly" when the light turned green, but

7

9.     Defendant confirmed that Plaintiff was traveling in excess of 40 miles per hour using the HR Falcon RADAR unit in his police vehicle.[14]

10.     The posted speed limit on the portion of West Genesee Street where the vehicle was traveling was 30 miles per hour.

11.     Plaintiff was travelling above the posted speed limit at the relevant time.

12.     Defendant pulled behind Plaintiff's vehicle as it travelled on West Genesee Street.[15]

13.     Defendant began following Plaintiff's vehicle because he had observed Plaintiff commit a traffic violation.[16]

14.     Plaintiff became aware that there was a police vehicle behind him when he was on West Genesee Street.

15.     Plaintiff made a right turn from West Genesee Street onto North Orchard Road.

denies that his speed was in excess of 40 miles per hour.   (Dkt. No. 99, at ¶ 8.)   Plaintiff's deposition testimony does dispute that he was going over 40 miles per hour, but he acknowledges in that testimony that he was "probably" going more than 30 miles per hour and "possibly" over 35 miles per hour.   As a result, it is undisputed that Plaintiff was, at the very least, exceeding the posting speed limit of 30 miles per hour at the relevant time.

[14]     Plaintiff denies this asserted fact, but the evidence cited in response does not address the asserted fact or dispute the evidence provided by Defendant.

[15]     Plaintiff admits the asserted fact, but denies that Defendant had reasonable suspicion of wrongdoing to follow him.   This is merely legal argumentation, and the cited evidence does not in any way dispute the asserted fact.

[16]     Plaintiff denies the asserted fact, arguing that he had not committed any violations. (Dkt. No. 99, at ¶ 13.)   However, as already discussed, it is undisputed that Defendant observed Plaintiff driving above the posted speed limit and with his headlights off.   Because these can reasonably be construed as violations of the Vehicle and Traffic Law, Defendant's asserted fact is deemed to be admitted in the absence of a properly supported denial.

16.     Defendant activated the emergency lights on his police vehicle to conduct a vehicle and traffic stop of Plaintiff's vehicle.

17.     After Defendant activated his police vehicle's emergency lights, Plaintiff did not pull his vehicle over, but instead continued traveling on North Orchard Road.[17]

18.     While Defendant followed Plaintiff's vehicle on North Orchard Road with the emergency lights and siren activated, Plaintiff did not pull his vehicle over.[18]

19.     As he drove on North Orchard Road, Plaintiff was aware that a Solvay Police vehicle was behind him with its emergency lights activated, but did not pull his vehicle over.

20.     Plaintiff made a left turn into the driveway of his mother's house at 510 North Orchard Road.

21.     When Plaintiff pulled into the driveway at 510 North Orchard Road, Defendant was still behind him, with the emergency lights on his police vehicle still activated.

22.     Plaintiff parked his vehicle at the top of the driveway.

23.     Defendant parked his police vehicle and approached Plaintiff's vehicle.[19]

---

[17]     Plaintiff admits that he did not immediately stop in response to the lights, but that he did slow down and move to the right for Defendant to pass, and that, because he was so close to his mother's house, he continued driving in that manner rather than pulling over.   (Dkt. No. 99, at ¶¶19-20.)   However, Plaintiff's additional facts about his reasoning for failing to stop have no bearing on the truth of the assertion that he did not, in fact, stop.

[18]     Plaintiff denies this asserted fact to the extent that it suggests that Defendant had turned the police vehicle's siren on.   (Dkt. No. 99, at ¶¶ 21-22.)   However, Plaintiff's only evidence to the contrary is a statement from his deposition testimony wherein he testified that "I can't say that I heard any sirens."   (Dkt. No. 94, Attach. 8, at 28.)   The fact that Plaintiff did not hear the siren, or does not recall hearing the siren, does not directly dispute that it was used.   *See, supra,* Note 12 of this Decision and Order.

[19]     Plaintiff purports to dispute portions of this asserted fact by "disput[ing] that [Defendant] parked on the street or the manner in which he approached."   (Dkt. No. 99, at ¶ 30.)   However, the asserted fact does not state that Defendant parked on the street as opposed to in the driveway.

24.     Plaintiff exited his vehicle and headed toward a door that led into the garage of 510 North Orchard Road.

25.     The door was located on the right side of the garage.

26.     After Plaintiff had exited his vehicle, Defendant recognized him as Richard Sposato.[20]

27.     As Plaintiff proceeded toward the house, he knew that the police vehicle had also stopped at that location.

28.     As he proceeded toward the house, Plaintiff did not pay attention to anything that was going on behind him.

29.      Defendant pursued Plaintiff on foot.[21]

30.     Plaintiff claims that he did not hear Defendant give any verbal commands or requests before Defendant deployed his Taser.

31.     Defendant deployed his Taser while Plaintiff was still moving.

32.     Only one of the two Taser probes made contact with Plaintiff's body.

33.     The one Taser probe made contact with Plaintiff's back.

34.     After the Taser probe made contact with Plaintiff's body, Plaintiff continued to

---

Moreover, Plaintiff's dispute of the "manner in which he approached" is vague, non-responsive to the fact asserted, and unsupported by admissible record.   The asserted fact is therefore deemed to be admitted.

[20]     Plaintiff denies the asserted fact based on the ground that he lacks knowledge of what Defendant recognized or perceived, but again a lack of knowledge is insufficient to dispute a fact supported by other evidence.   (Dkt. No. 99, at ¶ 33.)   *See, supra,* Note 12 of this Decision and Order.   The asserted fact is therefore deemed to be admitted.

[21]     Plaintiff purports to deny this asserted fact, but his explanations for that denial are all non-responsive to what is actually asserted.   (Dkt. No. 99, at ¶ 37.)

move.

35.     According to Defendant, he deployed his Taser as Plaintiff was handling (Defendant says closing, Plaintiff says opening) a door to the house (Defendant says an interior one, Plaintiff says an exterior one), which caused at least one of the two Taser probes to miss contact with Plaintiff's body.[22]

36.     According to Plaintiff, after the Taser probe struck him, he grabbed the Taser wire attached to the probe and broke the wire off as he walked into the garage and then entered the house.

37.     When Defendant recovered the spent Taser cartridge, one probe was still connected to the wire and the other was missing.

38.     Because both of the Taser probes did not make contract with Plaintiff's body, the circuit was never completed and the Taser did not emit any electrical charge.

39.     Plaintiff never received any electrical charge from Defendant's Taser.

40.     At the relevant time, Defendant did not discharge a gun or shoot Plaintiff with a bullet.

41.      Defendant did not pursue Plaintiff into the interior of the home.

42.     After Plaintiff entered the house, he refused to come back out.

43.     After Plaintiff entered the house, he and Defendant had no further in-person contact on that date.

---

[22]     Plaintiff denies the asserted fact, but the asserted fact is limited to what Defendant has stated occurred.    Moreover, where appropriate, the asserted fact twice states Plaintiff's alternative version of events.    (Dkt. No. 99, at ¶ 53.)    Because all portions of the asserted fact are supported by admissible record evidence, and uncontroverted by Plaintiff, the asserted fact is deemed admitted.

44.     After Plaintiff entered the house, either Plaintiff or his mother removed the Taser probe from his back.

45.     Before the Taser probe was removed, Plaintiff took a photograph of it.

46.     Plaintiff also took a photograph of the Taser probe after it was removed from his back.

47.     Plaintiff testified that, when he pulled out the Taser probe from his back, there was a "little bit" of blood.

48.     Plaintiff initially testified that he did not put a bandage on the spot where the Taser probe made contact with his body.

49.     Plaintiff then testified, "but let's just say I can't remember if I used a band-aid. How's that?"

50.     Plaintiff testified that, when the probe made contact with him, it was "like getting shot with a dart."

51.     Plaintiff testified that he experienced soreness after removing the Taser probe.

52.     Plaintiff testified that there was a bruise where the Taser probe contacted him.

53.     Defendant contacted Plaintiff by telephone on June 19, 2021.

54.     During that telephone conversation, Defendant asked Plaintiff if he needed medical attention, and Plaintiff answered that he did not.[23]

55.     During that telephone conversation, Plaintiff also told Defendant that he had not

---

[23]     Plaintiff admits the asserted fact, but denies ever having told Defendant during that call that he had not been struck by a Taser dart.   (Dkt. No. 99, at ¶ 76.)   However, the asserted fact does not state that Plaintiff had made any such comment.   *See, supra,* Note 3 of this Decision and Order.

been "struck by the Taser deployment."[24]

56.     Plaintiff did not receive any medical treatment as a result of the Taser probe's contact with his back.

57.     Plaintiff did not receive any counseling or mental health treatment as a result of the Taser probe's contact with his back.

58.     Plaintiff has not incurred any out-of-pocket expenses for medical or psychological care as a result of being struck with the Taser probe.

59.     Plaintiff is not making a claim for lost wages.

**C.     Parties' Arguments on Their Cross-Motions for Summary Judgment**

**1.     Plaintiff's Memorandum of Law**

Generally, in his motion, Plaintiff makes four arguments.   (Dkt. No. 81, Attach. 4.) First, Plaintiff argues that Defendant's responses to Plaintiff's requests for admission are not properly verified and so the Court should deem all matters contained within those requests for admission as being admitted.   (*Id.* at 3.)

Second, Plaintiff argues that Defendant's use of force (in particular the choice to deploy the Taser against him) constitutes excessive force under the Fourth Amendment because (a) the "crime" involved was a minor violation of the Vehicle and Traffic Law for not having his headlight illuminated while driving, (b) he was unarmed and posed no threat to Defendant, and

---

[24]     (Dkt. No. 95, Attach. 20, at 5.)   Plaintiff purports to deny the asserted fact, but fails to cite any admissible record evidence controverting the admissible evidence presented by Defendant that such statement was made.   (Dkt. No. 99, at ¶ 76.)   The Court notes that the photographs also clearly support a reasonable finding that, because Plaintiff was struck with only one of the Taser's two probes, the probes were unable to complete the electrical current necessary to inflict an electrical charge on Plaintiff.   As a result, this asserted fact regarding Plaintiff's statement to Defendant is deemed to be admitted.

(c) he was not resisting arrest or attempting to flee.   (*Id.* at 3-4.)

Third, Plaintiff argues that Defendant's action of entering the private driveway of Plaintiff's mother's residence without a warrant is a violation of the Fourth Amendment that also makes any force used while on that property unconstitutional.   (*Id.* at 4.)

Fourth, Plaintiff argues that there was no legal basis for any use of force against him at the relevant time because all charges for which Defendant purportedly attempted to detain him were eventually dismissed without prejudice.   (*Id.*)

### 2.   Defendant's Opposition Memorandum of Law and Memorandum of Law in Support of His Cross-Motion

Generally, in his response and cross-motion, Defendant makes six arguments.   (Dkt. No. 94, Attach. 27.)   First, Defendant argues that there is no merit to Plaintiff's argument that some flaw exists in his responses to Plaintiff's requests for admission that would merit deeming matters contained within those requests as being admitted because, even though the verification page contains a typographical error, the response was signed by Defendant's attorney, which is all that is required under Fed. R. Civ. P. 36(a)(3).   (*Id.* at 5-6.)

Second, Defendant argues that he did not violate Plaintiff's right to be free from excessive force because the choice to deploy his Taser was reasonable under the circumstances, specifically the fact that (a) Defendant had observed Plaintiff commit multiple traffic infractions, including driving without his headlights illuminated, driving over the speed limit, and failing to signal a turn, (b) Plaintiff failed to pull his car over when Defendant used his emergency lights, and (c) Plaintiff fled into a house despite being given commands to stop.   (*Id.* at 7-11.)   Defendant argues that it does not matter whether Plaintiff thought Defendant had a valid reason to stop or detain him, or whether Plaintiff heard Defendant's verbal commands and/or warnings,

because the analysis of the reasonableness of the force is from the perspective of a reasonable officer.  (*Id.* at 11-12.)  Defendant further argues that he provided a warning before deploying the Taser and Plaintiff's arguments that the use of force was automatically excessive because Defendant did not have a warrant to be on the property is invalid given that this Court has already rejected Plaintiff's Fourth Amendment claims based on warrantless entry and found that Defendant had probable cause to conduct a traffic stop.  (*Id.* 13-14.)

Third, Defendant argues that the force used was not excessive also because the actual force used (and the injury that resulted from it) was *de minimis*.  (*Id.* at 14-17.)  Specifically, Defendant argues that because only one of the Taser probes made contact with Plaintiff, he did not receive any electric shock, and the only injury he suffered from being hit by the probe was a small amount of blood and some minor bruising that did not require medical attention.  (*Id.*)

Fourth, Defendant argues that he is entitled to qualified immunity because his conduct here did not violate any clearly established right, particularly given that the Taser deployment in this instance was unsuccessful and did not result in any electrical charge being used on Plaintiff.  (*Id.* at 17-21.)

Fifth, Defendant argues that, to the extent Plaintiff makes arguments that Defendant's entry onto the private property constituted a violation of the Fourth Amendment, no such claim remains pending in this action.  (*Id.* at 21.)

Sixth, Defendant argues Plaintiff's request for punitive damages should be dismissed because the undisputed facts do not suggest that Defendant's conduct rises to the level required for such damages.  (*Id.* at 22.)

###  3.  Plaintiff's Reply Memorandum of Law and Opposition Memorandum of Law

Generally, in his memoranda in reply and in opposition to Defendant's cross-motion, Plaintiff makes nine arguments. (Dkt. Nos. 97, 104.) First, Plaintiff argues that Defendant's evidence cannot defeat his motion for summary judgment because (a) his police report related to the incident conflicts with his declaration in that the police report does not indicate that he made any verbal warning before deploying his Taser, and, given that such police report was made more contemporaneously with the incident than his declaration, his statement in his declaration should not be credited, and (b) Plaintiff is entitled to an adverse inference based on Defendant's failure to preserve body camera footage related to the incident. (Dkt. No. 97, at 2-4.)

Second, Plaintiff argues the warrantless entry onto the private property is relevant regardless of whether any separate claim exists for that violation because Defendant's unlawful presence affected the situation wherein force was used and therefore bears upon the question of reasonableness. (*Id.* at 4-5; Dkt. No. 104, at 3.)

Third, Plaintiff argues that Defendant is not entitled to qualified immunity because the Court has already determined that Plaintiff's allegations suggest a violation of clearly established law, including the right to be free from being subjected to a Taser when unarmed, non-threatening, and non-resisting, the clearly established principle that minor traffic infractions do not authorize significant force, and the clearly established principle that warrantless entry onto private property is unlawful absent exigent circumstances. (Dkt. No. 97, at 5-6.)

Fourth, Plaintiff argues that the force used here was not *de minimis* regardless of whether there was minimal physical injury as a result because "[d]eploying a weapon designed to inflict pain and incapacitation" in the circumstances presented is unreasonable per se. (*Id.* at 6-7.)

Fifth, Plaintiff argues that the minor traffic infractions Defendant asserts that Plaintiff committed did not justify arrest or use of force because they are not crimes under New York law

(and there was certainly no basis for Defendant to escalate the situation as opposed to issuing a summons later for such infractions) and, in any event, those charges were later dismissed. (*Id.* at 7-8.)

Sixth, Plaintiff argues that the Court's prior finding of probable cause to conduct a traffic stop does not automatically require a finding that Defendant had cause to engage in a use of force. (*Id.* at 8; Dkt. No. 104, at 3-4.)

Seven, Plaintiff argues that the evidence here shows that the force used was unreasonable because (a) the "crimes" involved were mere minor traffic infractions, (b) Plaintiff did not pose any threat to Defendant at the relevant time, and (c) Plaintiff's non-threatening action of walking toward his house did not constitute a dangerous attempt to flee. (Dkt. No. 97, at 8-10.)

Eight, Plaintiff argues that Defendant's reliance on *McCray v. City of Homestead*, 18-CV-23195, 2020 WL 5264802 (S.D. Fl. Aug. 20, 2020), is unavailing because there are material factual differences in the circumstances presented in that case as opposed to the circumstances here, and, in any case, it is not binding on this Court. (*Id.* at 10-11.)

Ninth, Plaintiff argues that his claim for punitive damages is supported because a reasonable jury could conclude that Defendant acted with callous indifference when entering the property without a warrant and deploying his Taser on an unarmed and non-threatening individual without warning. (*Id.* at 11-12.)

## II.     LEGAL STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[25]   As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

---

[25]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).   What the non-movant's failure to respond to the motion does is

lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement.[26]

Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(a)(3).[27]   Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.   *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

---

[26]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

[27]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

### A. Whether A Genuine Dispute of Material Fact Exists Related to Plaintiff's Remaining Excessive Force Claim

After careful consideration, the Court answers this question in the negative for the reasons discussed in Defendant's memorandum of law. *See, supra,* Part I.C.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

#### 1. Preliminary Issues

The Court begins by observing that, in addition to issues regarding the merits of Plaintiff's excessive force claim, the parties' cross-motions for summary judgment present four preliminary issues. The Court will address these issues before turning to the merits of Plaintiff's excessive force claim.

First, to the extent that Plaintiff's motion requests that certain questions included in the interrogatories and/or requests for admission be deemed admitted, the Court denies that motion. Rule 36(a)(3) of the Federal Rules of Civil Procedure indicates that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Plaintiff argues that facts in the interrogatories and requests for admission served on Defendant should be deemed to be admitted because Defendant failed to verify them; but Fed. R. Civ. P. 36(a)(3) does not require verification, only that (a) the answering party provide a written answer or objection, and (b) that answer is signed by the party

or its attorney. Here, Defendant has provided evidence that both his response to Plaintiff's interrogatories and his response to Plaintiff's request for admissions were signed by his attorney. (Dkt. No. 94, Attach. 16; Dkt. No. 94, Attach. 17.) Notwithstanding any errors in the Individual Verification signed by Defendant that has also been provided, his attorney's signature suffices to meet the requirements of Fed. R. Civ. P. 36(a)(3). There is no basis to deem admitted anything that has been denied therein.

Second, to the extent that Plaintiff's motion requests a finding that Defendant failed to preserve body camera footage, the Court denies that motion. There is also no basis for any such finding. Plaintiff's assertion that body camera footage existed is not based on any personal knowledge of whether Defendant was or was not wearing a body camera at the time of the relevant events (much less one that was functioning, activated, and recording), but rather on his "expectation that such footage should exist" and "department policies requiring recording during traffic stops and use-of-force encounters." (Dkt. No. 81, Attach. 2, at 4; Dkt. No. 97, at 2, 4.) His expectation is neither material nor admissible. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). There is no admissible evidence that Defendant's left his body camera back in his locker because he knew he was going to beat up Plaintiff that day, or that he brought it and used it and wrongfully deleted the footage as inculpatory. There is only speculation of the existence of those alternate scenarios. In essence, Plaintiff is asking the Court to improperly render a credibility determination of Defendant. *See, supra,* Note 10 of this Decision and Order. More specifically, in Defendant's answers to Plaintiff's interrogatories, Defendant stated in response to questions about body worn cameras that "[o]n the day of the incident in question the Solvay Police did not equip their Officers with body worn cameras."

(Dkt. No. 94, Attach. 16, at ¶¶ 11-12.)   Because Plaintiff has offered no admissible record evidence contradicting Defendant's evidence that he was not equipped with a body worn camera on the relevant date, there is no genuine dispute of material fact regarding the non-existence of body camera footage of the incident.   The Court rejects Plaintiff's argument that Defendant's failure to provide any such footage entitles Plaintiff to an inference that the footage would have been unfavorable to Defendant.

Third, to the extent that Plaintiff's motion argues that Defendant's act of entering his mother's property without a warrant violated the Fourth Amendment, the Court rejects that argument.   The Supreme Court decision Plaintiff cites in support of this argument, *Cnty. of Los Angeles, California v. Mendez*, 581 U.S. 420 (2017), does not hold what he asserts it does.   In that case, the Supreme Court rejected the notion that an unconstitutional search or entry could stand as the basis for an excessive force claim where the force used was reasonable.   *Mendez*, 581 U.S. at 428-29 ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances.   It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry.").   Although, as a distinction from the factual situation underlying *Mendez*, Plaintiff does assert that Defendant engaged in unreasonable force (in addition to unconstitutional entry onto the property), nothing in *Mendez* supports Plaintiff's argument that the fact of unconstitutional entry contributes to the assessment of whether the force used was reasonable or not; indeed, the Supreme Court notes that that exact question (whether an unconstitutional entry should be considered as part of the totality of the circumstances when assessing the reasonableness of the force later used) was not before it on appeal and it therefore expressly declined to render any opinion on it.   *Mendez*, 581 U.S. at 429.

*Mendez* therefore does not support his argument that Defendant's allegedly unlawful presence on the property "rendered the escalation unreasonable from its inception." Rather, at most, any unlawful entry would simply be considered as part of the totality of the circumstances.

However, the Court need not determine whether it is required to consider an unlawful entry as part of the totality of the circumstances analysis because, here, the evidence presented does not substantiate a finding that Defendant's entry onto the property was unlawful. As noted above in Part I.B. of this Decision and Order (setting forth the Statements of Undisputed Material Facts), there has been no genuine dispute of material fact presented as to whether (a) Defendant observed Plaintiff driving without his headlights on, (b) Defendant observed Plaintiff driving at a rate of speed that was above the posted speed limit for the road, and (c) Defendant observed Plaintiff failing to pull his vehicle over after Defendant activated his emergency lights and siren and instead continuing to drive until he pulled into the driveway at his mother's house. Plaintiff has also admitted that he was aware both that Defendant had activated his emergency lights while driving behind him and that Defendant's police vehicle had also stopped at his mother's house. This Court has noted that "[c]ourts have . . . concluded that 'a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of a legitimate law enforcement business does not violate the Fourth Amendment.'" *Seidman v. Colby*, 18-CV-0202, 2022 WL 137852, at *2 (N.D.N.Y. Jan. 14, 2022) (McAvoy, J.) (collecting cases). Because the undisputed evidence establishes that Defendant's entrance onto the driveway of Plaintiff's mother's house was related to both the vehicle and traffic violations that Defendant had observed and Plaintiff's failure to stop in response to Defendant's activation of his emergency lights, there was nothing unlawful about Defendant's presence on the property at the relevant time.

Fourth, to the extent there is a genuine dispute of material fact about precisely *where* the use of force occurred (i.e., whether it be the entrance to the garage, or the entrance to the home from inside the garage), there is no evidence from which a rational fact-finder could conclude that Defendant created or exacerbated the necessity for the use of force by entering the garage (and leaving the publicly accessible driveway or front yard). To the contrary, it was Plaintiff's attempt to move away from Defendant and enter the house (not Defendant's mere presence) that created the situation in which Defendant felt compelled to use force. As a result, even if a factfinder were to credit Plaintiff's factual assertion that the use of force occurred inside the garage, such fact would not have any bearing on the use-of-force analysis. The relevant question here is not whether any entry by Defendant into the garage violated the Fourth Amendment (given that Plaintiff has no such claim remaining), but rather whether it impacted the reasonableness of his use of force, and, again, the mere fact of unlawful entry does not make a use of force unreasonable, but rather the Court must assess the use of force under the totality of the circumstances.

### 2.     Merits of Plaintiff's Excessive Force Claim

Turning to the merits of Plaintiff's claim of excessive force, to prove a claim of excessive force under the Fourth Amendment, Plaintiff must prove, by a preponderance of the evidence, the following four elements: (1) that Defendant intentionally or recklessly used force, (2) that the force was unreasonable under the circumstances, (3) that Plaintiff suffered at least some harm, and (4) that the force was the proximate cause of that harm.

With regard to the second element, the inquiry is an objective one: whether Defendant's use of force was "objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397 (citing

*Scott v. United States*, 436 U.S. 128, 137-39 [1978]).   Inherent in this inquiry is a determination

of the degree of force that a reasonable and prudent police officer would have applied in

effectuating the arrest under the circumstances shown from the evidence received in the case.   In

determining such reasonableness, factors to be considered include, but are not limited to, the

following: (1) the severity of the crime at issue; (2) any threat reasonably perceived by

Defendant; (3) whether Plaintiff actively resisted arrest or attempted to flee; (4) the extent of the

injury suffered by Plaintiff; and (5) any efforts made to temper the severity of a forceful

response.   *Graham v. Connor*, 490 U.S. 386, 396 (1989).   This is because the very nature of

reasonableness "allow[s] for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation."   *Graham*, 490 U.S. at 396-97.   "The

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight."   *Graham*, 490 U.S. at 396

(citing *Terry v. Ohio*, 392 U.S. 1, 22-23 [1968]).   "'Not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment."

*Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 [2d Cir. 1973]).

Defendant argues that the evidence shows that Plaintiff suffered only a *de minimis* injury

and that fact can serve as proof that only *de minimis* force was used.   (Dkt. No. 94, Attach. 27,

at 14.)   However, as even Defendant acknowledges, the Second Circuit has rejected the

argument that *de minimis* injury is a sufficient basis to dismiss an excessive force claim at the

summary judgment stage.   *See Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150-51 (2d Cir.

2021) ("[W]e have never held that a court may grant summary judgment to officers on an

excessive force claim merely because the injuries were minor even where the force was

unreasonable.   Any such holding would violate the rule announced in *Graham* and would grant a windfall to officers who commit misconduct but could escape liability based upon the hardiness of their victims.   While the absence of serious injury is certainly a matter that the jury could consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone."); *accord Levine v. New York State Police Dept.*, 21-CV-0503, 2022 WL 4465588, at *3 n.6 (N.D.N.Y. Sept. 26, 2022) (Sharpe, J.); *Moore v. Keller*, 498 F. Supp. 3d 335, 357 (N.D.N.Y. 2020) (Hurd, J.); *Rizk v. City of New York*, 462 F. Supp. 3d 203, 223 (E.D.N.Y. 2020); *see also Karcz v. City of North Tonawanda*, 20-CV-1045, 2023 WL 2744836, at *11 (W.D.N.Y. Mar. 7, 2023) ("While 'de minimis injuries can serve as evidence that de minimis force was used,' a plaintiff may recover even if the injuries inflicted were not permanent or severe if the force used was unreasonable and excessive.") (quoting *Kayo v Mertz*, 531 F. Supp.3d 774, 798 [S.D.N.Y. 2021]).   To the extent that the evidence shows no significant injury here, such fact is a matter for a jury to consider, not a basis for granting summary judgment.

Nor does the Court agree with Defendant that the fact that the Taser deployment ended up being unsuccessful (in that only one dart contacted Plaintiff's skin and thus the electrical charge never occurred) means that the force used was so *de minimis* that it has no constitutional significance.   Although Plaintiff cites *McCray v. City of Homestead*, 18-CV-23195, 2020 WL 5264521 (S.D. Fla. 2020), wherein a district court determined that the officer did not use unreasonable force because the unsuccessful deployment of the Taser meant that the plaintiff was not actually subjected to an electrical shock, this Court is not obligated to follow that court's

reasoning.[28]   Indeed, that court's reasoning for finding the force to be *de minimis*—that the plaintiff did not receive an electrical charge and denied any pain from the probe that did contact his body such that there was no evidence that the use of force resulted in any pain—is precisely the sort of rationale that *Ketcham* concluded should not be the basis for dismissal on a motion for summary judgment.

Further, unlike in the case of *Hall v. Ashe*, 21-CV-0130, 2025 WL 2306201 (D. Vt. Aug. 11, 2025), where that court found no personal involvement in the use of force where the deployed Taser stuck in the plaintiff's jacket and did not make contact with his body, one of the darts in this case undisputably did make contact with Plaintiff's body, piercing through the skin of his back.   While this may not be a great deal of force in the abstract, the Court is not looking at the degree of force in isolation, but rather, as discussed, in light of the totality of the circumstances.   *See Adedeji v. Hoder*, 935 F. Supp. 2d 557, 566 (E.D.N.Y. 2013) (noting that the Fourth Amendment inquiry "does not look solely to the magnitude of the force exerted but requires close examination of the totality of the circumstances in each particular case," and stating that "although more substantial uses of force might, as Officer Hoder points out, be reasonable under certain circumstances, that the force at issue here was a mere 'nudge' does not on its own render the jury's finding of liability unreasonable").   As a result, the fact that the force used could be considered to be *de minimis* would not constitute a basis for granting Defendant summary judgment without a consideration of the totality of the circumstances.

---

[28]      The Court notes that Defendant highlights another case, *Sanchez v. Gomez*, 17-CV-0133, 2017 WL 3842137 (W.D.Texas Sept. 1, 2017), wherein that court found that use of a Taser was excessive despite the fact that it failed to properly deploy and the plaintiff was hit by only one of the darts.

Turning to that analysis, it is the third of the factors—whether the suspect was actively resisting arrest or attempting to evade arrest by flight—that is most relevant to the pending cross-motions for summary judgment.[29]   The Court's analysis of the parties' Statements of Material Facts, responses thereto, and evidence submitted has revealed a single genuine dispute of fact: the nature of Plaintiff's movement as he went from his car to the door leading into the garage (i.e., whether he was walking or running).[30]   Granted, Plaintiff has also attempted to raise an issue of material fact as to whether Defendant provided any verbal commands to stop or warnings that he was going to deploy his Taser; however, his testimony is that he did not hear any such commands or warnings, not that such commands and warnings were never issued. (*See* Dkt. No. 94, Attach. 8, at 29-30 ["Q: Did you hear the officer? A: No. Q: Did you hear the officer issue any commands or requests? A: No."], 33-34 ["Q: So prior to that object coming in contact with you, did you hear the officer calling you? A: I did not."], 35 ["Q: Did you — did you hear the officer say anything? A: No."], 60-61 ["Q: Did you hear the officer when he was in

---

[29]   The other two factors—the severity of the crime and the immediate threat to the safety of the officer or others—do not weigh in favor of a finding of reasonableness overall.   Specifically, the basis of Defendant's pursuit of Plaintiff consisted of traffic infractions including failing to turn on his headlights at night, driving approximately ten miles over the speed limit (if Defendant's radar machine is to be found to accurate), and failing to stop when signaled by Defendant's emergency lights, none of which are particularly urgent or serious when compared with other crimes.   Further, other than an exhibit in which Plaintiff was described as being known by police "to be resistant from previous encounters," (Dkt. No. 94, Attach. 22, at 1), there appears to be no evidence indicating that Plaintiff in any way posed an immediate threat to the safety of Defendant or anyone else.

[30]   As discussed previously, the dispute about where the parties were located at the time the Taser was deployed (i.e., outside the garage or inside the garage) has little bearing on the assessment of whether the force was reasonable.   The same is true of other disputes that became apparent during the Court's review of the record, including whether Defendant pulled his police vehicle into the driveway or parked it on the street.

your driveway giving you commands to stop? A: No. Q: Did you hear him yelling at you to show you — your hands A: No.".)   When asked whether he had any hearing issues, Plaintiff answered, "I think I do," and elaborated that he had gotten his hearing assessed approximately six months or within the past year before the deposition because "I, you know, maybe do sometimes, you know, have trouble hearing.   Because you know, there's always a ringing in my ear.   So I do have tinnitus."   (Dkt. No. 94, Attach. 8, at 36.)   Evidence that Plaintiff did not hear the commands and warnings (which do not constitute a denial that such commands and warnings were never given), particularly in light of his own testimony that he may have difficulty hearing, is insufficient to create a genuine dispute of material fact against the evidence submitted by Defendant (including his Declaration [Dkt. No. 94, Attach. 19, at ¶¶ 10-12] and his police report [Dkt. No. 94, Attach. 20, at 5]) that Defendant did give those commands and warnings before deploying his Taser.   *See West v. Harkness*, 17-CV-0621, 2021 WL 4289515, at *4 n.3 (N.D.N.Y. Sept. 21, 2021) (Suddaby, J.) (finding that assertions that the plaintiff did not hear the defendant make certain statements were insufficient to create a genuine dispute of fact regarding whether those statements were made) (citing *Genger v. Genger*, 663 F. App'x 44, 49 n.4 [2d Cir. 2016]; *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 [2d Cir. 2000]; *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 [N.D.N.Y. Mar. 27, 2015] [Suddaby, J.]).   As a result, the Court accepts as undisputed that Defendant provided such commands and warnings as is documented in the evidence.[31]

---

[31]     The Court rejects Plaintiff's contention that, because the police report does not contain any mention of a warning that Defendant was going to deploy his Taser specifically, the Court should not credit the statement in Defendant's declaration that he did give such a warning. However, the fact that the police report was silent about whether a warning was issued before using the Taser does not render that document inconsistent with Defendant's later declaration.

The genuine dispute of material fact as to whether Plaintiff was walking or running away from Defendant is obviously material to the issue of whether Plaintiff was attempting to evade arrest. However, even if a jury were to credit Plaintiff's account that he was merely walking, it could still not reasonably conclude that Plaintiff was not attempting to evade Defendant to some extent (especially given his admission that he was aware both that Defendant had activated his emergency lights while driving behind him and that Defendant had followed him into the driveway of Plaintiff's mother's house). It is undisputed that, despite knowing that Defendant had attempted to pull him over and was continuing to pursue him, Plaintiff continued to ignore Defendant's presence and move toward the house where Defendant would not be able to enter. The Second Circuit has indicated that "the use of force may be reasonable against a suspect who is fleeing," although "it may be objectively unreasonable against that suspect when he has been stopped and no longer poses a risk of flight." *Soto v. Gaudett*, 862 F.3d 148, 158 (2d Cir. 2017). Regardless of which version of events a factfinder was to believe, there can be no dispute that Plaintiff was fleeing in some manner at the time the force was used and that he still posed a risk of flight.

Proceeding to a consideration of the totality of the factors, the Court begins by observing that, although the traffic infractions that Defendant observed Plaintiff commit were relatively minor in comparison with many crimes and there is no evidence to suggest Defendant reasonably believed that Plaintiff presented a risk of harm, Plaintiff's continuing efforts to evade arrest (first by car and then by foot) as he attempted to enter his mother's house weigh in favor of a finding that Defendant's use of his Taser to try to stop Plaintiff's flight was reasonable. Notably, some courts assessing a use of force involving a Taser where there is resistance or flight specifically consider whether the officer warned the suspect before deploying the Taser. (Dkt. No. 94,

Attach. 27, at 13 [citing *DeGroat v. Buck*, 2023 WL 4763806, at *9 [N.D.N.Y. 2023] and *Hamell*, 2019 WL 1933938, at *14].)   As discussed above, Plaintiff has not presented sufficient evidence to create a genuine dispute of material fact regarding Defendant's assertion that he did provide verbal commands to stop and a warning before he deployed his Taser.   Moreover, at his deposition, Plaintiff testified that, during the relevant events, he had parked his vehicle in approximately the spot shown in a proffered photograph of the driveway, which shows a vehicle close in front of the garage (Plaintiff testified he parked "[p]robably within 10 feet" of the garage"), near to where the door Plaintiff entered is on the right side of the garage.   (Dkt. No. 94, Attach. 8, at 28, 32; Dkt. No. 94, Attach. 9.)   He further testified that there were "perhaps" two car lengths between his stopped vehicle and the police vehicle when Defendant stopped in the driveway.   (Dkt. No. 94, Attach. 8, at 29.)

Even if a factfinder were to credit Plaintiff's account on the location of Defendant's police vehicle (as Defendant stated to the contrary in his declaration that he parked his police vehicle on the street, although he corroborated that Plaintiff's vehicle was "at the top of the driveway"), Plaintiff's own testimony shows that there was a not insubstantial distance between Plaintiff and Defendant when they exited their cars, and that Plaintiff had parked his car near to where the door to the garage was located.   The fact that Plaintiff was undisputedly near to the door to the garage and Defendant was at least two car lengths distance away from Plaintiff when Defendant exited his vehicle further compels a finding that Defendant's use of the Taser in dart mode was reasonable: the distance between Plaintiff and Defendant and Plaintiff's movement made it so unlikely that Plaintiff's flight could be stopped by means less-intrusive than a Taser in dart mode that Defendant's use of a Taser fell within the range of conduct identified as reasonable.

Finally, as stated earlier, in determining reasonableness, factors to be considered include, but are not limited to, the following: (1) the severity of the crime at issue; (2) any threat reasonably perceived by Defendant; (3) whether Plaintiff actively resisted arrest or attempted to flee; (4) the extent of the injury suffered by Plaintiff; and (5) any efforts made to temper the severity of a forceful response. Clearly, even setting aside the third factor, consideration of the fourth and fifth factors compel a finding that the use of a Taser was reasonable. Specifically, with regard to the fourth factor, the taser misfired, hit Plaintiff with only one dart, and failed to emit an electrical charge, causing less of an injury. With regard to the fifth factor, Defendant immediately left the home, called Plaintiff, and asked if he needed medical attention, tempering the severity of the forceful response.

For the above reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's remaining claim of excessive force.

**B. Whether, In the Alternative, Defendant is Entitled to Qualified Immunity**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. *See, supra*, Part I.C.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

"An officer may take advantage of qualified immunity, and thereby avoid liability for civil damages and the burdens of a lawsuit, if he demonstrates that his conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 [2018]). "'There are therefore two steps to the qualified immunity analysis: first, whether the plaintiff established that his constitutional rights were violated, and second, whether the right at issue was clearly established at the time of the alleged violation.'" *Lennox*, 968 F.3d

at 155 (quoting *Bacon v. Phelps*, 961 F.3d 533, 542 [2d Cir. 2020]). "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" *Kisela*, 584 U.S. at 104 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 [2004]). However, "even if the right was 'clearly established,'" qualified immunity may still apply where "it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-34 [2d Cir. 2010]).

Although certain disputes of material fact exist in this case, the Court finds that, even if a jury were to accept Plaintiff's version of events related to those disputed facts, Defendant's actions here did not violate clearly established law. Notably, according to the undisputed facts discussed above in Part I.B of this Decision and Order, there is no issue of fact as to whether (a) Plaintiff was operating his vehicle in the dark without his headlights illuminated, (b) he was exceeding the speed limit, (c) he was aware that Defendant was behind him in a police vehicle and that Defendant had activated his emergency lights, but he failed to pull his vehicle over, and (d) he was aware that Defendant had followed him to his mother's house. Considering these undisputed facts, no reasonable jury could conclude that Plaintiff was unaware that Defendant was attempting to pull him over, and yet he failed to comply. It is also undisputed that Defendant observed Plaintiff both committing the relevant Vehicle and Traffic Law violations and his failure to pull over when signaled. Thus, even according to Plaintiff's version that he merely walked from his vehicle to the house, he did so under the undisputed circumstances of having ignored a lawful signal to stop his vehicle and continuing to ignore Defendant's presence after Defendant followed him to his mother's house. It was not objectively unreasonable for

Defendant in such a situation to construe Plaintiff's actions both while in his vehicle and after exiting his vehicle as attempting to evade the consequences of the observed traffic violations and any subsequent arrest. Also undisputed is the fact that Defendant recognized Plaintiff at the time he exited his vehicle, and evidence presented by Defendant with his motion indicates, in a report regarding the incident signed by Defendant, that Plaintiff "is known to police to be resistant from previous encounters." (Dkt. No. 94, Attach. 20, at 5.) The fact Defendant recognized Plaintiff and that officers, including Defendant himself, perceived Plaintiff as resistant based on encounters with him in the past further adds to the reasonableness of Defendant's perception that Plaintiff was acting in a non-compliant manner or attempting to resist arrest at the time he made the decision to deploy his Taser. (Dkt. No. 94, Attach. 22, at 1.)

The Second Circuit has notably stated that "it was clearly established before April 2015 that 'officers may not use a taser against a compliant or non-threatening suspect.'" *Jones v. Treubig*, 963 F.3d 214, 227 (2d Cir. 2020) (quoting *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69-70 [2d Cir. 2018]); *see also Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (finding that an officer violated the prohibition against the use of excessive or unreasonable force when he exerted significant force on an arrestee who is not resisting arrest and did not pose a threat to the safety of officers). This has been interpreted as clearly establishing that officers may not use a Taser against a suspect who is *both* compliant and non-threatening (despite the use of "or" in the stated language) because the facts of the relevant case involved a reasonable basis to believe that the plaintiff was both non-compliant and posed no threat to the officer. *See Harris v. Leon*, 20-CV-10864, 2023 WL 2051171, at *7 (S.D.N.Y. Feb. 16, 2023) (finding no clearly established right in a case where the plaintiff was "not threatening but is unrestrained and not compliant"); *see also Treubig*, 963 F.3d at 240 (holding that it was clearly established that "a

34

police officer cannot use significant force, such as a taser, against an individual who is no longer resisting arrest or posing a threat to the officers or others," noting that the plaintiff in that case was neither resisting arrest nor posing a threat at the time the taser was deployed).   Thus the fact that there is no evidence that Plaintiff posed a threat to Defendant does not render Defendant's actions in violation of any clearly established law because, here, the undisputed evidence shows that Plaintiff was non-compliant, attempting to flee, and resisting arrest at the time the Taser was deployed.

Under this understanding, even Plaintiff's account of events does not suggest that Defendant's actions violated this clearly established law because, again, Plaintiff acknowledges that he continued to walk toward the house and enter it despite knowing that Defendant had attempted to pull him over on the road and had stopped his car at the house where Plaintiff had parked.   Because the evidence shows that Plaintiff was fleeing at the time the Taser was used, he was "noncompliant" and therefore no clearly established law indicates that Defendant's use of the Taser was unlawful.   Moreover, as was discussed above, it was objectively reasonable under the circumstances for Defendant to believe that Plaintiff was fleeing and resisting arrest, regardless of whether Plaintiff walked or ran, by attempting to enter the house where Defendant would not be able to follow without a warrant.[32]

Further, the Second Circuit has noted that "[o]ur precedents suggest that it is *not*

---

[32]   While use of a Taser might arguably seem like an extreme method to resort to, there is no evidence to suggest that it was objectively unreasonable for Defendant to assess that such force was necessary to stop Plaintiff.   After all, the undisputed record indicates that Plaintiff failed to stop for the clearly understood signal of the emergency lights on the police vehicle behind him while he was driving, and by the time Defendant deployed the Taser, he had recognized Plaintiff as an individual who was known to him as being resistant during past encounters with police. Defendant thus had a reasonable basis for believing that a more passive option would not cause Plaintiff to stop.

excessive force to deploy tasers, *after a warning*, against arrestees who are dangerous or resisting arrest." *Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 33 (2d Cir. 2017) (emphasis added) (citing *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 7-8 [2d Cir. 2013]; *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595-96 [2d Cir. 2010]).   Notably, although *Penree* and the cases it cites are all summary orders (and thus not precedential under the Second Circuit's own rules), the Second Circuit did quote this exact language in *Treubig*, which is precedential.   *Treubig*, 963 F.3d at 228.   The issue resolved in *Treubig* notably did not turn on whether a warning had been given before the use of a Taser, but the Court notes that it was documented that the officer had provided a warning before the first use of the Taser during the relevant encounter, and the lawfulness of that force was not in question.   *Id.* at 220-21.   Second Circuit law therefore indicates that deploying a Taser against a resisting suspect is not excessive force if a warning is provided first, which is precisely what the undisputed evidence shows is what happened here.   As a result, Defendant did not violate any clearly established law and his actions were objectively reasonable.

For the above reasons, the Court finds that, in the alternative to the finding that Defendant did not use excessive force, his actions are also covered by qualified immunity.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 81) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment (Dkt. No. 94) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 7) is **DISMISSED**.

Dated: March 4, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge